IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 25-cv-02457-SBP

ANNETTE MARTIN,

     Plaintiff,

v.

IGNACIO CRUZ-MENDOZA;
MANRIQUE AGRAMON;
TQL GLOBAL, LLC, a foreign corporation registered to do business in Colorado;
SEARING INDUSTRIES WYOMING, INC., a foreign corporation;
MONIQUE TRUCKING, LLC, a foreign corporation; and
INSTEL STEEL- WEST LLC, a foreign corporation,

     Defendants.

---

### DEFENDANT TQL GLOBAL, LLC'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)

---

Defendant TQL Global, LLC ("TQL"), pursuant to the preemption doctrine of 49 U.S.C. § 14501(c)(1) and Federal Rule of Civil Procedure 12(b)(6), moves to dismiss Plaintiff Annette Martin's Amended Complaint as to TQL.

## I.    INTRODUCTION

This case arises from a June 11, 2024 motor vehicle accident on U.S. Highway 285 involving Plaintiff and an 18-wheler truck ("Accident") driven by Defendant Ignacio Cruz-Mendoza who was transporting an interstate shipment of steel goods while allegedly driving on behalf of Defendant Monique Trucking, LLC ("Monique Trucking") and Defendant Manrique Agramon, Monique Trucking's registered agent. According to the Amended Complaint, Agramon and Monique Trucking owned the truck and entrusted it to Cruz-Mendoza. Notwithstanding Plaintiff's allegations that Cruz-Mendoza was working for Monique Trucking at the time of the

Accident, Plaintiff also seeks to recover damages against TQL Global, LLC ("TQL"), under the theory that TQL was acting as a freight broker for the steel shipment and was negligent in brokering the shipment.[1]

Plaintiff's claims against TQL should be dismissed because they are preempted by the Federal Aviation Administration Authorization Act ("FAAAA"), 49 U.S.C. § 14501(c)(1), which . preempts common law tort claims related to a freight broker's hiring or retention of a carrier to perform shipments in interstate commerce. Plaintiff alleges TQL was a "broker" responsible for "brokering" the carrier to transport the subject shipment. Under her allegations, the FAAAA preempts Plaintiff's claims.

In addition to federal preemption under the FAAAA, the Court should dismiss each of Plaintiff's claims against TQL because Plaintiff has not – and cannot – plead the elements of her claims. First, Plaintiff's negligence claim should be dismissed because her conclusory, bare, and contradictory allegations against TQL fail to establish how TQL owes her any duties. Her negligent hiring claim should be dismissed because Plaintiff does not allege an employer-employee relationship between TQL and Cruz-Mendoza. The negligence per se claim should be dismissed because Plaintiff does not allege TQL violated any statute or ordinance. The negligent entrustment theory also fails because Plaintiff has not alleged TQL supplied or controlled the truck Cruz-Mendoza was driving at the time of the Accident.

---

[1] Plaintiff's claims against TQL should be dismissed in the first instance because TQL is not the proper defendant. TQL is a wholly-owned subsidiary of Total Quality Logistics, LLC, which is the proper defendant in this action. [*See* ECF 13.] Undersigned counsel attempted to contact counsel for Plaintiff on October 6, 2025 to discuss substitution of the defendant party, but Plaintiff's counsel was unavailable. Undersigned counsel spoke with a paralegal regarding the request. On October 9, 2025, counsel for Plaintiff notified the parties that counsel intends to move to withdraw as counsel for Plaintiff.

Finally, Plaintiff's punitive damages claim is premature under Colorado law. The Court should dismiss the claim for exemplary damages and strike the related allegations.

TQL requests the Court dismiss all claims against it with prejudice.

## II.    FACTUAL BACKGROUND

Plaintiff filed a Complaint on April 4, 2025 in Jefferson County District Court against Defendants Cruz Mendoza, Agramon, and Monique Trucking. Four months later, Plaintiff filed her Amended Complaint, adding Searing Industries Wyoming, Inc. ("Searing"), Instel Steel – West LLC ("Instel"), and TQL as defendants, who Plaintiff alleges "are jointly liable for causing" the Accident. (Am. Compl. [ECF 10-1] ¶¶ 1, 5, 6, 9.) In the Amended Complaint, Plaintiff asserts a variety of negligence claims against Cruz-Mendoza, Monique Trucking, Agramon, Searing, TQL, and Instel. (*Id.* ¶¶ 72–93.) As to TQL, specifically, Plaintiff asserts single-line torts claim under theories of negligence, negligence per se, and negligent entrustment. (*Id.* ¶¶ 83–85.) Plaintiff also alleges TQL is liable for punitive damages. (*Id.* ¶ 86.) On August 7, 2025, Cruz-Mendoza answered the Amended Complaint [ECF 6] and filed a Notice of Removal [ECF 1].[2]

As alleged in the Amended Complaint, Instel ordered the subject truck shipment, which was shipped and loaded by Searing. (Am. Compl. ¶ 33.) Monique Trucking and Agramon owned the 18-wheeler truck, which ultimately carried the subject load. (*Id.* ¶¶ 3, 11.) Agramon obtained a U.S. Department of Transportation Number, which permitted Agramon and Monique Trucking to operate the 18-wheeler truck. (*Id.* ¶ 12.) Plaintiff alleges that Agramon and Monique Trucking owed a duty to require drivers to complete records of duty status under 49 CFR § 395.8(a)(1), which imposes that duty on motor carriers. (*Id.* ¶ 17.)

---

[2] Cruz-Mendoza filed an Amended Notice of Removal on September 5, 2025. [ECF 16.]

3

TQL, as the alleged "broker/shipper," was allegedly responsible for "brokering and hiring" Cruz-Mendoza to drive the truck and the subject load. (*Id.* ¶¶ 24, 31.) At the time of the Accident, "Cruz-Mendoza was acting within the course and scope of his employment or agency relationship with Defendants Monique Trucking, LLC and Manrique Agramon." (*Id.* ¶ 67.) Monique Trucking was, therefore, "responsible for" Cruz-Mendoza, who was Monique Trucking's "employee or agent." (*Id.* ¶ 66.) Following the Accident, Cruz-Mendoza stated he was "driving the truck for Manrique Agramon and Monique Trucking, LLC." (*Id.* ¶ 10.) Plaintiff alleges "Manrique Agramon and Monique Trucking, LLC allowed Cruz-Mendoza to drive the truck on June 11, 2024." (*Id.* ¶ 13.) Plaintiff further avers that "[a]t all times materially relevant to this crash, Manrique Agramon and Monique Trucking, LLC negligently entrusted Cruz-Mendoza to operate the truck."[3] (*Id.* ¶ 53.) There are no allegations relating to an employment or agency relationship between TQL and Cruz-Mendoza. (*See generally id.*)

### III.    LEGAL STANDARD

A "complaint must contain enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662,

---

[3] The allegations against Agramon and Monique Trucking are largely unchanged from the original Complaint, in which Plaintiff alleges she sustained injuries in a motor vehicle accident on June 11, 2024 caused by Cruz-Mendoza, who was driving an 18-wheeler truck on U.S. Highway 285. (Compl. [ECF 1, Ex. A] ¶¶ 1, 5, 6, 9.) Plaintiff alleges that Cruz-Mendoza was driving the truck for Agramon and Monique Trucking, and that Monique Trucking "hired" Cruz Mendoza as "its employee or agent." (*Id.* ¶¶ 10, 13, 53–54.)

678 (2009). The trial court reviews a complaint to determine whether it alleges "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. First, the court must identify which pleadings "are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. This includes "legal conclusions" as well as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678. Then, the court "assume[s] th[e] veracity" of the well-pleaded factual allegations" and "determine[s] whether they plausibly give rise to an entitlement to relief." *Id.* at 679. In examining a complaint under Rule 12(b)(6), the court disregards conclusory statements and looks only to whether the remaining factual allegations plausibly suggest the defendant is liable. *Khalik*, 671 F.3d at 1191. Dismissal is appropriate under Rule 12(b)(6) "on the basis of an affirmative defense like preemption when the law compels that result." *Caplinger v. Medtronic, Inc.*, 784 F.3d 1335, 1341 (10th Cir. 2015).

IV.    **ARGUMENT**

      A.    **Plaintiff's Claims Against TQL Should be Dismissed Because They are Preempted by the Federal Aviation Administration Authorization Act.**

Plaintiff asserts negligence, negligence per se, and negligent entrustment claims against TQL. The FAAAA preempts these state tort claims against an alleged freight broker.

      1.    Plaintiff's state law claims against TQL must be dismissed because the FAAAA preempts all state common law tort claims against freight brokers.

"A fundamental principle of the Constitution is that Congress has the power to preempt state law." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000); *Chamber of Com. of U.S. v. Edmondson*, 594 F.3d 742, 765 (10th Cir. 2010) ("[I]t has long been recognized that federal law preempts contrary state enactments.") (citing *M'Culloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 405–06 (1819)). In 1994, Congress enacted the FAAAA to solve the "huge problem" of differing

state rules for national and regional carriers. *See* H.R. Conf. Rep. No. 677, 103d Cong., 2d Sess. 87 (1994). The FAAAA expressly prohibits states from "enact[ing] or enforce[ing] a law, regulation, or other provision having the force and effect of law relating to a price, route, *or service* of *any motor carrier* … or … *broker*." 49 U.S.C. § 14501(c)(1) (emphasis added).

The United States Supreme Court has explained that the purpose of the FAAAA's preemption provision is to ensure that "rates, routes, and services" in the transportation industry reflect "maximum reliance on competitive forces." *Rowe v. New Hampshire Motor Transport Assn.*, 552 U.S. 364, 370–71 (2008) (citation omitted). Section 14501(c)(1) is thus broad and preempts state laws that have a "connection with" or "reference to" the prices, routes, or services of a motor carrier or broker. *Id.* at 370 (citation omitted) (emphasis removed); *see also Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992) (The words "relating to" "express a broad pre-emptive purpose."). Even where the connection "is only indirect," a state law is preempted as long as it has a "significant impact" related to the FAAAA's "deregulatory and pre-emption-related objectives." *Rowe*, 552 U.S. at 371.

The FAAAA "bar[s] states from regulating freight forwarders/brokers and motor carriers of property …" *Alpine Fresh, Inc. v. Jala Trucking Corp.*, 181 F. Supp. 3d 250, 254 (D.N.J. 2016). That is because these claims apply a negligence standard that would impermissibly "regulate brokers, not 'in their capacity as members of the public,' but in the performance of their core transportation-related services," which the FAAAA expressly preempts. *Aspen Am. Ins. Co. v. Landstar Ranger, Inc.*, 65 F.4th 1261, 1268 (11th Cir. 2023) (quoting *Rowe*, 552 U.S. at 375). In *Ye v. GlobalTranz Enterprises, Inc.*, the Seventh Circuit explained the impact of common-law negligence claims on brokers and why federal law necessarily preempts such claims:

6

> In our view, enforcement of such a claim—and the accompanying imposition of liability—would have a significant economic effect on broker services. By recognizing common-law negligence claims, courts would impose in the name of state law a new and clear duty of care on brokers, the breach of which would result in a monetary judgment. This is exactly what [plaintiff] seeks here against [defendant broker]. To avoid these costly damages payouts, [defendant broker] and other brokers would change how they conduct their services—for instance, by incurring new costs to evaluate motor carriers. Then, by changing their hiring processes, brokers would likely hire different motor carriers than they would have otherwise hired without the state negligence standards. Indeed, that is the centerpiece of [plaintiff's] claim: that [defendant broker] should not have hired [the motor carrier].

74 F.4th 453, 459 (7th Cir. 2023), *cert. denied*, 144 S.Ct. 564 (2024). The majority of courts that have considered this issue have applied the FAAAA's express preemption to bar common law negligence claims against freight brokers.

Here, Plaintiff undisputedly alleges TQL was acting as a freight broker. The FAAAA defines a broker as "a person, other than a motor carrier or an employee or agent of a motor carrier, that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation." 49 U.S.C. § 13102(2). Plaintiff describes TQL as a "broker" and "shipper," and not as a "motor carrier."(Am. Compl. ¶ 24.) By contrast, Plaintiff alleges Agramon and Monique Trucking were acting as "motor carriers." She alleges that Agramon and Monique-Trucking owned the truck and employed Cruz-Mendoza, who was acting within the course and scope of that employee-employer relationship when the Accident occurred. (*Id.* ¶¶ 3, 11–13, 21, 67.) Plaintiff also alleges Agramon and Monique Trucking owed a duty to require drivers to complete records of duty status under 49 CFR § 395.8(a)(1), which only applies to motor carriers. (*Id.* ¶ 17.) Thus, Plaintiff clearly distinguished between TQL, as a broker, and Agramon and Monique Trucking, as motor carriers.

7

Notwithstanding TQL's alleged role as broker, Plaintiff alleges TQL was responsible for "negligently planning and overseeing the shipment giving rise to this litigation." (*Id.* ¶ 68.) Plaintiff, in effect, seeks to apply a "negligence standard [that] would regulate brokers, not 'in their capacity as members of the public,' but in the performance of their core transportation-related services." *Aspen*, 65 F.4th at 1268 (quoting *Rowe*, 552 U.S. at 375). The FAAAA thus expressly preempts Plaintiff's claims against TQL, unless they are saved by an express exception.

2.    The "safety exception" does not apply to save Plaintiff's claim from the FAAAA's broad, express preemption over state transportation regulations.

The FAAAA preempts state negligence claims like the ones asserted by Plaintiff in this case against TQL unless an express exception – like the so-called "safety exception" – applies. No safety exception applies in this case.

Congress created certain exceptions to the FAAAA's otherwise broad preemption over transportation-related regulations. As relevant here, the "safety exception" limits the preemptive effect for "the safety regulatory authority of a State with respect to motor vehicles." 49 U.S.C. § 14501(2)(A). Both the Eleventh and Seventh Circuit Courts of Appeals have held that the FAAAA preempts state law claims for negligent hiring or retention of a motor carrier by a broker. *Aspen*, 65 F.4th 1261; *Ye*, 74 F.4th 453. While the Tenth Circuit has not addressed this issue, ***this Court*** has adopted the *Aspen* and *Ye* rationale, concluding that common law negligence claims against a freight broker based merely on the broker's selection of a motor carrier do not trigger the safety exception, meaning that FAAAA preemption applies in those circumstances.[4] *Trujillo v. Nucor*

---

[4] Total Quality Logistics, LLC, filed a Petition for Writ of Certiorari on August 4, 2025 for the matter *Total Quality Logistics, LLC v. Robert Cox*, 142 F.4th 847 (6th Cir. 2025), *requesting* the United States Supreme Court resolve the issue of "[w]hether a common-law negligence claim

*Corp.*, No. 1:23-CV-00802-RM-SBP, 2025 WL 1251192, at \*3 (D. Colo. Jan. 2, 2025) (recommending dismissal of negligent hiring claim as the broker's selection of a motor carrier was not sufficiently connected to motor vehicle safety to avoid preemption) (report and recommendation adopted by *Trujillo v. Moore Bros., Inc.*, 2025 WL 1250928 (D. Colo. Mar. 24, 2025)). The majority of courts around the country have too. *See, e.g.*, *Gauthier v. Hard to Stop LLC*, No. 22-10774, 2024 WL 3338944, at \*1 (11th Cir. July 9, 2024) (plaintiff's negligent selection claim against Total Quality Logistics was foreclosed precedent and "her claim 'against a broker' was 'necessarily one step removed from a motor vehicle,' [] and thus not preserved from preemption" by the safety exception) (quoting *Aspen*, 65 F.4th at 1272); *Creagan v. Wal-Mart Transportation, LLC*, 354 F. Supp. 3d 808, 814 (N.D. Ohio 2018) ("Because the negligent hiring claim seeks to impose a duty on the service of the broker rather than regulate motor vehicles, I conclude this claim is not within the safety regulatory authority of the state and the exception does not apply.").[5]

In *Trujillo*, this Court considered a nearly identical set of facts to the case at bar. There, the plaintiffs asserted a negligent hiring claim against a steel manufacturer, Nucor Corporation (and

---

alleged against a freight broker, based on the broker's selection of a motor carrier to provide transportation of cargo, is preempted because it does not fall within the safety exception in Section 14501(c)(2)(A)" of the FAAAA. On October 3, 2025, the Supreme Court granted a Petition for Writ of Certiorari in a similar matter, *Montgomery v. Caribe Transport II, LLC*, 124 F.4th 1053 (7th Cir. 2025), which asks the Supreme Court to resolve the following question: "Does § 14501(c) preempt a state common-law claim against a broker for negligently selecting a motor carrier or driver?"

[5] *See also, e.g.*, *Volkova v. C.H. Robinson Co.*, No. 16 C 1883, 2018 WL 741441, at \*3 (N.D. Ill. Feb. 7, 2018) (dismissing negligent hiring claim "because enforcement of the claim would have a significant economic impact on the services [the freight broker] provides, it is preempted" and noting "no convincing authority supporting the proposition that a state common law claim for negligent hiring constitutes a safety regulation").

related Nucor entities), based on Nucor's selection of Moore Brothers, Inc. to transport steel products to customers. *Id.* at \*1. Moore Brothers, in turn, subcontracted some of the work to Falcon Express, LLC, who employed George Myers. Myers was driving a truck owned by Falcon Express when he failed to stop at a red light and rear-ended a vehicle occupied by the plaintiffs. Nucor moved to dismiss the negligent hiring claim because it was preempted by the FAAAA and the Interstate Commerce Commission Termination Act ("ICCTA").

In siding with the Seventh and Eleventh Circuits, the District of Colorado rejected the Ninth Circuit's rationale in *Miller v. C.H. Robinson Worldwide, Inc.*, 976 F.3d 1016 (9th Cir. 2020)[6], finding that "the general trend of authority among district courts overwhelmingly follows the *Ye*/*Aspen* line of cases, deeming negligent hiring claims asserted against brokers to be preempted by the FAAAA and not salvaged by the application of the safety exception." *Trujillo*, 2025 WL 1251192, at \*4 (report and recommendation adopted by *Trujillo*, 2025 WL 1250928 ).

In her Report and Recommendation, the Magistrate Judge concluded:

> This court agrees with the majority that *Ye* and *Aspen* provide the correct approach for addressing negligent hiring claims asserted against freight brokers. Assuming, without necessarily finding, that common-law negligent hiring claims are state "regulations" under 49 U.S.C. § 14501(c)(1) and are matters which concern "safety" for purposes of 49 U.S.C. § 14501(c)(2)(A), the court finds that they are not regulations "with respect to motor vehicles." The court adopts the reasoning articulated in *Ye* and *Aspen*, and the many other courts that have embraced that reasoning, in rejecting *Miller*'s "indirect connection" test. Like those many courts, this court finds that negligent hiring claims against freight brokers do not present the direct connection to state regulation of motor vehicles that is necessary to invoke the safety exception of 49 U.S.C. § 14501(c)(2)(A) and avoid the preemptive effect of 49 U.S.C. § 14501(c)(1). Accordingly, the court **RECOMMENDS** that the negligent-hiring claim against Nucor (Plaintiffs' Eighth Cause of Action) be **DISMISSED**.

---

[6] The Sixth Circuit "respectfully diverge[d] from the Seventh and Eleventh Circuits" in *Cox v. Total Quality Logistics, Inc.*, 142 F.4th 847, 857 (6th Cir. 2025), decided after this Court's adoption of the rationale from the Seventh and Eleventh Circuits.

*Id.* (emphasis in original).The District Court adopted the Magistrate Judge's Report and Recommendation and dismissed all claims against the Nucor defendants with prejudice. *Trujillo*, 2025 WL 1250928 at *1. The Court discerned "no principled basis for distinguishing between state tort law generally (or a negligent hiring claim specifically) and any other 'law, regulation, or other provision having the force and effect of law' for purposes of FAAAA preemption." *Id.* at *3. The Court agreed with the *Ye* and *Aspen* rationale because they "provide[] an appropriate limiting principle to the safety exception that is rooted in the language of the FAAAA itself." *Id.*[7]

The same result should be reached here. Plaintiff seeks to impose liability upon TQL, an alleged freight broker, for its selection of Monique Trucking as the motor carrier (and, indirectly, its employee, Cruz-Mendoza) to transport goods that were shipped and loaded by Searing to be delivered to the consignee, Instel. Just as in *Nucor*, TQL's selection of a motor carrier for transportation of goods is not connected to motor vehicle safety and certainly any tenuous connection is not sufficient to avoid the express preemption in the FAAAA.

### B. The Court Should Dismiss Plaintiff's Claims Against TQL Because She Fails to Allege Facts Supporting Them.

The Court should also dismiss the negligence claim against TQL because Plaintiff's threadbare, conclusory allegations do not sufficiently state causes of action. Rather than committing to any single theory of liability against TQL, Plaintiff asserts an unrecognizable claim

---

[7] Like the Magistrate Judge's Report and Recommendation, the Court rejected the *Miller* rationale from the Ninth Circuit as "threaten[ing] to let the exception all but swallow the rule by allowing any law or regulation to any degree loosely connected with motor vehicle safety to avoid preemption." 2025 WL 1250928 at *3.

that TQL "is responsible for negligently planning and overseeing the shipment" and, perhaps

alternatively, that TQL is liable for negligence, negligence per se, and negligent entrustment.

           1.      <u>Plaintiff Cannot Plead the Elements of Negligent Entrustment</u>

Colorado recognizes the tort of negligent entrustment, which requires the following

elements:

> 1) a supplier permitting a third party to use a thing or engage in an activity;
>
> 2) which is under the control of the supplier; and
>
> 3) the supplier giving such permission either knowing or having reason to know that the third party intends or is likely to use the thing in such a manner as to create an unreasonable risk of harm to others.

*Casebolt v. Cowan*, 829 P.2d 352, 357 n.4 (Colo. 1992) (quoting *Hasegawa v. Day*, 684 P.2d 936,

939 (Colo. App. 1983), *overruled by Casebolt*, 829 P.2d 352).

Plaintiff offers *zero* factual allegations supporting her assertion that TQL negligently

entrusted Cruz-Mendoza. Plaintiff's only allegation related to negligent entrustment is that "[a]t

all times materially relevant to this crash, *Manrique Agramon and Monique Trucking, LLC*

*negligently entrusted Mr. Cruz-Mendoza* to operate the truck." (Am. Compl. ¶ 52 (emphasis

added).) This is consistent with Plaintiff's allegations throughout the Amended Complaint, in

which she alleges Agramon and/or Monique Trucking (1) owned the truck, (2) obtained a USDOT

number to operate it, (3) allowed and "negligently entrusted" Cruz-Mendoza to drive the truck, (4)

had the right to control the truck, and (5) Cruz-Mendoza drove the truck "within the course and

scope of his employment or agency relationship with" Monique Trucking and Agramon. (*Id.* at ¶¶

11–13, 21,67.)

12

Plaintiff does not allege that TQL: supplied, controlled, or permitted Cruz-Mendoza to use the truck. Plaintiff has not – and cannot – alleged the foundational elements of negligent entrustment, much less present sufficient facts to show TQL actually knew Cruz-Mendoza had a propensity to misuse the vehicle or facts from which this Court could reasonably infer such knowledge. *See Phillips v. Lucky Gunner, LLC*, 84 F. Supp. 3d 1216, 1225 (D. Colo. 2015) (dismissing negligent entrustment claim and discussing the knowledge requirement for such a claim under Colorado law).

### 2.    Plaintiff Cannot Plead the Elements of Negligent Hiring

"A claim for negligent hiring or supervision consists of the usual elements of negligence— duty, breach, injury, causation—and the establishment of an agency relationship between the employer and alleged employee." *John Doe (1) v. Archdiocese of Denver*, 413 F. Supp. 2d 1187, 1191 (D. Colo. 2006) (applying Colorado law) (emphasis added); *see also Phipps v. Brunkhorst Trucking, Inc.*, No. 21-CV-03464-RM-NRN, 2023 WL 3305935, at *5 (D. Colo. May 8, 2023) (granting summary judgment where plaintiff did not present evidence of an employer relationship, which is a required element in a negligent hiring claim); *Turner v. Foothills Custom Cabinet, Inc.*, No. 2021CV33217, 2022 WL 22400941, at *3 (D. Colo. Jan. 18, 2022) (granting motion to dismiss negligent hiring claim where plaintiff failed to state any facts related to the hiring).

Plaintiff makes only conclusory allegations that TQL "hired" Cruz-Mendoza, with no actual facts to establish an employee-employer relationship between TQL and Cruz-Mendoza. Rather, Plaintiff appears to use "broker" and "hire" interchangeably, notwithstanding that the words have different legal meanings. (*See* Am. Compl. ¶ 25 (referring to TQL as having "hired/brokered" Cruz Mendoza).) But when examining a complaint under Rule 12(b)(6), the

13

Court must "disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Khalik*, 671 F.3d at 1191 (dismissing claim after "striking" allegations "not entitled to the assumption of truth because they are entirely conclusory" and considering only the non-conclusory allegations). Plaintiff's allegations, stripped of conclusory allegations, offer no factual basis for a negligent hiring claim.

In comparison to the conclusory allegations against TQL, Plaintiff offers a litany of facts to show an employer-employee relationship between Cruz-Mendoza and Monique Trucking. (*See, e.g.*, Am. Compl. ¶¶ 10, 12–13, 30 (alleging that Cruz-Mendoza claimed he was driving the truck for Monique Trucking, which supplied him the truck, the U.S. DOT number, and allowed Cruz-Mendoza to drive the truck on the day in question).) More concretely, Plaintiff alleges "Cruz-Mendoza was acting within the course and scope of his employment or agency relationship with Defendants Monique Trucking, LLC and Manrique Agramon." (*Id*. ¶ 67.) And Monique Trucking was "responsible for" Cruz-Mendoza, who was the company's "employee or agent." Taking the facts as true for purposes of this Motion, the Court should dismiss Plaintiff's claim against TQL because Plaintiff has alleged Monique Trucking, not TQL, employed Cruz-Mendoza. Moreover, there are no facts from which this Court could reasonably infer any employer-employee relationship between TQL and Cruz-Mendoza to support a negligent hiring claim.

### 3.    Plaintiff Cannot Plead Elements of Negligence Per Se

A claim for negligence per se requires proof that the defendant violated a statute or ordinance, which sets the standard of care. *Sego v. Mains*, 578 P.2d 1069, 1071 (Colo. 1978) ("… it is an essential element of negligence per se that the statute prescribe or proscribe specific conduct on the part of the alleged tort-feasor …"). The plaintiff must be a member of the class which the

14

statute or ordinance was intended to protect and the injuries suffered must be what the statute or ordinance was intended to prevent. *See Lui v. Barnhart*, 987 P.2d 942, 946 (Colo. App. 1999). Plaintiff does not allege TQL violated any statute or ordinance and offers no factual allegations that would reasonably support a negligence per se claim. Thus, this claim should be dismissed.

### C.    Plaintiff's Punitive Damages Allegations Should be Stricken and Any Claim for Punitive Damages Should be Dismissed.

Plaintiff's claim for exemplary or punitive damages should be dismissed because it is premature under Colorado law. "In a diversity case, whether punitive damages are warranted is a matter of state law." *Klein v. Grynberg*, 44 F.3d 1497, 1503 (10th Cir. 1995). Colorado law is clear: a claim for exemplary damages may not be included in an initial claim for relief. Such a claim is only allowed by amendment *after* initial disclosures and after the plaintiff establishes prima facie proof of a triable issue of exemplary damages. C.R.S. § 13-21-102. Plaintiff alleges, without elaboration, that TQL is liable for punitive damages and demands the same in her prayer for relief. (Am. Compl. ¶ 86.) Plaintiff has not complied with this pleading practice and, thus, her claim for punitive damages should be dismissed and her allegation stricken under Fed. R. Civ. P. 12(f). *See Adams v. Corr. Corp. of Am.*, 187 P.3d 1190, 1197–98 (Colo. App. 2008) (affirming dismissal of premature punitive damages request); *Martin v. State Farm Mut. Auto. Ins. Co.*, No. 14-CV-03509-KMT, 2015 WL 5308063, at *1 (D. Colo. Sept. 11, 2015) (striking premature exemplary damages claim for exemplary damages).

### V.    CONCLUSION

WHEREFORE, for all the reasons stated, Defendant TQL Global, LLC requests that all claims by Plaintiff against it be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

**Certification Regarding Use of Artificial Intelligence:** Undersigned counsel certifies that no portion of this filing was drafted using artificial intelligence.

DATED: October 10, 2025

TAFT STETTINIUS & HOLLISTER LLP

*s/ Allison R. Burke*
Allison Burke, (#54916 )
Theodore J. O'Brien, (#61623)
675 Fifteenth Street, Suite 2300
Denver, CO 80202
Telephone: (303) 297-2900
Facsimile: (303) 298-0940
Email:  aburke@taftlaw.com
          tobrien@taftlaw.com

*Attorneys for Defendant* TQL Global, LLC

17