IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.:  25-cv-2457-TPO

ANNETTE MARTIN,

       Plaintiff,

v.

IGNACIO CRUZ-MENDOZA, MANRIQUE AGRAMON, Total Quality Logistics, LLC, a foreign entity registered to do business in Colorado; SEARING INDUSTRIES WYOMING, INC., a foreign corporation; and MONIQUE TRUCKING, LLC, a foreign corporation; and INTSEL STEEL-WEST, LLC, a foreign corporation,

       Defendants.

---

**PLAINTIFF'S SECOND AMENDED COMPLAINT FOR DAMAGES AND JURY DEMAND**

---

Plaintiff Annette Martin, by and through her attorneys, Franklin D. Azar & Associates, P.C., hereby amends her Amended Complaint and respectfully alleges the following:

**PARTIES, JURISDICTION AND VENUE**

1.     Plaintiff, Annette Martin (hereinafter "Plaintiff Martin") is a citizen and resident of the State of Colorado.

2.     Defendant Ignacio Cruz-Mendoza was living in the United States at the time of the crash is now believed to have been deported back to Mexico by the United States government.

3.     Mr. Cruz-Mendoza was illegally in the United States and had been previously deported 16 times.

4.      Defendant, Manrique Agramon d/b/a Monique Trucking LLC ("Monique") at all relevant times hereto, was a California limited liability company with a principal place of business located at 82510 Requa Avenue, Apt. 4, Indio, California 92201.

5.      At all relevant times hereto, Monique conducted freight transportation activities within the State of Colorado.

6.      Defendant, Total Quality Logistics, LLC ("TQL") is foreign limited liability company.

7.      TQL is a broker.

8.      Defendant, Searing Industries Wyoming, Inc. ("Searing") is a foreign for-profit corporation with a principal place of business located at 8901 Arrow Route, Rancho Cucamonga, California 91729.

9.      Defendant, Intsel Steel West, LLC ("Intsel") is a foreign limited liability company with a principal place of business located at 8573 Ulster Street, Commerce City, Colorado 80022.

10.     At all relevant times hereto, Defendants were or should have been authorized interstate motor carriers authorized to transport goods in interstate commerce and in the State of Colorado pursuant to one or more permits issued by the Interstate Commerce Commission and/or by the United States Department of Transportation ("USDOT").

11.     Accordingly, Defendants were subject to all state and federal laws, statutes, regulations, and industry standards governing the hiring of safe and qualified commercial drivers, the safe maintenance and operation of commercial motor vehicles, and the safe brokering of goods in interstate commerce, including without limitation, Colorado Statutes governing motor vehicles

2

and the Federal Motor Carrier Safety Regulations ("FMCSR") set forth in subchapters A and B of Chapter III of the Code of Federal Regulations, Title 49 – Transportation.

12.     Defendants, in order to obtain a DOT number, were required to submit an OP-1 form containing a "Safety Certification," certifying to the Federal Motor Carrier Safety Administration ("FMCSA") that they have access to and are familiar with all applicable USDOT regulations relating to the safe operation of commercial motor vehicles and that Defendants will comply with the FMCSRs at all times while operating a commercial motor vehicle in the United States.

13.     More specifically, each Form OP-1 submitted contained a "Safety Certification," certifying to the Federal Motor Carrier Safety Administration that, at a minimum, Defendants:

     a.  had and will have in place a system and an individual responsible for ensuring overall compliance with the FMCSRs;

     b.  can produce a copy of the FMCSRs;

     c.  had and will have in place a driver safety training/orientation program;

     d.  had and will have prepared and maintain an accident register;

     e.  is familiar with D.O.T. regulations governing driver qualifications and had and will have in place a system for overseeing driver qualifications requirements;

     f.  had and will have in place policies and procedures consistent with D.O.T. regulations governing driving and operational safety of motor vehicles, including drivers' hours of service and vehicle inspection, repair, and maintenance;

     g.  is familiar with, and had and will have a system for complying with all USDOT regulations governing alcohol and controlled substances testing requirements; and

     h.  must comply with all pertinent Federal, State, local, and tribunal statutory and regulatory requirements when operating within the United States.

14.     In order to obtain a DOT number, the Defendants and/or their authorized representatives swore under the penalty of perjury to comply with the above "Safety Certifications."

15.     At all times relevant hereto, Mr. Cruz-Mendoza was an unlicensed motor vehicle operator driving a 2012 Peterbilt with VIN #1XP4D49X7CD161034, hauling a trailer with VIN #5TR14830382001200 (hereinafter "Tractor Trailer"), which was owned, leased, assigned, and/or operated by Defendants.

16.     At all relevant times hereto, Intsel was the consignee on the bill of lading.

17.     According to the bill of lading, Mr. Cruz-Mendoza was hauling five (5) separate loads bound for Intsel and Triple on the same trailer, as evidenced by five (5) separate Searing shipping numbers.

18.     At all relevant times hereto, Mr. Cruz-Mendoza was hauling multiple Intsel and/or triple loads on the same trailer.

19.     At all relevant times hereto, Defendants were liable for the actions and/or inactions of Mr. Cruz-Mendoza, who was operating their Tractor Trailer.

20.     Accordingly, Mr. Cruz-Mendoza was subject to all state and federal laws, statutes, regulations, and industry standards governing the safe maintenance and operation of commercial motor vehicles and tandem trailers, including, without limitation, Colorado Statutes governing motor vehicles and the Federal Motor Carrier Safety Regulations set forth subchapters A and B of Chapter III of the Code of Federal Regulations, Title 49 – Transportation.

21.     At all times relevant hereto, the Tractor Trailer was owned, leased, assigned, and/or operated by Defendants and was operated and/or controlled by Mr. Cruz-Mendoza with the consent of Defendants for the financial benefit of Defendants.

22.     At all times relevant hereto, Mr. Cruz-Mendoza was employed and/or contracted to perform services for and was operating the Tractor Trailer for Defendants, under Defendants' USDOT operating authority, and was subject to their supervision, control or right to control, such that Defendants should be considered his actual and statutory employer and therefore vicariously liable for Mr. Cruz-Mendoza's negligence and recklessness.

23.     At all relevant times hereto, Mr. Cruz-Mendoza was the agent, servant, workman, and/or employee of Defendants and was acting in the course and scope of his employment, under the direction, control, and authority of these Defendants.

24.     At all relevant times hereto, Mr. Cruz-Mendoza was driving the Tractor Trailer owned, leased, assigned, and/or operated by Defendants.

25.     At all relevant times hereto, Defendants acted as a single entity and operated and conducted business as a single entity for transporting goods in interstate commerce.

26.     At all relevant times, Defendants were engaged in the joint undertaking of a particular transaction for mutual profit, mutual control, and mutual contribution, and this joint undertaking was memorialized in contract.

27.     At all relevant times hereto, Defendants acted as a joint venture for transporting goods in interstate commerce.

5

28.    Accordingly, Defendants are personally liable, jointly and severally, in partnership, joint venture, or sole proprietorship for the tractor-trailer crash that caused Plaintiff Martin's injuries, damages and losses.

29.    Defendants acted in a manner that, either alone, combined, and/or occurring with the actions of other Defendants, directly and proximately caused the crash and the resulting in injuries suffered to Plaintiff Martin.

30.    At all relevant times hereto, the Defendants were liable for the actions and/or inactions of Mr. Cruz-Mendoza as though the actions and/or inactions were performed by the entities themselves.

31.    At all relevant times, the Federal Motor Carrier Safety Regulations apply hereto, pursuant to 8 CCR 1507-1, *et seq.*

32.    At all relevant times, Defendants were subject to FMCSA Section 376.12, which pertains to leasing requirements.

33.    At all relevant times, Defendants were subject to the FMCSA Section 393.100, which pertains to shifting and falling cargo.

34.    Plaintiff seeks damages for all harms and losses permissible under Colorado law, including, but not limited to, past and future economic damages, past and future noneconomic damages, and physical impairment and disfigurement.

<u>**FACTS RELEVANT TO ALL CLAIMS**</u>

35.    Plaintiff incorporates all prior allegations as though fully set forth therein, verbatim.

36.    On June 11, 2024, at some point before 11:00 a.m., Mr. Cruz-Mendoza arrived at the Searing facility in Cheyenne, Wyoming, to pick up and haul a load of steel piping bound for Intsel.

37.    Mr. Cruz-Mendoza was sent to the Searing facility on June 11, 2024, by TQL, the broker.

38.    Upon arriving at the facility, Mr. Cruz-Mendoza confirmed that an agent of Searing provided him with instructions to give to the forklift driver who was loading his trailer.

39.    According to Mr. Cruz-Mendoza, these instructions contained information such as how many straps were needed to secure the load to the trailer.

40.    While at the Searing facility, Mr. Cruz-Mendoza helped the Searing agent load his trailer.

41.    According to Mr. Cruz-Mendoza's account, he secured the load with tie-down straps as instructed by Searing, and Searing checked the tie-downs prior to allowing Mr. Cruz-Mendoza to exit the Searing facility.

42.    Searing instructed Mr. Cruz-Mendoza on how many straps to use in securing the load.

43.    At all relevant times hereto, Searing and Mr. Cruz-Mendoza were in violation of FMCSA 393.106 regarding the requirements for securing cargo.

44.    At all relevant times hereto, Searing and Mr. Cruz-Mendoza failed to firmly immobilize and/or secure the steel beams in violation of FMCSA 393.106(b).

45.     At all relevant times hereto, Searing and Mr. Cruz-Mendoza failed to secure the cargo with chocks, wedges, or a cradle in violation of FMCSA 393.106(c) when strapping down the cargo.

46.     The aggregate working load limit for tie-downs must be at least one-half times the weight of the article or group of articles to be secured. See FMCSA 393.106(d).

47.     Searing and Mr. Cruz-Mendoza failed to ensure the aggregate working load limit of each tie-down to secure the cargo adequately and safely on June 11, 2024.

48.     In addition, Searing and Mr. Cruz-Mendoza failed to secure the cargo with the appropriate number of tie-down straps to ensure that the cargo would not shift or fall in transport in violation of FMCSA 393.110(e).

49.     Nevertheless, Searing security officers allowed Mr. Cruz-Mendoza to exit the Searing facility.

50.     The actions and/or inactions of Searing and Mr. Cruz-Mendoza caused the cargo to leave the Searing facility unsecured and unsafe and increased the risk of harm to the motoring public, including Plaintiff Martin.

51.     On June 11, 2024, at or around 5:00 p.m., Mr. Cruz-Mendoza was operating the Tractor Trailer owned, leased, and/or assigned by Defendants Southbound on Highway 285 ("HWY-285") near milepost 232, fully loaded with steel piping weighing approximately 127,000 pounds.

52.     On June 11, 2024, at or around 5:00 p.m., Plaintiff Martin was operating her Subaru Legacy on HWY-285 near milepost 232.

53.     Mr. Cruz-Mendoza began to pass the vehicle ahead of him on HWY-285 when he crashed the Tractor Trailer into the left side of one vehicle.

54.     Although he struck a vehicle, Mr. Cruz-Mendoza continued driving at a high rate of speed on HWY-285 and began passing another vehicle.

55.     Upon passing the second vehicle on the left, the load being hauled by Mr. Cruz-Mendoza began spilling onto the second vehicle driven by Scott R. Miller.

56.     Mr. Cruz-Mendoza continued traveling at a high rate of speed before losing control of the Tractor Trailer, causing a chain collision involving five (5) vehicles on HWY-285, including the vehicle driven by Plaintiff Martin.

57.     Upon information and belief, Mr. Cruz-Mendoza was operating the Tractor Trailer at nearly double the posted speed limit in the moments leading up to the crash.

58.     As a result of the Crash, Mr. Cruz-Mendoza was charged with the following:

    a.   18-3-106(1)(a) – Vehicular Homicide;

    b.   18-3-205(1)(a) – Vehicular Assault;

    c.   42-4-1401 (1) – Reckless Driving; and

    d.   42-2-404 (1) – Driving Commercial Vehicle (Not Qualified).

59.     At all relevant times hereto, Mr. Cruz-Mendoza exhibited a conscious disregard for the health and safety of the motoring public by operating the Tractor Trailer at dangerously high speeds for the conditions.

60.     At all relevant times hereto, Mr. Cruz-Mendoza operated the Tractor Trailer in such a reckless, careless, and negligent manner that he did not notice he was rapidly approaching traffic in the moments leading up to the crash.

61.    As a result of the crash, as well as the negligence, carelessness, and recklessness of Defendants, Plaintiff Martin suffered injuries damages and losses.

62.    At all relevant times hereto, Defendants, TQL, Intsel, and Searing knew or should have known that Monique had an unsafe history in performing services as a motor carrier, including, but not limited to, the following[1]:

    a. **Operating a commercial motor vehicle without a license in violation of FMCSA 383.23(a) – October 2022;**

    b. **Failure to have record of duty status in violation of FMCSA 395.8(a)(1) – October 2022;**

    c. **The appropriate license in violation of FMCSA 391.11(b)(5) – November 2022**;

    d. **Failure to have record of duty status in violation of FMCSA 395.8(a)(1) – May 2023;**

    e. Failing to inspect and/or use emergency equipment in violation of FMCSA 392.8 – May 2023;

    f. Failing to have retroreflective material affixed to trailer manufactured after December 1993 in violation of FMCSA 393.11RT – May 2023;

    g. Inoperative and/or defective hazard warning lamp in violation of FMCSA 393.19 – May 2023;

    h. Inoperative required lamp in violation of FMCSA 393.9 – May 2023;

    i. No and/or insufficient warning devices in violation of FMCSA 393.95(f) – May 2023;

    j. Inoperable headlamps in violation of FMCSA 393.9H – May 2023;

    k. Inoperative turn signal in violation of FMCSA 393.9TS – May 2023;

---

[1] The bolded violations resulted in the operator and/or Monique being placed out of service ("OOS").

l. **Failure to have record of duty status in violation of FMCSA 395.8(a)(1) – August 2023**;

m. Failure to have sufficient tie-downs to prevent forward movement for load in violation of FMCSA 393.110(b) – August 2023;

n. **Failure to have record of duty status in violation of FMCSA 395.8(a)(1) – May 2024**; and

o. **Operating in violation of FMCSA Operational Out of Service Order for Failure to Permit Safety Audit in violation of FMCSA 385.337(b) – May 2024.**

63.    Upon information and belief, and at all relevant times hereto, Defendants knew or should have known that Monique did not have operating authority to transport cargo in interstate commerce at the time of booking the subject load carried by Mr. Cruz-Mendoza on June 11, 2024.

64.    Upon information and belief, at the time of the crash, Mr. Cruz-Mendoza was in violation of the FMCSR hours of service limits and consciously chose to operate the Tractor Trailer in a fatigued condition.

65.    Moreover, Defendants participated in, knew, or should have known that Mr. Cruz-Mendoza was operating over hours, driving while fatigued, and otherwise operating the Tractor Trailer in an unsafe, dangerous, and reckless condition in violation of the FMCSR and Colorado law.

66.    At all relevant times, upon information and belief, Mr. Cruz-Mendoza's fatigued condition impaired his judgment, perception, and reaction to such an extent that he inexplicably crashed the Tractor Trailer into other vehicles without braking.

67.    At all relevant times, upon information and belief, Mr. Cruz-Mendoza drove in a distracted manner such that he failed to recognize the traffic conditions ahead of him prior to causing the crash on HWY-285.

68. At all relevant times hereto, Mr. Cruz-Mendoza exhibited a conscious disregard for the health and safety of the motoring public by recklessly failing to ensure that his load was tied down properly.

69. At all relevant times, Defendants knew of Mr. Cruz-Mendoza's reckless and dangerous driving record and chose to hire him anyway.

70. This information was known and/or readily available to Defendants, all before the crash on June 11, 2024.

71. At all relevant times, upon information and belief, Defendants knew or should have known that Mr. Cruz-Mendoza was not a legally licensed commercial motor operator.

72. At all relevant times, the FMCSA, as part of its Safety Management System, maintained a user-friendly website available to the public that tracks the registration, safety, and compliance of all motor carriers with a USDOT number, such as Monique. The online FMCSA information also provided historical information and easy to understand explanations of how to use the site and what each category of information and score means. The FMCSA's online public information also listed the crashes and safety violations for the last 24 months.

73. Defendants were aware of the FMCSA website.

74. Moreover, despite the deplorable safety record, incompetence, and dangerous behavior of Mr. Cruz-Mendoza, Defendants negligently, recklessly, and with conscious disregard for the safety of the motoring public operated, selected, hired, retained, and/or assigned him to deliver goods to its customers using tractors and trailers.

75. At all relevant times, Defendants exercised complete control over the dispatching of the Tractor Trailer driven by Mr. Cruz-Mendoza at the time of the crash.

76. At all relevant times, Defendants exercised complete control over the routing of the Tractor Trailer driven by Mr. Cruz-Mendoza at the time of the crash.

77. At all relevant times, Mr. Cruz-Mendoza failed to adjust his speed to match the conditions on the roadway ahead in violation of the Commercial Motor Vehicle Manual 2.6 – Controlling Speed.

78. At all relevant times, Mr. Cruz-Mendoza failed to keep proper braking distance between the Tractor Trailer and others lawfully using the roadway in violation of the Commercial Motor Vehicle Manual 2.6.1 – Stopping Distances.

79. At all relevant times, Defendants had the contractual right to and/or exercised control over the transportation of the load in question to such a degree that Mr. Cruz-Mendoza should be considered an agent of Defendants.

80. At all relevant times hereto, Plaintiff Martin acted in a safe, prudent, and reasonable manner and in no way contributed to the injuries or damages outlined herein.

## FIRST CLAIM FOR RELIEF
### (Negligence against Defendant Ignacio Cruz-Mendoza)

81. Plaintiff incorporates all prior allegations as though fully set forth therein, verbatim.

82. On June 11, 2024, Ms. Martin was driving north on Highway 285, near milepost 232, in Jefferson County, while Mr. Cruz-Mendoza was driving an 18-wheeler truck south.

83. Mr. Cruz-Mendoza did not have a license to drive the truck.

84. The posted speed limit is 45 MPH – Mr. Cruz-Mendoza was driving over 80 MPH.

85. Mr. Cruz-Mendoza sped up, hit multiple cars, and jack-knifed across the highway into oncoming traffic, causing Plaintiff Martin to crash head on into the tractor trailer.

86.     The negligence of Mr. Cruz-Mendoza caused the crash involving Plaintiff Martin.

87.     Mr. Cruz-Mendoza owed a duty of reasonable care to individuals on the road, including Plaintiff Martin.

88.     Mr. Cruz-Mendoza breached his duty of care as more fully described above.

89.     As a result of the crash, Plaintiff Martin suffered significant injuries, damages, and losses, including a brain injury and impairment.

## SECOND CLAIM FOR RELIEF
**(Negligence Per Se against Defendant Ignacio Cruz-Mendoza)**

90.     Plaintiff incorporates all prior allegations as though fully set forth herein, verbatim.

91.     In the course of the motor vehicle collision described *supra*, Mr. Cruz-Mendoza violated C.R.S. § 42-4-1402, Careless Driving Causing Death.

92.     Plaintiff Martin is a member of the class of persons which the aforementioned statue was intended to protect.

93.     The purpose of the aforementioned statute is to protect against the type of injuries, losses, or damages that Plaintiff sustained.

94.     The above-described actions of Mr. Cruz-Mendoza constitute negligence per se.

95.     As a direct, proximate, and foreseeable result of Defendant Cruz-Mendoza's negligence per se, Plaintiff Martin suffered injuries and damages more fully described *supra*.

## THIRD CLAIM FOR RELIEF
**(Negligent and/or Reckless Hiring/Supervision/retention or Selection of Ignacio Cruz-Mendoza – Defendants Monique, TQL, Searing and Intsel Steel)**

96.     Plaintiff incorporates all prior allegations as though fully set forth herein, verbatim.

97.    Defendants had an obligation and duty to hire, retain and supervise drivers who operate their vehicles in a safe and prudent manner.

98.    "An employer is subject to liability for physical harm to third persons caused by his failure to exercise reasonable care to employ a competent and careful contractor (a) to do work which involves a risk of physical harm unless it is skillfully and carefully done, or (b) to perform any duty which the employer owes to third persons." See Rest. (Second) Torts § 411.

99.    Defendants had an obligation to exercise reasonable care in selecting a competent and careful driver to transport their goods in interstate commerce.

100.    Plaintiff Martin suffered injuries, damages and losses due to the negligence and recklessness of Mr. Cruz-Mendoza.

101.    At all relevant times, Defendants were directly liable for the negligent and reckless hiring, supervision, retention and selection of driver Mr. Cruz-Mendoza.

102.    The negligence, carelessness, and/or recklessness of Defendants, in the hiring, supervision, retention and selection of Mr. Cruz-Mendoza, consisted of the following:

   a. Failing to properly train, monitor, and/or supervise its employees, drivers and/or agents, including Mr. Cruz-Mendoza;

   b. Failing to train and/or properly train Mr. Cruz-Mendoza prior to allowing him to operate its Tractor Trailer;

   c. Hiring and/or continuing to employ Mr. Cruz-Mendoza even though it knew or should have known that his violation of the FMCSA hours of service made him unfit to operate a commercial vehicle safely;

   d. Hiring and/or continuing to employ Mr. Cruz-Mendoza even though he had a propensity for driving violations;

   e. Hiring and/or continuing to employ Mr. Cruz-Mendoza even though he had a propensity for violating the "Rules of the Road" and FMCSR

15

f.  Failing to do preventable analysis as recommended by the FMSCR;

g.  Failing to have an appropriate disciplinary policy within the company;

h.  Hiring and/or continuing to employ Mr. Cruz-Mendoza even though it knew or should have known that his propensity to break the vehicular rules could and/or would put the driving public at risk;

i.  Permitting Mr. Cruz-Mendoza to operate its Tractor Trailer when it knew or should have known that he was not properly qualified and/or trained;

j.  Allowing Mr. Cruz-Mendoza to operate tractor-trailers in its possession when it knew or should have known that such operation posed a risk of danger to others lawfully on the roadway;

k.  Failing to adopt appropriate employee manuals and/or training procedures;

l.  Failing to enforce both written and unwritten policies of Defendants;

m.  Failing to ensure that its employees, drivers, and/or agents were aware of and complied with the written and unwritten policies of Defendants;

n.  Failing to implement and/or enforce an effective safety system;

o.  Failing to ensure that its management personnel and drivers were aware of the requirements and dictates of the FMCSA regulations;

p.  Failing to ensure that its employees, drivers, and/or agents complied with the provisions of the FMCSA regulations;

q.  Failing to ensure that its employees, drivers, and/or agents were aware of and complied with rules, laws, and regulations pertaining to and governing the operation of commercial vehicles;

r.  Violating the applicable rules, laws, and regulations pertaining to and governing the operation of commercial vehicles;

s.  Failing to monitor and/or regulate the actions of its drivers;

t.  Failing to monitor and/or regulate the hours of its drivers;

u.  Failing to have an auditing system in place to audit its drivers' logs, or if a system is in place, failing to use it appropriately;

v.  Failing to use a third-party vendor to audit their drivers' logs, or if they did use a third-party vendor, failing to use it appropriately;

w.  Failing to have policies and mechanisms in place to address cumulative fatigue in its drivers;

x.  Placing more emphasis on profits than on safety of its drivers and the motoring public;

y.  Knowingly violating federal and state law regarding the responsibilities of motor carriers and the operation of commercial vehicles;

z.  Failing to act upon and remedy violations of FMCSA regulation 383.23;

aa. Failing to act upon and remedy violations of FMCSA regulation 391.11;

bb. Failing to act upon and remedy violations of FMCSA regulation 392.14 and the Uniform Commercial Driver's Manual;

cc. Failing to act upon and remedy violations of FMCSA regulation 393.100;

dd. Failing to act upon and remedy violations of FMCSA regulation 395.8;

ee. Failing to act upon and remedy known violations of industry standards;

ff. Acting in a conscious disregard for the rights and safety of Plaintiff Martin;

gg. Failing to have appropriate policies and procedures with regard to hiring and retention of drivers;

hh. Failing to follow the written and/or unwritten policies and procedures with regard to hiring and retention of its drivers;

ii. Failing to have appropriate policies and procedures with regard to monitoring of its drivers;

jj. Failing to follow the written and/or unwritten policies and procedures with regard to monitoring its drivers;

17

kk. Consciously disregarding federal and state law regarding the responsibilities of motor carriers and the operation of commercial vehicles;

ll. Violating all applicable provisions of the FMCSA;

mm. Failing to suspend, discipline, or provide remedial training to Mr. Cruz-Mendoza prior to the Crash despite his history of unsafe driving practices; and

nn. Habitually and recklessly disregarding state and federal laws, regulations, and industry standards governing the safe hiring, training and retention of tractor-trailer drivers, the safe operation of a motor carrier transporting goods in interstate commerce, and the safe operation of commercial motor vehicles that created a zone and culture of danger that constituted a dangerous mode of operation, which was reasonably anticipated to cause injury and death to the motoring public and created a danger to all motorists exposed to its unsafe commercial motor vehicle drivers like Mr. Cruz-Mendoza.

103. As a result of the above-stated acts and omissions, Plaintiff injuries, damages and losses.

**FOURTH CLAIM FOR RELIEF**
**(Negligent Undertaking – Defendant Monique)**

104. Plaintiff incorporates all prior allegations as though fully set forth herein, verbatim.

105. Monique is subject to liability for the physical harm caused to third persons for its failure to exercise reasonable care to protect its undertakings.

106. Monique had a contractual obligation to transport goods efficiently and safely in interstate commerce on June 11, 2024.

107. Monique undertook, for consideration, a duty to render these services.

108. Monique assumed an obligation to render transportation of goods in interstate commerce.

109. Monique owed a duty of care to those third parties legally traveling on HWY-285, including the Plaintiff Martin on the date and time of the crash.

110. Monique failed to exercise reasonable care in complying with the FMCSA, thereby increasing the risk of harm to the motoring public that a future crash will occur.

111. Upon information and belief, Monique knew that Mr. Cruz-Mendoza did not have a commercial driver's license ("CDL") at the time of his hiring on April 10, 2024.

112. By hiring a driver who did not possess a valid CDL, such as Mr. Cruz-Mendoza, Monique knew or should have known that the likelihood of Mr. Cruz-Mendoza causing a crash increased exponentially.

113. Monique failed to exercise reasonable care and increased the risk of harm in failing to transport goods adequately and safely on HWY-285 on June 11, 2024.

114. Additionally, Monique undertook the performance of said duties and was negligent in its undertaking in the following ways:

   a. Failing to properly train, monitor, and/or supervise its employees, drivers and/or agents including Mr. Cruz-Mendoza;

   b. Failing to properly train, monitor, and/or supervise its employees, drivers and/or agents including Mr. Cruz-Mendoza;

   c. Failing to train and/or properly train Mr. Cruz-Mendoza prior to allowing him to operate its Tractor Trailer;

   d. Hiring and/or continuing to employ Mr. Cruz-Mendoza even though it knew or should have known that his violation of the FMCSA hours of service made him unfit to operate a commercial vehicle safely;

   e. Hiring and/or continuing to employ Mr. Cruz-Mendoza even though he had a propensity for driving violations;

   f. Hiring and/or continuing to employ Mr. Cruz-Mendoza even though he had a propensity for violating the "Rules of the Road" and FMCSR;

g.  Failing to do preventable analysis as recommended by the FMSCR;

h.  Failing to have an appropriate disciplinary policy within the company;

i.  Hiring and/or continuing to employ Mr. Cruz-Mendoza even though it knew or should have known that his propensity to break the vehicular rules could and/or would put the driving public at risk;

j.  Permitting Mr. Cruz-Mendoza to operate its Tractor Trailer when it knew or should have known that he was not properly qualified and/or trained;

k.  Allowing Mr. Cruz-Mendoza to operate tractor-trailers in its possession when it knew or should have known that such operation posed a risk of danger to others lawfully on the roadway;

l.  Failing to adopt appropriate employee manuals and/or training procedures;

m.  Failing to enforce both written and unwritten policies of Defendants;

n.  Failing to ensure that its employees, drivers, and/or agents were aware of and complied with the written and unwritten policies of Defendants;

o.  Failing to implement and/or enforce an effective safety system;

p.  Failing to ensure that its management personnel and drivers were aware of the requirements and dictates of the FMCSA regulations;

q.  Failing to ensure that its employees, drivers, and/or agents complied with the provisions of the FMCSA regulations;

r.  Failing to ensure that its employees, drivers, and/or agents were aware of and complied with rules, laws, and regulations pertaining to and governing the operation of commercial vehicles;

s.  Violating the applicable rules, laws, and regulations pertaining to and governing the operation of commercial vehicles;

t.  Failing to monitor and/or regulate the actions of its drivers;

u.  Failing to monitor and/or regulate the hours of its drivers;

v.  Failing to have an auditing system in place to audit its drivers' logs, or if a system is in place, failing to use it appropriately;

w.  Failing to use a third-party vendor to audit their drivers' logs, or if they did use a third-party vendor, failing to use it appropriately;

x.  Failing to have policies and mechanisms in place to address cumulative fatigue in its drivers;

y.  Placing more emphasis on profits than on safety of its drivers and the motoring public;

z.  Knowingly violating federal and state law regarding the responsibilities of motor carriers and the operation of commercial vehicles;

aa. Failing to act upon and remedy violations of FMCSA regulation 383.23;

bb. Failing to act upon and remedy violations of FMCSA regulation 391.11;

cc. Failing to act upon and remedy violations of FMCSA regulation 392.14 and the Uniform Commercial Driver's Manual;

dd. Failing to act upon and remedy violations of FMCSA regulation 393.100;

ee. Failing to act upon and remedy violations of FMCSA regulation 395.8;

ff. Failing to act upon and remedy known violations of industry standards;

gg. Acting in a conscious disregard for the rights and safety of the Plaintiff Martin;

hh. Failing to have appropriate policies and procedures with regard to hiring of drivers;

ii. Failing to follow the written and/or unwritten policies and procedures with regard to hiring of its drivers;

jj. Failing to have appropriate policies and procedures with regard to monitoring of its drivers;

kk. Failing to follow the written and/or unwritten policies and procedures with regard to monitoring its drivers;

21

ll. Consciously disregarding federal and state law regarding the responsibilities of motor carriers and the operation of commercial vehicles;

mm. Violating all applicable provisions of the FMCSA;

nn. Failing to suspend, discipline, or provide remedial training to Mr. Cruz-Mendoza prior to the Crash despite his history of unsafe driving practices; and

oo. Habitually and recklessly disregarding state and federal laws, regulations, and industry standards governing the safe hiring, training and retention of tractor-trailer drivers, the safe operation of a motor carrier transporting goods in interstate commerce, and the safe operation of commercial motor vehicles that created a zone and culture of danger that constituted a dangerous mode of operation, which was reasonably anticipated to cause injury and death to the motoring public and created a danger to all motorists exposed to its unsafe commercial motor vehicle drivers like Mr. Cruz-Mendoza.

115. As a result of the above-stated acts and omissions, Plaintiff Martin suffered injuries, damages and losses.

**FIFTH CLAIM FOR RELIEF**
**(Negligent and/or Reckless Hiring/Supervision/retention or Selection of Monique - Defendants TQL, Searing and Intsel Steel)**

116. Plaintiff incorporates all prior allegations as though fully set forth herein, verbatim.

117. Defendants had an obligation and duty to hire, retain and supervise drivers who operate its vehicles in a safe and prudent manner.

118. "An employer is subject to liability for physical harm to third persons caused by his failure to exercise reasonable care to employ a competent and careful contractor (a) to do work which involves a risk of physical harm unless it is skillfully and carefully done, or (b) to perform any duty which the employer owes to third persons." See Rest. (Second) Torts § 411.

22

119.    Defendants had an obligation to exercise reasonable care in selecting a competent and careful driver to transport its goods in interstate commerce.

120.    Plaintiff Martin was injured as a result of the unsafe driving of Mr. Cruz-Mendoza.

121.    At all relevant times, Defendants were directly liable for the negligent and reckless hiring, supervision, retention and selection of Monique.

122.    At all relevant times, Defendants knew or should have known that Monique had an unsafe history in performing services as a motor carrier, including, but not limited to:

   a.  Operating a commercial motor vehicle without a license in violation of FMCSA 383.23(a) – October 2022;

   b.  Failure to have record of duty status in violation of FMCSA 395.8(a)(1) – October 2022;

   c.  Operating a commercial motor vehicle without the appropriate license in violation of FMCSA 391.11(b)(5) – November 2022;

   d.  Failure to have record of duty status in violation of FMCSA 395.8(a)(1) – May 2023;

   e.  Failing to inspect and/or use emergency equipment in violation of FMCSA 392.8 – May 2023;

   f.  Failing to have retroreflective material affixed to trailer manufactured after December 1993 in violation of FMCSA 393.11RT – May 2023;

   g.  Inoperative and/or defective hazard warning lamp in violation of FMCSA 393.19 – May 2023;

   h.  Inoperative required lamp in violation of FMCSA 393.9 – May 2023;

   i.  No and/or insufficient warning devices in violation of FMCSA 393.95(f) – May 2023;

   j.  Inoperable headlamps in violation of FMCSA 393.9H – May 2023;

23

k.  Inoperative turn signal in violation of FMCSA 393.9TS – May 2023;

l.  Failure to have record of duty status in violation of FMCSA 395.8(a)(1) – August 2023;

m. Failure to have sufficient tie-downs to prevent forward movement for load in violation of FMCSA 393.110(b) – August 2023;

n.  Failure to have record of duty status in violation of FMCSA 395.8(a)(1) – May 2024; and

o.  Operating in violation of FMCSA Operational Out of Service Order for Failure to Permit Safety Audit in violation of FMCSA 385.337(b) – May 2024.

123.  Additionally, the negligence, carelessness, and/or recklessness of Defendants, in the hiring, supervision, retention and selection of Monique as a carrier consisted of the following:

a.  Failing to properly train, monitor, and/or supervise its employees, drivers and/or agents including Monique;

b.  Failing to train and/or properly train Mr. Cruz-Mendoza prior to allowing him to operate its Tractor Trailer;

c.  Hiring and/or continuing to employ Monique even though it knew or should have known that their violation of the FMCSA hours of service made the company unfit to operate a commercial vehicle safely;

d.  Hiring and/or continuing to employ Monique even though the company had a propensity for driving violations;

e.  Hiring and/or continuing to employ Monique even though the company had a propensity for violating the "Rules of the Road" and FMCSR

f.  Failing to do preventable analysis as recommended by the FMSCR;

g.  Failing to have an appropriate disciplinary policy within the company;

h.  Hiring and/or continuing to employ Monique even though it knew or should have known that its propensity to break the vehicular rules could and/or would put the driving public at risk;

i.  Permitting Monique to carry its loads when it knew or should have known that the company was not properly qualified and/or trained;

24

j.  Allowing Monique to operate tractor-trailers in its possession when it knew or should have known that such operation posed a risk of danger to others lawfully on the roadway;

k.  Failing to adopt appropriate employee manuals and/or training procedures;

l.  Failing to enforce both written and unwritten policies of Defendants;

m.  Failing to ensure that its employees, drivers, and/or agents were aware of and complied with the written and unwritten policies of Defendants;

n.  Failing to implement and/or enforce an effective safety system;

o.  Failing to ensure that its management personnel and drivers were aware of the requirements and dictates of the FMCSA regulations;

p.  Failing to ensure that its employees, drivers, and/or agents complied with the provisions of the FMCSA regulations;

q.  Failing to ensure that its employees, drivers, and/or agents were aware of and complied with rules, laws, and regulations pertaining to and governing the operation of commercial vehicles;

r.  Violating the applicable rules, laws, and regulations pertaining to and governing the operation of commercial vehicles;

s.  Failing to monitor and/or regulate the actions of its drivers;

t.  Failing to monitor and/or regulate the hours of its drivers;

u.  Failing to have an auditing system in place to audit its drivers' logs, or if a system is in place, failing to use it appropriately;

v.  Failing to use a third-party vendor to audit their drivers' logs, or if they did use a third-party vendor, failing to use it appropriately;

w.  Failing to have policies and mechanisms in place to address cumulative fatigue in its drivers;

x.  Placing more emphasis on profits than on safety of its drivers and the motoring public;

y.  Knowingly violating federal and state law regarding the responsibilities of motor carriers and the operation of commercial vehicles;

25

z.  Failing to act upon and remedy violations of FMCSA regulation 383.23;

aa. Failing to act upon and remedy violations of FMCSA regulation 391.11;

bb. Failing to act upon and remedy violations of FMCSA regulation 392.14 and the Uniform Commercial Driver's Manual;

cc. Failing to act upon and remedy violations of FMCSA regulation 393.100;

dd. Failing to act upon and remedy violations of FMCSA regulation 395.8;

ee. Failing to act upon and remedy known violations of industry standards;

ff. Acting in a conscious disregard for the rights and safety of the Plaintiff Martin;

gg. Failing to have appropriate policies and procedures with regard to hiring of drivers;

hh. Failing to follow the written and/or unwritten policies and procedures with regard to hiring of its drivers;

ii. Failing to have appropriate policies and procedures with regard to monitoring of its drivers;

jj. Failing to follow the written and/or unwritten policies and procedures with regard to monitoring its drivers;

kk. Consciously disregarding federal and state law regarding the responsibilities of motor carriers and the operation of commercial vehicles;

ll. Violating all applicable provisions of the FMCSA;

mm.Failing to suspend, discipline, or provide remedial training to Monique prior to the Crash despite its history of unsafe driving practices; and

nn. Habitually and recklessly disregarding state and federal laws, regulations, and industry standards governing the safe hiring, training and retention of tractor-trailer drivers, the safe operation of a motor carrier transporting goods in interstate commerce, and the safe operation of commercial motor vehicles that created a zone and culture of danger that constituted a dangerous mode of operation, which was reasonably anticipated to cause injury and death to the motoring public and created

26

a danger to all motorists exposed to its unsafe commercial motor vehicle drivers like Mr. Cruz-Mendoza.

124. As a result of the above-stated acts and omissions, Plaintiff Martin suffered injuries, damages and losses.

## SIXTH CLAIM FOR RELIEF
### (Negligent Undertaking – Defendant TQL)

125. Plaintiff incorporates all prior allegations as though fully set forth herein, verbatim.

126. TQL is subject to liability for the physical harm caused to third persons for its failure to exercise reasonable care to protect its undertakings.

127. TQL had a contractual obligation to transport goods efficiently and safely in interstate commerce on June 11, 2024.

128. TQL undertook, for consideration, a duty to render these services

129. TQL assumed an obligation to render transportation of goods in interstate commerce.

130. TQL owed a duty of care to those third parties legally traveling on HWY-285, including the Plaintiff Martin on the date and time of the crash.

131. Upon information and belief, TQL knew that both Monique and Mr. Cruz-Mendoza had a history of unsafe driving violations.

132. By hiring a company and a driver with a history of unsafe driving violations, such as Monique and Mr. Cruz-Mendoza, TQL knew that the likelihood of Mr. Cruz-Mendoza causing a crash increased exponentially.

133. TQL failed to exercise reasonable care and increased the risk of harm in failing to transport goods adequately and safely on HWY-285 on June 11, 2024.

27

134. Additionally, TQL undertook the performance of said duties and was negligent in its undertaking in the following ways:

a. Failing to properly train, monitor, and/or supervise its employees, drivers and/or agents including Mr. Cruz-Mendoza;

b. Failing to train and/or properly train Mr. Cruz-Mendoza prior to allowing him to operate its Tractor Trailer;

c. Hiring and/or continuing to employ Mr. Cruz-Mendoza even though it knew or should have known that his violation of the FMCSA hours of service made him unfit to safely operate a commercial vehicle;

d. Hiring and/or continuing to employ Mr. Cruz-Mendoza even though he had a propensity for driving violations;

e. Hiring and/or continuing to employ Mr. Cruz-Mendoza even though he had a propensity for violating the "Rules of the Road" and FMCSR

f. Failing to do preventable analysis as recommended by the FMSCR;

g. Failing to have an appropriate disciplinary policy within the company;

h. Hiring and/or continuing to employ Mr. Cruz-Mendoza even though it knew or should have known that his propensity to break the vehicular rules could and/or would put the driving public at risk;

i. Permitting Mr. Cruz-Mendoza to operate its Tractor Trailer when it knew or should have known that he was not properly qualified and/or trained;

j. Allowing Mr. Cruz-Mendoza to operate tractor-trailers in its possession when it knew or should have known that such operation posed a risk of danger to others lawfully on the roadway;

k. Failing to adopt appropriate employee manuals and/or training procedures;

l. Failing to enforce both written and unwritten policies of Defendants;

m. Failing to ensure that its employees, drivers, and/or agents were aware of and complied with the written and unwritten policies of Defendants;

n. Failing to implement and/or enforce an effective safety system;

28

o.  Failing to ensure that its management personnel and drivers were aware of the requirements and dictates of the FMCSA regulations;

p.  Failing to ensure that its employees, drivers, and/or agents complied with the provisions of the FMCSA regulations;

q.  Failing to ensure that its employees, drivers, and/or agents were aware of and complied with rules, laws and regulations pertaining to and governing the operation of commercial vehicles;

r.  Violating the applicable rules, laws, and regulations pertaining to and governing the operation of commercial vehicles;

s.  Failing to monitor and/or regulate the actions of its drivers;

t.  Failing to monitor and/or regulate the hours of its drivers;

u.  Failing to have an auditing system in place to audit its drivers' logs, or if a system is in place, failing to use it appropriately;

v.  Failing to use a third-party vendor to audit their drivers' logs, or if they did use a third-party vendor, failing to use it appropriately;

w.  Failing to have policies and mechanisms in place to address cumulative fatigue in its drivers;

x.  Placing more emphasis on profits than on safety of its drivers and the motoring public;

y.  Knowingly violating federal and state law regarding the responsibilities of motor carriers and the operation of commercial vehicles;

z.  Failing to act upon and remedy violations of FMCSA regulation 383.23;

aa. Failing to act upon and remedy violations of FMCSA regulation 391.11;

bb. Failing to act upon and remedy violations of FMCSA regulation 392.14 and the Uniform Commercial Driver's Manual;

cc. Failing to act upon and remedy violations of FMCSA regulation 393.100;

dd. Failing to act upon and remedy violations of FMCSA regulation 395.8;

ee. Failing to act upon and remedy known violations of industry standards;

29

ff. Acting in a conscious disregard for the rights and safety of the Plaintiff Martin;

gg. Failing to have appropriate policies and procedures with regard to hiring of drivers;

hh. Failing to follow the written and/or unwritten policies and procedures with regard to hiring of its drivers;

ii. Failing to have appropriate policies and procedures with regard to monitoring of its drivers;

jj. Failing to follow the written and/or unwritten policies and procedures with regard to monitoring its drivers;

kk. Consciously disregarding federal and state law regarding the responsibilities of motor carriers and the operation of commercial vehicles;

ll. Violating all applicable provisions of the FMCSA;

mm. Failing to suspend, discipline, or provide remedial training to Mr. Cruz-Mendoza prior to the Crash despite his history of unsafe driving practices; and

nn. Habitually and recklessly disregarding state and federal laws, regulations, and industry standards governing the safe hiring, training and retention of tractor-trailer drivers, the safe operation of a motor carrier transporting goods in interstate commerce, and the safe operation of commercial motor vehicles that created a zone and culture of danger that constituted a dangerous mode of operation, which was reasonably anticipated to cause injury and death to the motoring public and created a danger to all motorists exposed to its unsafe commercial motor vehicle drivers like Mr. Cruz-Mendoza.

135.    As a result of the above-stated acts and omissions, Plaintiff Martin suffered injuries, damages and losses.

## SEVENTH CLAIM FOR RELIEF
### (Negligent Undertaking – Defendant Intsel Steel)

136.    Plaintiff incorporates all prior allegations as though fully set forth herein, verbatim.

30

137.    Intsel is subject to liability for the physical harm caused to third persons for its failure to exercise reasonable care to protect its undertakings.

138.    Intsel had a contractual obligation to transport goods efficiently and safely in interstate commerce on June 11, 2024.

139.    Intsel undertook, for consideration, a duty to render these services.

140.    Intsel assumed an obligation to render transportation of goods in interstate commerce.

141.    Intsel owed a duty of care to those third parties legally traveling on HWY-285, including the Plaintiff Martin on the date and time of the crash.

142.    Upon information and belief, Intsel knew that both Monique and Mr. Cruz-Mendoza had a history of unsafe driving violations.

143.    By hiring a company and a driver with a history of unsafe driving violations, such as Monique and Mr. Cruz-Mendoza, Intsel knew that the likelihood of Mr. Cruz-Mendoza causing a crash increased exponentially.

144.    Intsel failed to exercise reasonable care and increased the risk of harm in failing to transport goods adequately and safely on HWY-285 on June 11, 2024.

145.    Additionally, Intsel undertook the performance of said duties and was negligent in its undertaking in the following ways:

> a. Failing to properly train, monitor, and/or supervise its employees, drivers and/or agents, including Mr. Cruz-Mendoza;
>
> b. Failing to train and/or properly train Mr. Cruz-Mendoza prior to allowing him to operate its Tractor Trailer;

31

c. Hiring and/or continuing to employ Mr. Cruz-Mendoza even though it knew or should have known that his violation of the FMCSA hours of service made him unfit to operate a commercial vehicle safely;

d. Hiring and/or continuing to employ Mr. Cruz-Mendoza even though he had a propensity for driving violations;

e. Hiring and/or continuing to employ Mr. Cruz-Mendoza even though he had a propensity for violating the "Rules of the Road" and FMCSR

f. Failing to do preventable analysis as recommended by the FMSCR;

g. Failing to have an appropriate disciplinary policy within the company;

h. Hiring and/or continuing to employ Mr. Cruz-Mendoza even though it knew or should have known that his propensity to break the vehicular rules could and/or would put the driving public at risk;

i. Permitting Mr. Cruz-Mendoza to operate its Tractor Trailer when it knew or should have known that he was not properly qualified and/or trained;

j. Allowing Mr. Cruz-Mendoza to operate tractor-trailers in its possession when it knew or should have known that such operation posed a risk of danger to others lawfully on the roadway;

k. Failing to adopt appropriate employee manuals and/or training procedures;

l. Failing to enforce both written and unwritten policies of Defendants;

m. Failing to ensure that its employees, drivers, and/or agents were aware of and complied with the written and unwritten policies of Defendants;

n. Failing to implement and/or enforce an effective safety system;

o. Failing to ensure that its management personnel and drivers were aware of the requirements and dictates of the FMCSA regulations;

p. Failing to ensure that its employees, drivers, and/or agents complied with the provisions of the FMCSA regulations;

q. Failing to ensure that its employees, drivers, and/or agents were aware of and complied with rules, laws and regulations pertaining to and governing the operation of commercial vehicles;

32

r. Violating the applicable rules, laws, and regulations pertaining to and governing the operation of commercial vehicles;

s. Failing to monitor and/or regulate the actions of its drivers;

t. Failing to monitor and/or regulate the hours of its drivers;

u. Failing to have an auditing system in place to audit its drivers' logs, or if a system is in place, failing to use it appropriately;

v. Failing to use a third-party vendor to audit their drivers' logs, or if they did use a third-party vendor, failing to use it appropriately;

w. Failing to have policies and mechanisms in place to address cumulative fatigue in its drivers;

x. Placing more emphasis on profits than on safety of its drivers and the motoring public;

y. Knowingly violating federal and state law regarding the responsibilities of motor carriers and the operation of commercial vehicles;

z. Failing to act upon and remedy violations of FMCSA regulation 383.23;

aa. Failing to act upon and remedy violations of FMCSA regulation 391.11;

bb. Failing to act upon and remedy violations of FMCSA regulation 392.14 and the Uniform Commercial Driver's Manual;

cc. Failing to act upon and remedy violations of FMCSA regulation 393.100;

dd. Failing to act upon and remedy violations of FMCSA regulation 395.8;

ee. Failing to act upon and remedy known violations of industry standards;

ff. Acting in a conscious disregard for the rights and safety of the Plaintiff Martin;

gg. Failing to have appropriate policies and procedures with regard to hiring of drivers;

hh. Failing to follow the written and/or unwritten policies and procedures with regard to hiring of its drivers;

ii. Failing to have appropriate policies and procedures with regard to monitoring of its drivers;

jj. Failing to follow the written and/or unwritten policies and procedures with regard to monitoring its drivers;

kk. Consciously disregarding federal and state law regarding the responsibilities of motor carriers and the operation of commercial vehicles;

ll. Violating all applicable provisions of the FMCSA;

mm. Failing to suspend, discipline, or provide remedial training to Mr. Cruz-Mendoza prior to the Crash despite his history of unsafe driving practices; and

nn. Habitually and recklessly disregarding state and federal laws, regulations, and industry standards governing the safe hiring, training and retention of tractor-trailer drivers, the safe operation of a motor carrier transporting goods in interstate commerce, and the safe operation of commercial motor vehicles that created a zone and culture of danger that constituted a dangerous mode of operation, which was reasonably anticipated to cause injury and death to the motoring public and created a danger to all motorists exposed to its unsafe commercial motor vehicle drivers like Mr. Cruz-Mendoza.

147. As a result of the above-stated acts and omissions, Plaintiff Martin suffered injuries, damages and losses.

**EIGHTH CLAIM FOR RELIEF**
**(Negligent Undertaking – Defendant Searing)**

148. Plaintiff incorporates all prior allegations as though fully set forth herein, verbatim.

149. Searing is subject to liability for the physical harm caused to third persons for its failure to exercise reasonable care to protect its undertakings.

150. Searing had a contractual obligation to transport goods efficiently and safely in interstate commerce on June 11, 2024.

151. Searing undertook, for consideration, a duty to render these services.

34

152. Searing assumed an obligation to render transportation of goods in interstate commerce.

153. Searing owed a duty of care to those third parties legally traveling on HWY-285, including the Plaintiff Martin on the date and time of the crash.

154. Upon information and belief, Searing knew that both Monique and Mr. Cruz-Mendoza had a history of unsafe driving violations.

155. By hiring a company and a driver with a history of unsafe driving violations, such as Monique and Mr. Cruz-Mendoza, Searing knew that the likelihood of Mr. Cruz-Mendoza causing a crash increased exponentially.

156. Searing failed to exercise reasonable care and increased the risk of harm in failing to transport goods adequately and safely on HWY-285 on June 11, 2024.

157. Additionally, Searing undertook the performance of said duties and was negligent in its undertaking in the following ways:

    a. Failing to properly train, monitor, and/or supervise its employees, drivers and/or agents, including Mr. Cruz-Mendoza;

    b. Failing to train and/or properly train Mr. Cruz-Mendoza prior to allowing him to operate its Tractor Trailer;

    c. Hiring and/or continuing to employ Mr. Cruz-Mendoza even though it knew or should have known that his violation of the FMCSA hours of service made him unfit to operate a commercial vehicle safely;

    d. Hiring and/or continuing to employ Mr. Cruz-Mendoza even though he had a propensity for driving violations;

    e. Hiring and/or continuing to employ Mr. Cruz-Mendoza even though he had a propensity for violating the "Rules of the Road" and FMCSR

    f. Failing to do preventable analysis as recommended by the FMSCR;

    g. Failing to have an appropriate disciplinary policy within the company;

h.  Hiring and/or continuing to employ Mr. Cruz-Mendoza even though it knew or should have known that his propensity to break the vehicular rules could and/or would put the driving public at risk;

i.  Permitting Mr. Cruz-Mendoza to operate its Tractor Trailer when it knew or should have known that he was not properly qualified and/or trained;

j.  Allowing Mr. Cruz-Mendoza to operate tractor-trailers in its possession when it knew or should have known that such operation posed a risk of danger to others lawfully on the roadway;

k.  Failing to adopt appropriate employee manuals and/or training procedures;

l.  Failing to enforce both written and unwritten policies of Defendants;

m.  Failing to ensure that its employees, drivers, and/or agents were aware of and complied with the written and unwritten policies of Defendants;

n.  Failing to implement and/or enforce an effective safety system;

o.  Failing to ensure that its management personnel and drivers were aware of the requirements and dictates of the FMCSA regulations;

p.  Failing to ensure that its employees, drivers, and/or agents complied with the provisions of the FMCSA regulations;

q.  Failing to ensure that its employees, drivers, and/or agents were aware of and complied with rules, laws and regulations pertaining to and governing the operation of commercial vehicles;

r.  Violating the applicable rules, laws, and regulations pertaining to and governing the operation of commercial vehicles;

s.  Failing to monitor and/or regulate the actions of its drivers;

t.  Failing to monitor and/or regulate the hours of its drivers;

u.  Failing to have an auditing system in place to audit its drivers' logs, or if a system is in place, failing to use it appropriately;

v.  Failing to use a third-party vendor to audit their drivers' logs, or if they did use a third-party vendor, failing to use it appropriately;

36

w.  Failing to have policies and mechanisms in place to address cumulative fatigue in its drivers;

x.  Placing more emphasis on profits than on safety of its drivers and the motoring public;

y.  Knowingly violating federal and state law regarding the responsibilities of motor carriers and the operation of commercial vehicles;

z.  Failing to act upon and remedy violations of FMCSA regulation 383.23;

aa. Failing to act upon and remedy violations of FMCSA regulation 391.11;

bb. Failing to act upon and remedy violations of FMCSA regulation 392.14 and the Uniform Commercial Driver's Manual;

cc.  Failing to act upon and remedy violations of FMCSA regulation 393.100;

dd. Failing to act upon and remedy violations of FMCSA regulation 395.8;

ee. Failing to act upon and remedy known violations of industry standards;

ff. Acting in a conscious disregard for the rights and safety of the Plaintiff Martin;

gg. Failing to have appropriate policies and procedures with regard to hiring of drivers;

hh. Failing to follow the written and/or unwritten policies and procedures with regard to hiring of its drivers;

ii.  Failing to have appropriate policies and procedures with regard to monitoring of its drivers;

jj.  Failing to follow the written and/or unwritten policies and procedures with regard to monitoring its drivers;

kk. Consciously disregarding federal and state law regarding the responsibilities of motor carriers and the operation of commercial vehicles;

ll.  Violating all applicable provisions of the FMCSA;

37

mm. Failing to suspend, discipline, or provide remedial training to Mr. Cruz-Mendoza prior to the Crash despite his history of unsafe driving practices; and

nn. Habitually and recklessly disregarding state and federal laws, regulations, and industry standards governing the safe hiring, training and retention of tractor-trailer drivers, the safe operation of a motor carrier transporting goods in interstate commerce, and the safe operation of commercial motor vehicles that created a zone and culture of danger that constituted a dangerous mode of operation, which was reasonably anticipated to cause injury and death to the motoring public and created a danger to all motorists exposed to its unsafe commercial motor vehicle drivers like Mr. Cruz-Mendoza.

158.   As a result of the above-stated acts and omissions, Plaintiff Martin suffered injuries, damages and losses.

### NINTH CLAIM FOR RELIEF
#### (Joint Venture – All Defendants)

159.   Plaintiff incorporates all prior allegations as though fully set forth herein, verbatim.

160.   The preceding paragraphs are incorporated herein as though fully set forth below.

161.   On the above-referenced date, place and time, Defendants were engaged in a joint venture to haul goods and material in interstate commerce for profit.

162.   Upon information and belief, Mr. Cruz-Mendoza was paid by all Defendants for this transportation, including allowances for fuel costs.

163.   Upon information and belief, Defendants are in contact through numerous means of communication, including, but not limited to, email, faxes, telephone, and mobile applications to track the status of shipment from origin to delivery.

164.   As a result of the transportation, Defendants earned, or intended to earn, a profit.

165.   On the above-referenced date, place and time, Defendants controlled the Tractor Trailer through its duly authorized agent, servant, and/or employee, Mr. Cruz-Mendoza.

166. On the above-referenced date, place and time, Mr. Cruz-Mendoza was performing a service for the benefit of Defendants, namely the transportation of goods and material for profit.

167. Defendants were aware that Mr. Cruz-Mendoza was transporting the goods and materials.

168. Defendants had the right to control Mr. Cruz-Mendoza in performing this service.

169. Defendants exercised this control over Mr. Cruz-Mendoza, *inter alia*, in the manner described fully herein.

170. Defendants held out Mr. Cruz-Mendoza as an agent, servant, and/or employee such that a reasonable person would conclude that Mr. Cruz-Mendoza was an agent, servant, and/or employee of Defendants and it is vicariously liable for the acts and/or omissions of Mr. Cruz-Mendoza.

171. As a direct and proximate cause of the above-stated acts and omissions, Plaintiff suffered injuries, damages and losses.

## TENTH CLAIM FOR RELIEF
### (Joint Enterprise Liability – All Defendants)

172. Plaintiff incorporates all prior allegations as though fully set forth herein, verbatim.

173. On the above-referenced date, place and time, Defendants were engaged in a joint enterprise to haul steel for profit.

174. Upon information and belief, Mr. Cruz-Mendoza was paid by all Defendants for this transportation, including allowances for fuel costs.

175. Upon information and belief, Defendants are in contact through numerous means of communication, including, but not limited to email, faxes, telephone, and mobile applications to track the status of shipment from origin to delivery.

176.     As a result of the transportation of goods on the above-referenced date, place, and time, Defendants earned or intended to earn a profit.

177.     On the above-referenced date, place and time, Defendants controlled the Tractor Trailer through its fully authorized agent, servant, and/or employee, Mr. Cruz-Mendoza.

178.     On the above-referenced date, place and time, Mr. Cruz-Mendoza was performing a service for the benefit of Defendants, namely the transportation of goods in interstate commerce for profit.

179.     Defendants were aware that Mr. Cruz-Mendoza was transporting goods for profit.

180.     Defendants had the right to control Mr. Cruz-Mendoza in performing these services.

181.     Defendants exercised control over Mr. Cruz-Mendoza, inter alia, in the manner described fully herein.

182.     Defendants held out Mr. Cruz-Mendoza as an agent, servant, and/or employee such that a reasonable person would conclude that Mr. Cruz-Mendoza was an agent, servant, and/or employee of Defendants who are vicariously liable for the acts and/or omissions of Mr. Cruz-Mendoza.

183.     At all relevant times hereto, Defendants enjoyed unified administrative control as all Defendants participated in their full-service motor carrier, transportation and distribution activities to achieve their unified goal of transportation of goods to its final destination in a timely fashion for profit.

184.    At all relevant times hereto, Defendants enjoyed similar or supplementary business functions in their full-service motor carrier, transportation and distribution activities to achieve their unified goal of transportation of goods to its final destination in a timely fashion for profit.

185.    At all relevant times hereto, Defendants acted as affiliated or sister corporations possessing common ownership and/or an administrative nexus.

186.    At all relevant times hereto, Defendants also acted as a joint venture and/or joint enterprise when operating their full-service motor carrier, transportation and distribution activities to achieve their unified goal of delivery of goods to its proper destination in a timely fashion for profit.

187.    At all relevant times hereto, upon information and belief, Defendants, shared and/or utilized the same address and/or building premises, equipment, vehicles, trailers, accountants, attorneys, insurance agents, officers, directors and/or employees.

188.    Upon information and belief, at all relevant times hereto, Defendants were responsible for operational management of Defendants' business and played an active role in the ongoing business activities of Defendants' business and had full authority to direct activities of Defendants' business.

189.    Defendants shared in the profits that were generated and leased and/or owned a common facility from which Defendants operated and shared equipment, office space, facilities, attorneys, accountants, and insurance agents.

190.    As a direct and proximate cause of the above-stated acts and omissions, Plaintiff Martin suffered injuries, damages and losses.

WHEREFORE, Plaintiff respectfully request that this Court enter judgment against Defendants and in her favor for actual damages in an amount to be determined at the time of trial, pre-judgment interest from the date of the accident, post-judgment interest, costs, expert witness fees, and other relief this Court deems just and proper.

Respectfully submitted on November 11, 2025 by:

DezaRae LaCrue
Franklin D. Azar and Associates, P.C.
14426 E. Evans Avenue
Aurora, CO 80014
Telephone: (303) 757-3300
Fax: (303) 759-5203
E-mail: lacrued@fdazar.com
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on November 13, 2025, I electronically filed the foregoing pleading with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Allison Burke, #53916
Theodore J. O'Brian, #61623
TAFT STETTINIUS & HOLLISTER, LLP
675 Fifteenth Street, Suite 3200
Denver, CO 80202
(303) 297-2900
aburke@taftlaw.com
tobrian@taftlaw.com
Attorneys for Defendant TQL Global, LLC

Michael J. Decker, Esq.
Gordon A. Queenan, Esq.
Murphy & Decker, P.C.
730 17th St., Suite 925
Denver, CO 80202
(914) 844-9137
mdecker@murphydecker.com
gqueenan@murphydecker.com
Attorneys for Searing Industries Wyoming, Inc.

Kevin G. Ripplinger, #35165
Patterson Ripplinger PC
5613 DTC Parkway
Suite 400
Greenwood Village, CO 80111
303-741-4539
303-741-5043 (fax)
kripplinger@prpclegal.com
Attorneys  for  Defendant Ignacio Cruz-Mendoza

_____
DezaRae LaCrue
Franklin D. Azar and Associates, P.C.
14426 E. Evans Avenue
Aurora, CO 80014
Telephone: (303) 757-3300
Fax: (303) 759-5203
E-mail: lacrued@fdazar.com
*Attorney for Plaintiff*

43