IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 25-cv-02457-TPO

ANNETTE MARTIN,

     Plaintiff,

v.

IGNACIO CRUZ-MENDOZA;
MANRIQUE AGRAMON;
TOTAL QUALITY LOGISTICS, LLC, a foreign entity registered to do business in Colorado;
SEARING INDUSTRIES WYOMING, INC., a foreign corporation;
MONIQUE TRUCKING, LLC, a foreign corporation; and
INSTEL STEEL- WEST LLC, a foreign corporation,

     Defendants.

---

**DEFENDANT TOTAL QUALITY LOGISTICS, LLC'S FED. R. CIV. P. 12(b)(6)
MOTION TO DISMISS SECOND AMENDED COMPLAINT**

---

Defendant Total Quality Logistics, LLC[1] ("TQL"), pursuant to the preemption doctrine of 49 U.S.C. § 14501(c)(1) and Federal Rule of Civil Procedure 12(b)(6), moves to dismiss Plaintiff Annette Martin's Second Amended Complaint ("SAC") as to TQL.

## I.    INTRODUCTION

This case arises from a June 11, 2024 motor vehicle accident ("Accident") on U.S. Highway 285 involving an 18-wheel tractor-trailer truck ("Tractor Trailer") driven by Defendant Ignacio Cruz-Mendoza ("Cruz-Mendoza"). Plaintiff sustained unidentified injuries in the Accident. At the time of the Accident, Cruz-Mendoza was acting as an agent and employee of Manrique Agramon d/b/a Monique Trucking LLC ("Monique Trucking"), who was retained to transport an interstate shipment of steel goods ("Steel Load") from Searing Industries, Inc.'s ("Searing") facility in Wyoming to the consignee, Intsel Steel West LLC ("Intsel"). TQL was the broker for the Steel Load.

The SAC should be dismissed in full as to TQL for at least three independent reasons. *First*, the SAC's claims against TQL are based entirely on undifferentiated allegations against "Defendants," without identifying any actions or inactions taken specifically by TQL. This improper "group pleading" violates Federal Rule of Civil Procedure 8(a), which requires a short and plain statement of the claim showing the pleader is entitled to relief. Rule 8 demands that each defendant be given fair notice of the claims asserted against it and the factual basis for those claims. Plaintiff's failure to distinguish among the Defendants deprives TQL of the notice to which it is entitled. The lack of individualized allegations is especially problematic in this case given TQL's

---

[1] Plaintiff's Second Amended Complaint names the correct entity – Total Quality Logistics, LLC – rather than TQL Global, LLC – as Defendant. Undersigned counsel files this Motion on behalf of Total Quality Logistics, LLC.

role as <u>broker</u>, and Plaintiff's apparent strategy of naming "everyone and anyone" remotely connected to the Accident lumped together as "Defendants" despite their unique roles. The SAC contains no specific, individualized, factual allegations identifying what TQL allegedly did to give rise to liability. Instead, Plaintiff lumps TQL together with unrelated parties, offering only vague and conclusory assertions.

*Second*, setting aside the threshold pleading defects, Plaintiff's claims against TQL should also be dismissed because they are preempted by the Federal Aviation Administration Authorization Act ("FAAAA"), 49 U.S.C. § 14501(c)(1), which preempts common law tort claims related to a <u>freight broker's</u> hiring or retention of a carrier to perform shipments in interstate commerce. Plaintiff alleges TQL was the broker responsible for arranging transportation of the Steel Load. Under well-established precedent, claims challenging a broker's decision to hire or retain a carrier – whether framed as negligence, negligent hiring, or otherwise – fall squarely within the scope of FAAAA preemption. Accordingly, each of her negligence claims should be dismissed as preempted by the FAAAA.

*Third*, Plaintiff's claims should also be dismissed as against TQL because Plaintiff has not – and cannot – plead the elements of her claims. Plaintiff's "negligent undertaking" claim fails because Plaintiff does not allege TQL assumed any duty except for an existing contractual obligation, which is legally insufficient. And the supposed "contractual obligation" would be fatal to any independent tort under the economic loss doctrine. Plaintiff's claims premised on vicarious liability – joint enterprise liability and joint venture – fail because: (1) the Second Amended Complaint is devoid of facts to establish the special relationship required to impose vicarious liability; and (2) they are unsupported by and non-conclusory allegations showing any actual right

to control the Tractor Trailer. TQL requests the Court dismiss all claims against it with prejudice.

## II.    <u>FACTUAL BACKGROUND</u>

In her Second Amended Complaint, Plaintiff asserts claims against an individual and entities connected to the Accident in different and distinct ways:

- **Motor Carrier**: Monique Trucking, a California limited liability company, conducted <u>freight transportation activities</u> within the State of Colorado. (*Id.* ¶¶ 4–5, 62 (describing Monique as having "an unsafe history in performing services as a *motor carrier*"); 72 ("the FMCSA … maintained a … website … that tracks the registration, safety, and compliance of all *motor carriers* with a USDOT number, such as Monique.").

- **Broker**: TQL, a limited liability company, is a broker and the <u>broker for the Steel Load</u>. (*Id.* ¶¶ 6–7, 37.)

- **Consignee**: Intsel, a limited liability company, was the <u>consignee</u> on the bill of lading for the Steel Load, and the alleged intended recipient for the Steel Load. (*Id.* ¶¶ 9, 16, 36.)

- **Steel Seller and Alleged Loader**: Searing, a California company, <u>has a facility in Cheyenne, Wyoming, where the Steel Load was picked up and loaded</u> on the Tractor Trailer. (*Id.* ¶¶ 8, 36–50.)

- **Driver**: Cruz-Mendoza, an individual, was the <u>driver of the Tractor Trailer involved in the Accident</u>. (*Id.* ¶¶ 2, 15, 17–18, 24, 51–56.)

According to Plaintiff, Cruz-Mendoza arrived at Searing's facility in Cheyenne, Wyoming on June 11, 2024, where Cruz-Mendoza and Searing's agents loaded and secured the Steel Load onto a Tractor Trailer ("Tractor Trailer"). (SAC ¶¶ 36–48.) Cruz-Mendoza departed Searing en route to Intsel. (*Id.* ¶¶ 49, 17–18.) While driving the Tractor Trailor to Intsel, Cruz-Mendoza lost control of the Tractor Trailer, causing a chain collision involving five vehicles on Highway 26, including the vehicle driven by Plaintiff. (*Id.* ¶ 56.)

The Second Amended Complaint includes **three allegations specific to TQL**: (1) TQL is a foreign limited liability company (*id.* ¶ 6); (2) TQL is a broker (*id.* ¶ 7); and (3) TQL sent Cruz-

Mendoza to Searing (*id.* ¶ 37).[2]

While TQL has a different and distinct (and attenuated) relationship to the Accident, Plaintiff lumps TQL in with Monique Trucking, Intsel, Searing, and Cruz-Mendoza and asserts generalized allegations against "Defendants" collectively. (*See, e.g.*, *id.* at 10–15, 19, 21–30, 32–33, 51, 61–62, 63, 65, 69–71, 73–76, 79, 97, 99, 101–102, 117, 119, 121–123, 161–170, 173–189.) For example, Plaintiff alleges all five Defendants:

- "[W]ere or should have been authorized interstate motor carriers" (*Id.* ¶ 10);

- "[O]wned, leased, assigned, and/or operated" the tractor trailer driven by Cruz-Mendoza (the "Tractor Trailer") (*id.* ¶ 15; *see also id.* ¶ 21);

- "Employed" Cruz-Mendoza or "contracted" with Cruz-Mendoza "to perform services (*id.* ¶ 22);

- "[E]xercised complete control over the dispatching of the Tractor Trailer driven by Cruz-Mendoza at the time of the crash." (*Id.* ¶ 75);

- "[E]xercised complete control over the routing of the Tractor Trailer driven by Mr. Cruz-Mendoza at the time of the crash." (*Id.* ¶ 76); and

- "[H]ad the contractual right to and/or exercised control over the transportation of the load in question to such a degree that Mr. Cruz-Mendoza should be considered an agent of Defendants." (*Id.* ¶ 79.)

Against TQL specifically, Plaintiff asserts five different claims for relief – (1) negligent hiring of Cruz-Mendoza; (2) negligent hiring of Monique Trucking; (3) negligent undertaking; (4) joint venture; and (5) joint enterprise liability. None of these claims are supported by specific factual allegations identifying what TQL allegedly did to give rise to liability.

### III.   LEGAL STANDARD

---

[2] Plaintiff also alleges TQL – along with Intsel and Searing – knew or should have known that Monique Trucking "had an unsafe history in performing services as a motor carrier." (SAC ¶ 62.)

4

Fed. R. Civ. P. 8(a)(2) requires a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." "[T]o state a claim in federal court, a complaint must explain what *each defendant* did to him or her; when the defendant did it; how the defendant's actions harmed him or her; and what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007) (emphasis added). "Group pleading" – collective allegations against individual defendants – "violates Rule 8 when a plaintiff fails to distinguish among multiple defendants, including on claims that could not apply to certain defendants." *Carrado v. Daimler AG*, No. 17-cv-3080-WJM-SKC, 2018 WL 4565562, at *3 (D. Colo. Sept. 24, 2018); *Del Castillo v. Estate of Fehd*, No. 1:24-cv-02199-SKC-TPO, 2025 WL 1207584, at *2 (D. Colo. Apr. 25, 2025); *Mao, Inc. v. Penn Enter., Inc.*, No. 1:23-cv-02736-SKC-KAS, 2025 WL 1993702, at *2 (D. Colo. July 17, 2025); *Pinto-Rios v. Brown*, No. 20-CV-3698-RMR-JPO, 2024 WL 1257518, at *7 (D. Colo. Mar. 25, 2024).

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a "complaint must contain enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Dismissal is appropriate under Rule 12(b)(6) "on the basis of an affirmative defense like preemption when the law compels that result." *Caplinger v. Medtronic, Inc.*, 784 F.3d 1335, 1341 (10th Cir. 2015).

## IV.  <u>ARGUMENT</u>

### A.   The Court Should Dismiss Plaintiff's Second Amended Complaint as to TQL Because There Are No Allegations to Support Claims Against TQL.

The Second Amended Complaint should be dismissed in its entirety as to TQL because Plaintiff wholly fails to allege specific misconduct attributable to TQL. By lodging claims against "Defendants" collectively, Plaintiff's SAC deprives TQL of fair notice of the claims alleged against it, requiring dismissal.

The Tenth Circuit has made clear that "[i]t is particularly important … that the complaint make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her." *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008). Group pleading fails this standard. *See, e.g.*, *Carrado*, 2018 WL 4565562, at *3 ("Group pleading violates Rule 8 when a plaintiff fails to distinguish among multiple defendants, including on claims that could not apply to certain defendants."); *Pinto-Rios*, 2024 WL 1257518, at *7 ("Plaintiff's reliance on group pleading requires the Court to speculate concerning which Defendants are charged with what specific conduct. The Court declines to do so.").

Here, Plaintiff asserts five separate claims against TQL but fails to allege any specific conduct by TQL to support her claims. Instead, her allegations are internally inconsistent and facially implausible. For instance, she alleges all Defendants, jointly owned, leased, assigned, and/or operated the Tractor Trailor, jointly employed Cruz-Mendoza, acted as a single entity and "were or should have been authorized interstate motor carriers." (SAC ¶¶ 10, 15, 22, 24–25.) But elsewhere, Plaintiff alleges these Defendants were, separately a motor carrier, broker, consignee, seller, and driver. And as to TQL specifically, Plaintiff pleads that TQL is a broker. (*Id.* ¶ 7.) This internal inconsistency is not just confusing, it is legally significant.

Under federal law, brokers and motor carriers are mutually exclusive roles. The FAAAA defines a broker as "a person, <u>other than a motor carrier</u> … , that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation." 49 U.S.C. § 13102(2) (emphasis added). A company cannot wear both hats for the same shipment. *See, e.g.*, *Hodge v. Molson Coors Bev. Co. USA, LLC*, No. 1:24-cv-04735-SDG, 2025 WL 2525860, at *2 (N.D. Ga. July 29, 2025) (the "role of 'broker' under the Act is—by statutory definition—to arrange for the transportation of goods *by someone else*.").[3] TQL's status as a freight broker carries special legal significance here because federal law broadly preempts negligence claims against freight brokers. (*See* Section B, below.) The SAC recognizes TQL's specific role as is relates to the Accident (*i.e.*, as broker), but the reminder of Plaintiff's allegations intentionally obscure that significant fact. In doing so, Plaintiff lumps TQL in with all other Defendants alleging misconduct for which TQL *cannot* be liable.

Plaintiff's group pleading should not be excused as a preliminary or placeholder effort. This is already a *second amended* pleading. Plaintiff is clearly aware that Defendants played distinct roles. (*See, e.g.*, SAC ¶¶ 24 ("Cruz-Mendoza was driving…"); 38–49 (a Searing agent assisted Cruz-Mendoza in loading the Tractor Trailer).) This is not a case where Plaintiff lacks information to properly differentiate the parties; this is a case where Plaintiff deliberately obscures the wrongdoing of each Defendant, and sidesteps the requirement to plead individualized conduct

---

[3] *See also, e.g.*, *Morales v. OK Trans, Inc.*, No. 2:19-CV-00094, 2024 WL 1348405 at *2 (S.D. Tex. Mar. 29, 2024) (citing *Tryg Ins. V. C.H. Robinson Worldwide, Inc.*, 767 Fed. App'x 284, 286–87 (3d Cir. 2019)) (stating that a company can only wear one "proverbial hat" regarding a particular shipment).

with the goal of manufacturing collective liability on her "joint venture" and "joint enterprise liability" claims which otherwise lack factual foundation. The inconsistency underscores the lack of a coherent theory of liability and renders the entire pleading defective. The Second Amended Complaint fails to meet the pleading standards under *Twombly*, *Iqbal*, and Rule 8, and should be dismissed under Rule 12(b)(6). *See Robbins*, 519 F.3d at 1250.

**B.  Plaintiff's Claims Against TQL Should be Dismissed Because They are Preempted by the Federal Aviation Administration Authorization Act.**

Plaintiff's five tort claims against TQL fail and should be dismissed for a separate, independent reason: the Federal Aviation Administration Authorization Act ("FAAAA"), 49 U.S.C. § 14501(c)(1) preempts these state tort claims against a freight broker, and they are not saved by any applicable safety exception.

1.  <u>Plaintiff's state law claims against TQL must be dismissed because the FAAAA preempts all state common law tort claims against freight brokers.</u>

"A fundamental principle of the Constitution is that Congress has the power to preempt state law." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000); *Chamber of Com. of U.S. v. Edmondson*, 594 F.3d 742, 765 (10th Cir. 2010) ("[I]t has long been recognized that federal law preempts contrary state enactments.") (citing *M'Culloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 405–06 (1819)). In 1994, Congress enacted the FAAAA to solve the "huge problem" of differing state rules for national and regional carriers. *See* H.R. Conf. Rep. No. 677, 103d Cong., 2d Sess. 87 (1994). The FAAAA expressly prohibits states from "enact[ing] or enforc[ing] a law, regulation, or other provision having the force and effect of law relating to a price, route, *or service* of *any motor carrier* … or … *broker*." 49 U.S.C. § 14501(c)(1) (emphasis added). The Supreme Court has interpreted this language broadly, explaining that the statute aims to ensure that "rates, routes,

8

and services" in the transportation industry reflect "maximum reliance on competitive forces." *Rowe v. New Hampshire Motor Transport Assn.*, 552 U.S. 364, 370–71 (2008) (citation omitted). Section 14501(c)(1) is thus broad and preempts state laws that have a "connection with" or "reference to" the prices, routes, or services of a motor carrier or broker. *Id.* at 370 (citation omitted) (emphasis removed); *see also Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992) (The words "relating to" "express a broad pre-emptive purpose."). Even indirect connections to a broker's services are preempted if they have a "significant impact" on the FAAAA's "deregulatory and pre-emption-related objectives." *Rowe*, 552 U.S. at 371.

The FAAAA "bar[s] states from regulating freight forwarders/brokers and motor carriers of property …" *Alpine Fresh, Inc. v. Jala Trucking Corp.*, 181 F. Supp. 3d 250, 254 (D.N.J. 2016). Claims applying a negligence standard would impermissibly "regulate brokers, not 'in their capacity as members of the public,' but in the performance of their core transportation-related services," which the FAAAA expressly preempts. *Aspen Am. Ins. Co. v. Landstar Ranger, Inc.*, 65 F.4th 1261, 1268 (11th Cir. 2023) (quoting *Rowe*, 552 U.S. at 375). The Seventh Circuit's decision in *Ye v. GlobalTranz Enterprises, Inc.*, 74 F.4th 453, 459 (7th Cir. 2023), *cert. denied*, 144 S.Ct. 564 (2024), is particularly instructive. There, the court explained that imposing a negligence standard on brokers would have a significant economic effect on their services:

> By recognizing common-law negligence claims, courts would impose in the name of state law a new and clear duty of care on brokers, the breach of which would result in a monetary judgment. This is exactly what [plaintiff] seeks here against [defendant broker]. To avoid these costly damages payouts, [defendant broker] and other brokers would change how they conduct their services—for instance, by incurring new costs to evaluate motor carriers. Then, by changing their hiring processes, brokers would likely hire different motor carriers than they would have otherwise hired without the state negligence standards. Indeed, that is the centerpiece of [plaintiff's] claim: that [defendant broker] should not have hired [the motor carrier].

9

74 F.4th 453, 459 (7th Cir. 2023), *cert. denied*, 144 S.Ct. 564 (2024). The majority of courts that have considered this issue have applied the FAAAA's express preemption to bar common law negligence claims against freight brokers.

Here, Plaintiff alleges TQL is a broker.[4] (SAC ¶ 7 ("TQL is a broker.").) Accordingly, Plaintiff's five tort claims against TQL are preempted by the FAAAA and should be dismissed. *See Gobble v. Land Jets Trans Inc.*, No. 24-cv-01805-RMR-NRN, 2025 WL 1568100, at *3 (D. Colo. Feb. 12, 2025) (Report & Recommendation) ("common law negligence claims are expressly preempted by the FAAAA"). While Plaintiff attempts to repackage all of her tort claims under various legal theories, each one ultimately challenges TQL's selection of Monique Trucking to transport the Steel Load. This is precisely the type of conduct courts have found to be core broker activity and therefore preempted. *See id.* ("the Court treats Plaintiffs' claim that the [broker defendants] are vicariously liable for their damages the same as their direct liability claim, i.e., it is preempted by the FAAAA"). As explained in *Aspen*, applying a negligence standard to broker conduct "would regulate brokers, not 'in their capacity as members of the public,' but in the performance of their core transportation-related services." *Aspen*, 65 F.4th at 1268 (quoting *Rowe*, 552 U.S. at 375). Because Plaintiff's claims seek to impose liability on TQL for its alleged negligence in performing its broker services, they are expressly preempted by the FAAAA.

        2.     <u>The "safety exception" does not apply to save Plaintiff's claims from the FAAAA's broad, express preemption over state transportation regulations.</u>

---

[4] As noted in Section IV.A, The FAAAA defines a broker as "a person, other than a motor carrier or an employee or agent of a motor carrier, that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation." 49 U.S.C. § 13102(2).

Plaintiff's claims against TQL are preempted by the FAAAA unless an express exception applies. The only potentially relevant exception – the "safety exception" – does not apply here.

Congress created certain exceptions to the FAAAA's otherwise broad preemption over transportation-related regulations. As relevant here, the "safety exception" limits the preemptive effect for "the safety regulatory authority of a State with respect to motor vehicles." 49 U.S.C. § 14501(2)(A). While the Tenth Circuit has not addressed this issue, both the Eleventh and Seventh Circuit Courts of Appeals have held that the FAAAA preempts state law claims for negligent hiring or retention of a motor carrier by a broker. *Aspen*, 65 F.4th 1261; *Ye*, 74 F.4th 453. At least two courts in the District of Colorado have adopted the *Aspen* and *Ye* rationale, concluding that common law negligence claims against a freight broker based merely on the broker's selection of a motor carrier do not trigger the safety exception, meaning that FAAAA preemption applies in those circumstances.[5] *Trujillo v. Nucor Corp.*, No. 1:23-CV-00802-RM-SBP, 2025 WL 1251192, at \*3 (D. Colo. Jan. 2, 2025) (R&R adopted by *Trujillo v. Moore Bros., Inc.*, 2025 WL 1250928 (D. Colo. Mar. 24, 2025) (Moore, J.)); *Gobble*, 2025 WL 1568100 at \*5–6.[6]

---

[5] Total Quality Logistics, LLC, filed a Petition for Writ of Certiorari on August 4, 2025 for the matter *Total Quality Logistics, LLC v. Robert Cox*, 142 F.4th 847 (6th Cir. 2025), requesting the United States Supreme Court resolve the issue of "[w]hether a common-law negligence claim alleged against a freight broker, based on the broker's selection of a motor carrier to provide transportation of cargo, is preempted because it does not fall within the safety exception in Section 14501(c)(2)(A)" of the FAAAA. On October 3, 2025, the Supreme Court granted a Petition for Writ of Certiorari in a similar matter, *Montgomery v. Caribe Transport II, LLC*, 124 F.4th 1053 (7th Cir. 2025), which asks the Supreme Court to resolve the following question: "Does § 14501(c) preempt a state common-law claim against a broker for negligently selecting a motor carrier or driver?"

[6] The majority of courts around the country have too. *See, e.g.*, *Gauthier v. Hard to Stop LLC*, No. 22-10774, 2024 WL 3338944, at \*1 (11th Cir. July 9, 2024) (plaintiff's negligent selection claim against Total Quality Logistics was foreclosed precedent and "her claim 'against a broker' was 'necessarily one step removed from a motor vehicle,' [] and thus not preserved from preemption" by the safety exception) (quoting *Aspen*, 65 F.4th at 1272); *Creagan v. Wal-Mart Transportation,*

In *Trujillo*, the District of Colorado considered a nearly identical set of facts to the case at bar. There, the plaintiffs asserted a negligent hiring claim against a steel manufacturer, Nucor Corporation (and related Nucor entities), based on Nucor's selection of Moore Brothers, Inc. to transport steel products to customers. *Id.* at *1. Moore Brothers, in turn, subcontracted some of the work to Falcon Express, LLC, who employed George Myers. Myers was driving a truck owned by Falcon Express when he failed to stop at a red light and rear-ended a vehicle occupied by the plaintiffs. Nucor moved to dismiss the negligent hiring claim because it was preempted by the FAAAA and the Interstate Commerce Commission Termination Act ("ICCTA").

In siding with the Seventh and Eleventh Circuits, the District of Colorado rejected the Ninth Circuit's rationale in *Miller v. C.H. Robinson Worldwide, Inc.*, 976 F.3d 1016 (9th Cir. 2020), finding that "the general trend of authority among district courts overwhelmingly follows the *Ye/Aspen* line of cases, deeming negligent hiring claims asserted against brokers to be preempted by the FAAAA and not salvaged by the application of the safety exception." *Trujillo*, 2025 WL 1251192, at *4 (R&R adopted by *Trujillo*, 2025 WL 1250928 ).

In her R&R, Magistrate Judge Prose concluded:

> This court agrees with the majority that *Ye* and *Aspen* provide the correct approach for addressing negligent hiring claims asserted against freight brokers. Assuming, without necessarily finding, that common-law negligent hiring claims are state "regulations" under 49 U.S.C. § 14501(c)(1) and are matters which concern "safety" for purposes of 49 U.S.C. § 14501(c)(2)(A), the court finds that they are

---

*LLC*, 354 F. Supp. 3d 808, 814 (N.D. Ohio 2018) ("Because the negligent hiring claim seeks to impose a duty on the service of the broker rather than regulate motor vehicles, I conclude this claim is not within the safety regulatory authority of the state and the exception does not apply."); *Volkova v. C.H. Robinson Co.*, No. 16 C 1883, 2018 WL 741441, at *3 (N.D. Ill. Feb. 7, 2018) (dismissing negligent hiring claim "because enforcement of the claim would have a significant economic impact on the services [the freight broker] provides, it is preempted" and noting "no convincing authority supporting the proposition that a state common law claim for negligent hiring constitutes a safety regulation").

not regulations "with respect to motor vehicles." The court adopts the reasoning articulated in *Ye* and *Aspen*, and the many other courts that have embraced that reasoning, in rejecting *Miller*'s "indirect connection" test. Like those many courts, this court finds that negligent hiring claims against freight brokers do not present the direct connection to state regulation of motor vehicles that is necessary to invoke the safety exception of 49 U.S.C. § 14501(c)(2)(A) and avoid the preemptive effect of 49 U.S.C. § 14501(c)(1). Accordingly, the court **RECOMMENDS** that the negligent-hiring claim against Nucor (Plaintiffs' Eighth Cause of Action) be **DISMISSED**.

*Id.* (emphasis in original). Judge Moore adopted Magistrate Judge Prose's R&R and dismissed all claims against the Nucor defendants with prejudice. *Trujillo*, 2025 WL 1250928 at \*1. The Court discerned "no principled basis for distinguishing between state tort law generally (or a negligent hiring claim specifically) and any other 'law, regulation, or other provision having the force and effect of law' for purposes of FAAAA preemption." *Id.* at \*3. The Court agreed with the *Ye* and *Aspen* rationale because they "provide[] an appropriate limiting principle to the safety exception that is rooted in the language of the FAAAA itself." *Id.*[7]

The same result should be reached here. Just as in *Nucor*, TQL's alleged selection or brokering of a motor carrier for transportation of the Steel Load is not connected to motor vehicle safety; any tenuous connection is insufficient to avoid the express preemption in the FAAAA.

## C.    Plaintiff's Claims Against TQL Should Be Dismissed for Other Independent Reasons.

*First*, the only claim specifically pleaded against TQL – "negligent undertaking" – is insufficiently pled. Under Colorado law, "negligent undertaking" – i.e., "a claim for negligently performing an assumed undertaking" – is "distinct from a typical negligence claim." *Getzel v. ATS*

---

[7] Like the R&R, the Court rejected the Ninth Circuit's rationale from *Miller* as "threaten[ing] to let the exception all but swallow the rule by allowing any law or regulation to any degree loosely connected with motor vehicle safety to avoid preemption." 2025 WL 1250928 at \*3.

*Specialized, Inc.*, No. 1:21-cv-02836-DDD-NRN, 2024 WL 446038, at *5 (D. Colo. Jan. 19, 2024). "The "assumed duty" or "good Samaritan" doctrine holds that, in certain circumstances, a person can undertake a duty to a third party which he would not otherwise bear, and if he performs that duty negligently, he may be held liable." *Id.* Plaintiff's allegations are both conclusory and do not support these elements. First, she alleges TQL "had a ***contractual*** obligation to efficiently and safely transport goods in interstate commerce …" (SAC ¶ 127[8]), not an *independently assumed* obligation. And her other allegations are too conclusory to support the claim. (*Id.* ¶¶ 128–129) (TQL "undertook, for consideration, a duty to render these [contractual] services" and "assumed an obligation to render transportation of goods in interstate commerce." Plaintiff's own allegations require dismissal of this claim.

Second, Plaintiff's claims sounding in vicarious liability should be dismissed because Plaintiff cannot plead facts to support vicarious liability against TQL for the negligence of the Cruz-Mendoza. *See, e.g.*, *DeClements v. RE/MAX LLC*, No. 1:20-cv-02075-DDD-SKC, 2020 WL 9259326, at *3-4 (D. Colo. Oct. 13, 2020). Plaintiff alleges only generally that TQL is vicariously liable for Cruz-Mendoza's negligence and recklessness (*see, e.g.*, SAC ¶¶ 22, 170, 182), but there are *no facts* in the Second Amended Complaint to establish that TQL employed Cruz-Mendoza or otherwise had a special principal-agent relationship. (*See generally id.*) At best, Plaintiff alleges "Defendants held out Cruz-Mendoza as an agent, servant, and/or employee such that a reasonable person would conclude that Mr. Cruz-Mendoza was an agent, servant, and/or employee of Defendants" (*Id.* ¶¶ 170, 182), but again, there are no facts to establish what TQL did, specifically,

---

[8] Plaintiff does not allege who TQL owed this contractual duty (*see generally* Am. Compl.), leaving TQL and the Court to guess to whom TQL may have owed a contractual obligation.

14

to generate such conclusion. The absence of specific factual allegations to support vicarious liability requires dismissal of all the claims premised on vicarious liability.

Third, Plaintiff's "joint venture" and "joint enterprise liability" claims both fail because there are no non-conclusory allegations that TQL has a right to control the operation of the Tractor-Trailer. "In order for a joint venture or joint enterprise in the operation of an automobile to exist, two or more persons must unite in pursuit of a common purpose, and each person must have a right to control the operation of the automobile in question." *Bilsten v. Porter*, 516 P.2d 656, 658 (Colo. App. 1973).[9] Here, Plaintiff alleges, in conclusory fashion, that "Defendants had the right to control Mr. Cruz-Mendoza" in the performance of the transport of goods and materials. (SAC ¶¶ 168, 180.) The alleged "control" occurred through payment for services and allowances for fuel costs, as well as being "in contract through numerous means of communication, including … email, faxes, telephones, and mobile applications to track the status of shipment from origin to delivery." (*Id.* ¶¶ 162–163, 174–175.) On its face, these allegations are insufficient to establish that TQL had a "right to control the operation of the automobile in question." *Bilsten*, 516 P.2d at 658. At best, these allegations suggest Defendants had the ability to contact the Tractor Trailer and track its progress en route – these are not allegation about control. The allegations simply do not support a claim for "joint venture" or "joint enterprise liability."

## V. CONCLUSION

Defendant Total Quality Logistics, LLC requests that all claims by Plaintiff against it be dismissed with prejudice.

---

[9] *See also Am. Fam. Mut. Ins. Co. v. AN/CF Acquisition Corp.*, 361 P.3d 1098, 1099 (Colo. App. 2015).

DATED: December 4, 2025

TAFT STETTINIUS & HOLLISTER LLP

*s/ Allison R. Burke*
Allison Burke, (#54916 )
Theodore J. O'Brien, (#61623)
675 Fifteenth Street, Suite 2300
Denver, CO 80202
Telephone: (303) 297-2900
Facsimile: (303) 298-0940
Email: aburke@taftlaw.com
        tobrien@taftlaw.com

*Attorneys for Defendant Total Quality Logistics, LLC*

16

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of December, 2025, a true and correct copy of the foregoing **MOTION TO DISMISS SECOND AMENDED COMPLAINT** was filed and served with the Clerk of the Court using the CM/ECF with service on all counsel of record.


*s/ Faith I. Brockman*
Faith I. Brockman, Legal Assistant

17