## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| **DEANN MILLER, as Surviving Spouse of SCOTT MILLER, deceased** | : | **CIVIL ACTION –LAW** |
| | : | |
| **PLAINTIFF,** | : | **JURY TRIAL DEMANDED** |
| | : | |
| **v.** | : | |
| | : | **NO:  1:25-cv-00997-TPO** |
| **MANRIQUE AGRAMON d/b/a MONIQUE TRUCKING LLC,** | : | |
| | : | |
| **TOTAL QUALITY LOGISTICS LLC,** | : | |
| | : | |
| **INTSEL STEEL WEST LLC,** | : | |
| | : | |
| **TRIPLE-S STEEL HOLDINGS, INC.,** | : | |
| | : | |
| **SEARING INDUSTRIES, INC.,** | : | |
| | : | |
| **and** | : | |
| | : | |
| **IGNACIO CRUZ-MENDOZA** | : | |
| | : | |
| **DEFENDANTS** | : | |

**COMES NOW**, Plaintiff, Deann Miller, as the surviving spouse of Scott Miller, by and through her attorney, The Dan Caplis Law Firm, LLC, submits her Amended Complaint and Jury Demand, and alleges as follows:

1

## PARTIES, JURISDICTION AND VENUE

1.     Plaintiff, Deann Miller (hereinafter "Plaintiff D. Miller") is the surviving spouse of Scott Miller (hereinafter "Decedent").

2.     Plaintiff D. Miller has standing to bring this wrongful death action under C.R.S. §§ 13-21-202 and 13-21-201(a)(I).

3.     Plaintiff D. Miller is an individual and, at all relevant times hereto, is a resident of the State of Colorado.

4.     Defendant, Manrique Agramon d/b/a Monique Trucking LLC ("Monique") at all relevant times hereto, was a California limited liability company with a principal place of business located at 82510 Requa Avenue, Apt. 4, Indio, California 92201.

5.     Monique's USDOT number was listed as 3888730.

6.     Monique's MC number was listed as MC-1429012.

7.     On July 2, 2024, in response to the subject crash on June 11, 2024, the United States Department of Transportation, Federal Motor Carrier Safety Administration issued an "Imminent Hazard Operations Out-Of-Service Order" to Monique. A true and correct copy of the Order is attached hereto as Exhibit A.

8.     The July 2, 2024 Order states in part:

**UNITED STATES DEPARTMENT OF TRANSPORTATION**
**FEDERAL MOTOR CARRIER SAFETY ADMINISTRATION**

|  |  |  |
|---|---|---|
| Manrique Agramon dba Monique Trucking | ) ) ) | Order No.:  CA-2024-5000-IMH |
|  | ) ) | Service Date:  July ____, 2024 |
| USDOT NO. 3888730 MC NO. 1429012 | ) ) ) | Service Time:  _____ |

**IMMINENT HAZARD**
**OPERATIONS OUT-OF-SERVICE ORDER**

This is an Imminent Hazard Operations Out-of-Service Order ("ORDER") issued by the Secretary of the United States Department of Transportation (the "Secretary") pursuant to 49 U.S.C. §§ 521(b)(5)(A), 13905(f), 31132(3), 31133(a)(10), 31134, 31144(c)(1), and 49 CFR § 386.72(b)(1), and pursuant to a delegation of authority to the Regional Field Administrator, Western Service Center, Federal Motor Carrier Safety Administration ("FMCSA"), and the United States Department of Transportation ("USDOT").  This ORDER applies to Manrique Agramon dba Monique Trucking (USDOT No. 3888730) (referred to as "you," "your," or "Monique Trucking").  Additionally, this ORDER applies to all your officers, agents, and employees and to all commercial motor vehicles owned or operated on your behalf.

The Secretary and the FMCSA find your continued operation of any commercial motor vehicle ("CMV")[1] in interstate or intrastate commerce constitutes an **imminent hazard**.  This finding means that based upon your present state of unacceptable safety compliance, your

operation of any CMV substantially increases the likelihood of serious injury or death if not discontinued immediately.

9.      Upon information and belief, Monique has not been reinstated by the Department of Transportation.

3

10. At all relevant times hereto, Monique conducted freight transportation activities within Jefferson County, Colorado.

11. Defendant, Total Quality Logistics, LLC ("TQL") is an Ohio limited liability company with a principal place of business located at 4289 Ivy Pointe Boulevard, Cincinnati, Ohio 45245.

12. TQL's USDOT number is listed as 2223295.

13. According to the FMCSA, TQL is a broker:



14. Defendant, Intsel Steel West ("Intsel") is a Delaware limited liability company with a principal place of business located at 8573 Ulster Street, Commerce City, Colorado 80022.

15. Intsel's USDOT number is listed as 607017.

16. Intsel's MC number is listed as MC-911190.

17. Defendant Triple-S Steel Holdings Inc. ("Triple") is a Virginia limited liability company with a principal place of business located at 2189 River Road, Grand Junction, Colorado 81505.

18. Triple's USDOT number is listed as 691989.

4

19. Upon information and belief, Triple acquired Intsel in 2004.



20. Indeed, Intsel represents to the public at large that Intsel and Triple have common ownership through its own website.[1]

21. Defendant, Searing Industries, Inc. ("Searing") is a California for-profit corporation with a principal place of business located at 8901 Arrow Route, Rancho Cucamonga, California 91729.

22. Searing's USDOT number is listed as 1855395.

23. Defendant, Ignacio Cruz-Mendoza ("Cruz-Mendoza") is upon information and belief, an undocumented immigrant who was recently deported by the United States Immigration and Customs Enforcement.

24. When referred to collectively, Monique, TQL, Intsel, Triple, Searing, and Cruz-Mendoza will be referred to as "Defendants."

---

[1] See https://www.intselsteelwest.com/

5

25.     At all relevant times hereto, Defendants were or should have been authorized interstate motor carriers authorized to transport goods in interstate commerce and in the State of Colorado pursuant to one or more permits issued by the Interstate Commerce Commission and/or by the United States Department of Transportation ("USDOT").

26.     Accordingly, Defendants were subject to all state and federal laws, statutes, regulations, and industry standards governing the hiring of safe and qualified commercial drivers, the safe maintenance and operation of commercial motor vehicles, and the safe brokering of goods in interstate commerce, including without limitation, Colorado Statutes governing motor vehicles and the Federal Motor Carrier Safety Regulations ("FMCSR") set forth in subchapters A and B of Chapter III of the Code of Federal Regulations, Title 49 – Transportation.

27.     Defendants, in order to obtain a DOT number, were required to submit an OP-1 form containing a "Safety Certification," certifying to the Federal Motor Carrier Safety Administration ("FMCSA") that they have access to and are familiar with all applicable USDOT regulations relating to the safe operation of commercial motor vehicles and that Defendants will comply with the FMCSRs at all times while operating a commercial motor vehicle in the United States.

28.     More specifically, each Form OP-1 submitted contained a "Safety Certification," certifying to the Federal Motor Carrier Safety Administration that, at a minimum, Defendants:

    a.   had and will have in place a system and an individual responsible for ensuring overall compliance with the FMCSRs;

    b.   can produce a copy of the FMCSRs;

    c.   had and will have in place a driver safety training/orientation program;

    d.   had and will have prepared and maintain an accident register;

6

e. is familiar with D.O.T. regulations governing driver qualifications and had and will have in place a system for overseeing driver qualifications requirements;

f. had and will have in place policies and procedures consistent with D.O.T. regulations governing driving and operational safety of motor vehicles, including drivers' hours of service and vehicle inspection, repair, and maintenance;

g. is familiar with, and had and will have a system for complying with all USDOT regulations governing alcohol and controlled substances testing requirements; and

h. must comply with all pertinent Federal, State, local, and tribunal statutory and regulatory requirements when operating within the United States.

29. In order to obtain a DOT number, the Defendants and/or their authorized representatives swore under the penalty of perjury to comply with the above "Safety Certifications."

30. At all times relevant hereto, Mr. Cruz-Mendoza was an unlicensed motor vehicle operator driving a 2012 Peterbilt with VIN #1XP4D49X7CD161034, hauling a trailer with VIN #5TR14830382001200 (hereinafter "Tractor Trailer"), which was owned, leased, assigned, and/or operated by Defendants.

31. At all relevant times hereto, Intsel was the consignee on the bill of lading:

32. According to the bill of lading, Mr. Cruz-Mendoza was hauling five (5) separate loads bound for Intsel and Triple on the same trailer, as evidenced by five (5) separate Searing shipping numbers.

33. At all relevant times hereto, Mr. Cruz-Mendoza was hauling multiple Intsel and/or Triple loads on the same trailer.

34. At all relevant times hereto, Defendants were liable for the actions and/or inactions of Mr. Cruz-Mendoza, who was operating their Tractor Trailer.

35. Accordingly, Mr. Cruz-Mendoza was subject to all state and federal laws, statutes, regulations, and industry standards governing the safe maintenance and operation of

7

commercial motor vehicles and tandem trailers, including, without limitation, Colorado Statutes governing motor vehicles and the Federal Motor Carrier Safety Regulations set forth subchapters A and B of Chapter III of the Code of Federal Regulations, Title 49 – Transportation.

36.     At all times relevant hereto, the Tractor Trailer was owned, leased, assigned, and/or operated by Defendants and was operated and/or controlled by Mr. Cruz-Mendoza with the consent of Defendants for the financial benefit of Defendants.

37.     At all times relevant hereto, Mr. Cruz-Mendoza was employed and/or contracted to perform services for and was operating the Tractor Trailer for Defendants, under Defendants' USDOT operating authority, and was subject to their supervision, control or right to control, such that Defendants should be considered his actual and statutory employer and therefore vicariously liable for Mr. Cruz-Mendoza's negligence and recklessness.

38.     At all relevant times hereto, Mr. Cruz-Mendoza was the agent, servant, workman, and/or employee of Defendants and was acting in the course and scope of his employment, under the direction, control, and authority of these Defendants.

39.     At all relevant times hereto, Mr. Cruz-Mendoza was driving the Tractor Trailer owned, leased, assigned, and/or operated by Defendants.

40.     At all relevant times hereto, Defendants acted as a single entity and operated and conducted business as a single entity for transporting goods in interstate commerce.

41.     At all relevant times, Defendants were engaged in the joint undertaking of a particular transaction for mutual profit, mutual control, and mutual contribution, and this joint undertaking was memorialized in contract.

42.     At all relevant times hereto, Defendants acted as a joint venture for transporting goods in interstate commerce.

8

43.     Accordingly, Defendants are personally liable, jointly and severally, in partnership, joint venture, or sole proprietorship for the tractor-trailer crash that caused Decedent Scott Miller's catastrophic and fatal injuries.

44.     Defendants acted in a manner that, either alone, combined, and/or occurring with the actions of other Defendants, directly and proximately caused the crash and the resulting fatal injuries suffered to the Decedent.

45.     At all relevant times hereto, the Defendants were liable for the actions and/or inactions of Mr. Cruz-Mendoza as though the actions and/or inactions were performed by the entities themselves.

46.     At all relevant times, the Federal Motor Carrier Safety Regulations apply hereto, pursuant to 8 CCR 1507-1, *et seq.*

47.     At all relevant times, Defendants were subject to FMCSA Section 376.12, which pertains to leasing requirements.

48.     At all relevant times, Defendants were subject to the FMCSA Section 393.100, which pertains to shifting and falling cargo.

49.     At all relevant times, Decedent acted with due care and in no way caused or contributed to the crash that forms the basis of the lawsuit.

50.     Plaintiff seeks damages for all harms and losses permissible under Colorado law, including, but not limited to, funeral and burial expenses, costs of estate administration, profound psychological and emotional loss, conscious pain and suffering, and such other injuries, damages, and losses as described more fully and compensable at law under the Wrongful Death Act, and the decisional law of the State of Colorado interpreting the Act, caused by the negligence and recklessness of the Defendants.

51.     Jurisdiction and venue are proper in the District Court of Jefferson County, State of Colorado, because the acts giving rise to the action occurred in Jefferson County.

52.     Upon information and belief, true diversity does not exist in this case.

53.     Intsel is a limited liability company incorporated in the State of Delaware with a principal place of business located at 8573 Ulster Street, Commerce City, Colorado 80022.

54.     Accordingly, "[t]he citizenship of a limited liability company is determined by the citizenship of all of its members." SWM Int'l, LLC v. DynaEnergetics Eur. GmbH., No. 21-CV-02315-PAB, 2022 WL 93851 at *1 (D. Colo. 2022).

55.     Upon information and belief, Eric Daniel is a current member of Intsel Limited Liability Company.





Q  Eric Daniel – MBA, CPSM

# Experience



## General Manager

Intsel Steel West LLC · Full-time

Jan 2024 – Present · 1 yr 4 mos

Denver, Colorado, United States

56.　Indeed, according to his LinkedIn profile, Mr. Daniel has been the General Manager of Intsel Steel West, LLC since January 2024.

57.　Moreover, based on his LinkedIn profile, Mr. Daniel resides in the Denver metropolitan area.

58.　Therefore, diversity jurisdiction does not exist under the Federal Rules of Civil Procedure.

### OPERATIVE FACTS COMMON TO ALL COUNTS

59.　The preceding paragraphs are incorporated herein as though fully set forth below.

60.　On June 11, 2024, at some point before 11:00 a.m., Mr. Cruz-Mendoza arrived at the Searing facility in Cheyenne, Wyoming, to pick up and haul a load of steel piping bound for Intsel and/or Triple S. See Deposition Testimony of Ignacio Cruz-Mendoza attached hereto as Exhibit A at 34 (lns. 8-12).

61.　Mr. Cruz-Mendoza testified that he was sent to the Searing facility on June 11, 2024, by the broker for the load. Id. at 11 (lns. 2-8).

62.　The broker for the subject load was TQL.

11



63.     Upon arriving at the facility, Mr. Cruz-Mendoza confirmed that an agent of Searing provided him with instructions to give to the forklift driver who was loading his trailer. Id. at 56 (lns. 24-25) – 57 (lns. 1-5).

64.     According to Mr. Cruz-Mendoza, these instructions contained information such as how many straps were needed to secure the load to the trailer. Id. at 54 (lns. 4-8).

65.     While at the Searing facility, Mr. Cruz-Mendoza helped the Searing agent load his trailer. Id. at 48 (lns.1-6).

66.     According to Mr. Cruz-Mendoza's account, he secured the load with tie-down straps as instructed by Searing, and Searing checked the tie-downs prior to allowing Mr. Cruz-Mendoza to exit the Searing facility. Id. at 49 (lns. 19-25) – 50 (lns. 1-10).

67.     Searing instructed Mr. Cruz-Mendoza on how many straps to use in securing the load. Id.

68.     At all relevant times hereto, Searing and Mr. Cruz-Mendoza were in violation of FMCSA 393.106 regarding the requirements for securing cargo.

69.     At all relevant times hereto, Searing and Mr. Cruz-Mendoza failed to firmly immobilize and/or secure the steel beams in violation of FMCSA 393.106(b).

70.     At all relevant times hereto, Searing and Mr. Cruz-Mendoza failed to secure the cargo with chocks, wedges, or a cradle in violation of FMCSA 393.106(c) when strapping down the cargo.

71.     The aggregate working load limit for tie-downs must be at least one-half times the weight of the article or group of articles to be secured. See FMCSA 393.106(d).

72.     Searing and Mr. Cruz-Mendoza failed to ensure the aggregate working load limit of each tie-down to adequately and safely secure the cargo on June 11, 2024.

73.     In addition, Searing and Mr. Cruz-Mendoza failed to secure the cargo with the appropriate number of tie-down straps to ensure that the cargo would not shift or fall in transport in violation of FMCSA 393.110(e).

13

74. Nevertheless, Searing security officers allowed Mr. Cruz-Mendoza to exit the Searing facility. Id. at 54 (lns. 11-15).

75. The actions and/or inactions of Searing and Mr. Cruz-Mendoza caused the cargo to leave the Searing facility unsecured and unsafe and increased the risk of harm to the motoring public, including Decedent Scott Miller.

76. On June 11, 2024, at or around 5:00 p.m., Mr. Cruz-Mendoza was operating the Tractor Trailer owned, leased, and/or assigned by Defendants Southbound on Highway 285 ("HWY-285") near milepost 232, fully loaded with steel piping weighing approximately 127,000 pounds.

77. On June 11, 2024, at or around 5:00 p.m., Decedent Scott Miller was operating his 2012 Ford F-350 ("Ford") Southbound on HWY-285 near milepost 232.

78. Mr. Cruz-Mendoza began to pass the vehicle ahead of him on HWY 285 when he crashed the Tractor Trailer into the left side of the vehicle.

79. Although he struck a vehicle, Mr. Cruz-Mendoza continued driving at a high rate of speed on HWY 285 and began passing the Ford operated by the Decedent.

80. Upon passing the Decedent on the left, the load being hauled by Mr. Cruz-Mendoza began spilling onto the Decedent's Ford and the roadway.

81. Mr. Cruz-Mendoza continued traveling at a high rate of speed before losing control of the Tractor Trailer, causing a chain collision involving five (5) vehicles on HWY 285.

82. Upon information and belief, Mr. Cruz-Mendoza was operating the Tractor Trailer at nearly double the posted speed limit in the moments leading up to the crash.

83. Decedent Scott Miller suffered catastrophic and fatal injuries, causing his death on June 11, 2024.



84.     As a result of the Crash, Mr. Cruz-Mendoza was charged with the following:

a.   18-3-106(1)(a) – Vehicular Homicide;

b.   18-3-205(1)(a) – Vehicular Assault;

c.   42-4-1401 (1) – Reckless Driving; and

d.   42-2-404 (1) – Driving Commercial Vehicle (Not Qualified).

85.     At all relevant times hereto, Mr. Cruz-Mendoza exhibited a conscious disregard for the health and safety of the motoring public by operating the Tractor Trailer at dangerously high speeds for the conditions.

86.     At all relevant times hereto, Mr. Cruz-Mendoza operated the Tractor Trailer in such a reckless, careless, and negligent manner that he did not notice he was rapidly approaching traffic in the moments leading up to the crash.

15

87.     As a result of the crash, as well as the negligence, carelessness, and recklessness of Defendants, Scott Miller, Plaintiff D. Miller, and the Decedents' family have suffered and will continue to suffer substantial economic and non-economic injuries, damages, and losses including, but not limited to:

> a.     Funeral and burial expenses;
>
> b.     Costs of Estate administration;
>
> c.     Profound psychological and emotional loss;
>
> d.     Pre-death fright and fear of impending death;
>
> e.     Conscious pain and suffering;
>
> f.     Loss of the comfort, care, and society of Scott Miller; and
>
> g.     Such other injuries, damages, and losses described more fully herein, and

compensable at law under the Wrongful Death Act and the decisional law of the State of Colorado interpreting said Act.

88.     The economic and non-economic injuries, damages, and losses suffered by the Decedent, Scott Miller, Plaintiff D. Miller, and the Decedent's family were caused solely and exclusively by the negligence of Defendants, as described herein and were not caused or contributed to by any act or failure to act on the part of Scott Miller or his family.

89.     At all relevant times hereto, Defendants, TQL, Intsel, Triple, and Searing knew or should have known that Monique had an unsafe history in performing services as a motor carrier, including, but not limited to, the following[2]:

> a.  **Operating a commercial motor vehicle without a license in violation of FMCSA 383.23(a) – October 2022;**
>
> b.  **Failure to have record of duty status in violation of FMCSA 395.8(a)(1) – October 2022;**

---

[2] The bolded violations resulted in the operator and/or Monique being placed out of service ("OOS").

   c.  **Operating a commercial motor vehicle without the appropriate license in violation of FMCSA 391.11(b)(5) – November 2022**;

   d.  **Failure to have record of duty status in violation of FMCSA 395.8(a)(1) – May 2023;**

   e.  Failing to inspect and/or use emergency equipment in violation of FMCSA 392.8 – May 2023;

   f.  Failing to have retroreflective material affixed to trailer manufactured after December 1993 in violation of FMCSA 393.11RT – May 2023;

   g.  Inoperative and/or defective hazard warning lamp in violation of FMCSA 393.19 – May 2023;

   h.  Inoperative required lamp in violation of FMCSA 393.9 – May 2023;

   i.  No and/or insufficient warning devices in violation of FMCSA 393.95(f) – May 2023;

   j.  Inoperable headlamps in violation of FMCSA 393.9H – May 2023;

   k.  Inoperative turn signal in violation of FMCSA 393.9TS – May 2023;

   l.  **Failure to have record of duty status in violation of FMCSA 395.8(a)(1) – August 2023**;

   m.  Failure to have sufficient tie-downs to prevent forward movement for load in violation of FMCSA 393.110(b) – August 2023;

   n.  **Failure to have record of duty status in violation of FMCSA 395.8(a)(1) – May 2024**; and

   o.  **Operating in violation of FMCSA Operational Out of Service Order for Failure to Permit Safety Audit in violation of FMCSA 385.337(b) – May 2024.**

90.    Upon information and belief, and at all relevant times hereto, Defendants knew or should have known that Monique did not have operating authority to transport cargo in interstate commerce at the time of booking the subject load carried by Mr. Cruz-Mendoza on June 11, 2024.

17

91.     Indeed, this is confirmed by the testimony of Mr. Cruz-Mendoza, who testified that he was not working for Monique in the month of May 2024 because Monique was "having trouble at the office." See Deposition Testimony of Mr. Cruz-Mendoza at pp. 74-75.

92.     Upon information and belief, at the time of the crash, Mr. Cruz-Mendoza was in violation of the FMCSR hours of service limits and consciously chose to operate the Tractor Trailer in a fatigued condition.

93.     Moreover, Defendants participated in, knew, or should have known that Mr. Cruz-Mendoza was operating over hours, driving while fatigued, and otherwise operating the Tractor Trailer in an unsafe, dangerous, and reckless condition in violation of the FMCSR and Colorado law.

94.     At all relevant times hereto, Mr. Cruz-Mendoza exhibited a conscious disregard for the health and safety of the motoring public by operating the Tractor Trailer at dangerously high speeds for the conditions.

95.     At all relevant times, upon information and belief, Mr. Cruz-Mendoza's fatigued condition impaired his judgment, perception, and reaction to such an extent that he inexplicably crashed the Tractor Trailer into Plaintiff's Decedent without braking.

96.     At all relevant times, upon information and belief, Mr. Cruz-Mendoza drove in a distracted manner such that he failed to recognize the traffic conditions ahead of him prior to causing the crash on HWY 285.

97.     At all relevant times hereto, Mr. Cruz-Mendoza exhibited a conscious disregard for the health and safety of the motoring public by recklessly failing to ensure that his load was tied down properly.

18

98.     At all relevant times, Defendants knew of Mr. Cruz-Mendoza's reckless and dangerous driving record and chose to hire him anyway.

99.     This information was known and/or readily available to Defendants, all before the crash that fatally killed Scott Miller.

100.    At all relevant times, upon information and belief, Defendants knew or should have known that Mr. Cruz-Mendoza was not a legally licensed commercial motor operator.

101.    At all relevant times, the FMCSA, as part of its Safety Management System, maintained a user-friendly website available to the public that tracks the registration, safety, and compliance of all motor carriers with a USDOT number, such as Monique. The online FMCSA information also provided historical information and easy to understand explanations of how to use the site and what each category of information and score means. The FMCSA's online public information also listed the crashes and safety violations for the last 24 months.

102.    Defendants were aware of the FMCSA website.

103.    Moreover, despite the deplorable safety record, incompetence, and dangerous behavior of Mr. Cruz-Mendoza, Defendants negligently, recklessly, and with conscious disregard for the safety of the motoring public operated, selected, hired, retained, and/or assigned him to deliver goods to its customers using tractors and trailers.

104.    At all relevant times, Defendants exercised complete control over the dispatching of the Tractor Trailer driven by Mr. Cruz-Mendoza at the time of the crash.

105.    At all relevant times, Defendants exercised complete control over the routing of the Tractor Trailer driven by Mr. Cruz-Mendoza at the time of the crash.

106. At all relevant times, Mr. Cruz-Mendoza failed to adjust his speed to match the conditions on the roadway ahead in violation of the Commercial Motor Vehicle Manual 2.6 – Controlling Speed.

107. At all relevant times, Mr. Cruz-Mendoza failed to keep proper braking distance between the Tractor Trailer and others lawfully using the roadway in violation of the Commercial Motor Vehicle Manual 2.6.1 – Stopping Distances.

108. At all relevant times, Defendants had the contractual right to and/or exercised control over the transportation of the load in question to such a degree that Mr. Cruz-Mendoza should be considered an agent of Defendants.

109. At all relevant times hereto, Plaintiff acted in a safe, prudent, and reasonable manner and in no way contributed to the injuries or damages outlined herein.

**COUNT I**

**WRONGFUL DEATH**

**DEANN MILLER, as Surviving Spouse of SCOTT MILLER, deceased v. MANRIQUE AGRAMON d/b/a MONIQUE TRUCKING LLC, TOTAL QUALITY LOGISTICS LLC, INTSEL STEEL WEST LLC, TRIPLE-S STEEL HOLDINGS, INC., SEARING INDUSTRIES, INC. AND IGNACIO CRUZ-MENDOZA**

110. The preceding paragraphs are incorporated herein as though fully set forth below.

111. Plaintiff, D. Miller, as Surviving Spouse of Scott Miller, deceased, brings this Wrongful Death Action by virtue of the Wrongful Death Act, C.R.S. §§ 13-21-202 and 13-21-201(1)(a)(I), the applicable Rules of Civil Procedure and decisional law interpreting this Act.

112. As a result of the negligent or reckless acts and omissions of Defendants, as described more fully herein, Plaintiff's Decedent, Scott Miller, suffered catastrophic, permanent, and fatal injuries and death, resulting in the entitlement to damages under the Wrongful Death Act.

113.     Plaintiff, D. Miller, as Surviving Spouse of Scott Miller, deceased, hereby claims the full measure of damages recoverable under and by virtue of the Wrongful Death Act and the decisional law interpreting the Act.

114.     Plaintiff, D. Miller, as Surviving Spouse of Scott Miller, deceased, claims damages for the pecuniary losses suffered because of the death of Scott Miller, including but not limited to damages for all medical expenses, funeral and burial expenses, and the costs of estate administration necessitated because of the injuries which caused Scott Miller's death.

115.     Plaintiff, D. Miller, as Surviving Spouse of Scott Miller, deceased, claims damages for the loss of earnings, maintenance, support, comfort, care, society and/or other losses as specifically recognized under the Wrongful Death Act and its Colorado case law progeny, including profound psychological and emotional loss, which they would have received from the decedent had his death not occurred.

116.     Plaintiff, D. Miller, as Surviving Spouse of Scott Miller, deceased, claims the loss of the pecuniary value of the services that the decedent could have been expected to provide during his lifetime had his death not occurred.

117.     Plaintiff, D. Miller, as Surviving Spouse of Scott Miller, deceased, claims Defendants' reckless acts and reckless failures to act constitute a felonious killing pursuant to C.R.S. § 13-21-203.

**WHEREFORE**, Plaintiff, D. Miller, as Surviving Spouse of Scott Miller, deceased, hereby seeks damages from all Defendants under the Wrongful Death Act, exclusive of pre-judgment interest, post-judgment interest, and costs.

### COUNT II

### NEGLIGENCE/RECKLESSNESS

21

**DEANN MILLER, as Surviving Spouse of SCOTT MILLER, deceased v. MANRIQUE AGRAMON d/b/a MONIQUE TRUCKING LLC, TOTAL QUALITY LOGISTICS LLC, INTSEL STEEL WEST LLC, TRIPLE-S STEEL HOLDINGS, INC., SEARING INDUSTRIES, INC. as being vicariously liable for IGNACIO CRUZ-MENDOZA**

118.    The preceding paragraphs are incorporated herein as though fully set forth below.

119.    The negligence, carelessness, and/or recklessness of Defendants, as being vicariously liable for the actions of Mr. Cruz-Mendoza, consisted of, but are not limited to, the following:

a.  Failing to maintain proper and adequate control of his Tractor Trailer;

b.  Failing to keep his eyes on the road at all times;

c.  Failing to pay proper attention while operating his Tractor Trailer on HWY 285;

d.  Failing to take proper precautions in the operation of his Tractor Trailer so as to avoid the crash;

e.  Operating his Tractor Trailer in a negligent, careless, and reckless manner without due regard to the rights and safety of the Decedent;

f.  Failing to exercise due care and caution under all of the existing circumstances;

g.  Failing to have his Tractor Trailer under such control that it could be readily stopped, turned aside, or the speed thereof slackened upon the appearance of danger;

h.  Failing to remain alert;

i.  Operating his Tractor Trailer in a distracted manner;

j.  Consciously choosing to operate the Tractor Trailer without a valid commercial driver's license;

k.  Failing to properly and adequately secure the cargo to his trailer;

l.  Failing to reduce his speed in time to avoid crashing into traffic on HWY 285;

m.  Traveling at an excessive rate of speed under the circumstances;

22

n.   Violating the applicable rules, regulations, and laws pertaining to the safe and proper operation of motor vehicles and/or tractor-trailers;

o.   Failing to operate his Tractor Trailer in accordance with the Federal Motor Carrier Safety Regulations;

p.   Failing to properly control his Tractor Trailer in light of the circumstances then and there existing, including traffic patterns existing on the roadway;

q.   Failing to make necessary and reasonable observations while operating his Tractor Trailer;

r.   Failing to apply his brakes timely;

s.   Violating FMCSA Regulation 383 dealing with required knowledge and skills;

t.   Consciously choosing to drive at an unsafe speed given the circumstances;

u.   Consciously refusing to reduce speed in response to traffic patterns then and there existing on the roadway;

v.   Consciously choosing to disregard traffic patterns then and there existing on the roadway;

w.   Consciously choosing to drive distracted;

x.   Failing to perform a proper pre-trip inspection;

y.   Violating FMCSA Regulation 393.100 dealing with shifting and falling cargo;

z.   Violating both the written and unwritten policies, rules, guidelines, and regulations of Defendants;

aa.   Failing to apprise himself of and/or abide by the Federal Motor Carrier Safety Regulations;

bb.   Failing to apprise himself of and/or abide by the regulations and laws pertaining to the operation of commercial vehicles;

cc.   Failing to ensure the parts and accessories of the Tractor Trailer were in good working order in violation of Section 392.7;

dd.   Failing to properly control his Tractor Trailer unit in light of the circumstances then and there existing on the roadway;

23

ee. Failing to make necessary and reasonable observations while operating the Tractor Trailer;

ff. Failing to take evasive action and/or failing to take appropriate and timely evasive action to avoid losing control of the Tractor Trailer

gg. Violating Sections 383.110; 383.111; and 383.113 dealing with required knowledge and skill;

hh. Violating Section 395.1 concerning hours of service of drivers;

ii. Making a conscious choice to drive in a fatigued condition, knowing that driving in a fatigued condition impairs perception and judgment;

jj. Failing to adhere to the amount of driving hours limit;

kk. Causing the Crash due to being on the road for more than the regulated number of hours;

ll. Operating the Tractor Trailer in an unsafe condition in violation of Section 396.7;

mm.    Failing to inspect the Tractor Trailer before and during its operation in violation of Sections 396.9; 396.11; 396.13; and 396.17;

nn. Recklessly failing to keep proper braking distance between his Tractor Trailer and the vehicle Decedent was operating in violation of the Uniform Commercial Driver's Manual;

oo. Failing or consciously choosing not to follow the Uniform Commercial Driver's Manual as it relates to matching speed to road surface; and

pp. Acting with a conscious disregard for the rights and safety of others, including the Plaintiff.

120.    Plaintiff, D. Miller, as Surviving Spouse of Scott Miller, deceased, claims Defendants' reckless acts and reckless failures to act constitute a felonious killing pursuant to C.R.S. § 13-21-203.

121.    As a result of the above-stated acts and omissions, Plaintiff suffered such harm as has been previously stated herein.

24

**WHEREFORE** Plaintiff, hereby seeks all damages allowed under the laws of the State of Colorado in an amount in excess of the prevailing arbitration limits.

**COUNT III**

**NEGLIGENT and/or RECKLESS HIRING / SUPERVISION / RETENTION / "NEGLIGENT SELECTION" OF IGNACIO CRUZ-MENDOZA**

**DEANN MILLER, as Surviving Spouse of SCOTT MILLER, deceased v. MANRIQUE AGRAMON d/b/a MONIQUE TRUCKING LLC, TOTAL QUALITY LOGISTICS LLC, INTSEL STEEL WEST LLC, TRIPLE-S STEEL HOLDINGS, INC., SEARING INDUSTRIES, INC**

122. The preceding paragraphs are incorporated herein as though fully set forth below.

123. Defendants had an obligation and duty to hire, retain and supervise drivers who operate its vehicles in a safe and prudent manner.

124. "An employer is subject to liability for physical harm to third persons caused by his failure to exercise reasonable care to employ a competent and careful contractor (a) to do work which involves a risk of physical harm unless it is skillfully and carefully done, or (b) to perform any duty which the employer owes to third persons." See Rest. (Second) Torts § 411.

125. Defendants had an obligation to exercise reasonable care in selecting a competent and careful driver to transport its goods in interstate commerce.

126. The Decedent was seriously, tragically, permanently, and fatally injured as a result of the unsafe driving of Mr. Cruz-Mendoza.

127. At all relevant times, Defendants were directly liable for the negligent and reckless hiring, supervision, retention and selection of driver Mr. Cruz-Mendoza.

128. The negligence, carelessness, and/or recklessness of Defendants, in the hiring, supervision, retention and selection of Mr. Cruz-Mendoza, consisted of the following:

a. Failing to properly train, monitor, and/or supervise its employees, drivers and/or agents, including Mr. Cruz-Mendoza;

b. Failing to train and/or properly train Mr. Cruz-Mendoza prior to allowing him to operate its Tractor Trailer;

c. Hiring and/or continuing to employ Mr. Cruz-Mendoza even though it knew or should have known that his violation of the FMCSA hours of service made him unfit to operate a commercial vehicle safely;

d. Hiring and/or continuing to employ Mr. Cruz-Mendoza even though he had a propensity for driving violations;

e. Hiring and/or continuing to employ Mr. Cruz-Mendoza even though he had a propensity for violating the "Rules of the Road" and FMCSR

f. Failing to do preventable analysis as recommended by the FMSCR;

g. Failing to have an appropriate disciplinary policy within the company;

h. Hiring and/or continuing to employ Mr. Cruz-Mendoza even though it knew or should have known that his propensity to break the vehicular rules could and/or would put the driving public at risk;

i. Permitting Mr. Cruz-Mendoza to operate its Tractor Trailer when it knew or should have known that he was not properly qualified and/or trained;

j. Allowing Mr. Cruz-Mendoza to operate tractor-trailers in its possession when it knew or should have known that such operation posed a risk of danger to others lawfully on the roadway;

k. Failing to adopt appropriate employee manuals and/or training procedures;

l. Failing to enforce both written and unwritten policies of Defendants;

m. Failing to ensure that its employees, drivers, and/or agents were aware of and complied with the written and unwritten policies of Defendants;

n. Failing to implement and/or enforce an effective safety system;

o. Failing to ensure that its management personnel and drivers were aware of the requirements and dictates of the FMCSA regulations;

p. Failing to ensure that its employees, drivers, and/or agents complied with the provisions of the FMCSA regulations;

q.  Failing to ensure that its employees, drivers, and/or agents were aware of and complied with rules, laws, and regulations pertaining to and governing the operation of commercial vehicles;

r.  Violating the applicable rules, laws, and regulations pertaining to and governing the operation of commercial vehicles;

s.  Failing to monitor and/or regulate the actions of its drivers;

t.  Failing to monitor and/or regulate the hours of its drivers;

u.  Failing to have an auditing system in place to audit its drivers' logs, or if a system is in place, failing to use it appropriately;

v.  Failing to use a third-party vendor to audit their drivers' logs, or if they did use a third-party vendor, failing to use it appropriately;

w.  Failing to have policies and mechanisms in place to address cumulative fatigue in its drivers;

x.  Placing more emphasis on profits than on safety of its drivers and the motoring public;

y.  Knowingly violating federal and state law regarding the responsibilities of motor carriers and the operation of commercial vehicles;

z.  Failing to act upon and remedy violations of FMCSA regulation 383.23;

aa. Failing to act upon and remedy violations of FMCSA regulation 391.11;

bb. Failing to act upon and remedy violations of FMCSA regulation 392.14 and the Uniform Commercial Driver's Manual;

cc. Failing to act upon and remedy violations of FMCSA regulation 393.100;

dd. Failing to act upon and remedy violations of FMCSA regulation 395.8;

ee. Failing to act upon and remedy known violations of industry standards;

ff. Acting in a conscious disregard for the rights and safety of the Plaintiff's Decedent;

gg. Failing to have appropriate policies and procedures with regard to hiring of drivers;

27

hh. Failing to follow the written and/or unwritten policies and procedures with regard to hiring of its drivers;

ii. Failing to have appropriate policies and procedures with regard to monitoring of its drivers;

jj. Failing to follow the written and/or unwritten policies and procedures with regard to monitoring its drivers;

kk. Consciously disregarding federal and state law regarding the responsibilities of motor carriers and the operation of commercial vehicles;

ll. Violating all applicable provisions of the FMCSA;

mm. Failing to suspend, discipline, or provide remedial training to Mr.Cruz-Mendoza prior to the Crash despite his history of unsafe driving practices; and

nn. Habitually and recklessly disregarding state and federal laws, regulations, and industry standards governing the safe hiring, training and retention of tractor-trailer drivers, the safe operation of a motor carrier transporting goods in interstate commerce, and the safe operation of commercial motor vehicles that created a zone and culture of danger that constituted a dangerous mode of operation, which was reasonably anticipated to cause injury and death to the motoring public and created a danger to all motorists exposed to its unsafe commercial motor vehicle drivers like Mr. Cruz-Mendoza.

129. Plaintiff, D. Miller, as Surviving Spouse of Scott Miller, deceased, claims Defendants' reckless acts and reckless failures to act constitute a felonious killing pursuant to C.R.S. § 13-21-203.

130. As a result of the above-stated acts and omissions, Plaintiff suffered such harm as has been previously stated herein.

**WHEREFORE** Plaintiff, hereby seeks all damages allowed under the laws of the State of Colorado in an amount in excess of the prevailing arbitration limits.

<u>COUNT IV</u>

<u>NEGLIGENT UNDERTAKING</u>

<u>DEANN MILLER, as Surviving Spouse of SCOTT MILLER, deceased v. MANRIQUE AGRAMON d/b/a MONIQUE TRUCKING LLC</u>

28

131. The preceding paragraphs are incorporated herein as though fully set forth below.

132. Monique is subject to liability for the physical harm caused to third persons for its failure to exercise reasonable care to protect its undertakings.

133. Monique had a contractual obligation to efficiently and safely transport goods in interstate commerce on June 11, 2024.

134. Monique undertook, for consideration, a duty to render these services.

135. Monique assumed an obligation to render transportation of goods in interstate commerce.

136. Monique owed a duty of care to those third parties legally traveling on HWY 285, including the Decedent on the date and time of the crash.

137. Monique failed to exercise reasonable care in complying with the FMCSA, thereby increasing the risk of harm to the motoring public that a future crash will occur.

138. Upon information and belief, Monique knew that Mr. Cruz-Mendoza did not have a commercial driver's license ("CDL") at the time of his hiring on April 10, 2024.

139. By hiring a driver who did not possess a valid CDL, such as Mr. Cruz-Mendoza, Monique knew or should have known that the likelihood of Mr. Cruz-Mendoza causing a crash increased exponentially.

140. Monique failed to exercise reasonable care and increased the risk of harm in failing to adequately and safely transport goods on HWY 285 on June 11, 2024.

141. Additionally, Monique undertook the performance of said duties and was negligent in its undertaking in the following ways:

        a. Failing to properly train, monitor, and/or supervise its employees, drivers and/or agents including Mr. Cruz-Mendoza;

b. Failing to train and/or properly train Mr. Cruz-Mendoza prior to allowing him to operate its Tractor Trailer;

c. Hiring and/or continuing to employ Mr. Cruz-Mendoza even though it knew or should have known that his violation of the FMCSA hours of service made him unfit to operate a commercial vehicle safely;

d. Hiring and/or continuing to employ Mr. Cruz-Mendoza even though he had a propensity for driving violations;

e. Hiring and/or continuing to employ Mr. Cruz-Mendoza even though he had a propensity for violating the "Rules of the Road" and FMCSR

f. Failing to do preventable analysis as recommended by the FMSCR;

g. Failing to have an appropriate disciplinary policy within the company;

h. Hiring and/or continuing to employ Mr. Cruz-Mendoza even though it knew or should have known that his propensity to break the vehicular rules could and/or would put the driving public at risk;

i. Permitting Mr. Cruz-Mendoza to operate its Tractor Trailer when it knew or should have known that he was not properly qualified and/or trained;

j. Allowing Mr. Cruz-Mendoza to operate tractor-trailers in its possession when it knew or should have known that such operation posed a risk of danger to others lawfully on the roadway;

k. Failing to adopt appropriate employee manuals and/or training procedures;

l. Failing to enforce both written and unwritten policies of Defendants;

m. Failing to ensure that its employees, drivers, and/or agents were aware of and complied with the written and unwritten policies of Defendants;

n. Failing to implement and/or enforce an effective safety system;

o. Failing to ensure that its management personnel and drivers were aware of the requirements and dictates of the FMCSA regulations;

p. Failing to ensure that its employees, drivers, and/or agents complied with the provisions of the FMCSA regulations;

q. Failing to ensure that its employees, drivers, and/or agents were aware of and complied with rules, laws, and regulations pertaining to and governing the operation of commercial vehicles;

r.  Violating the applicable rules, laws, and regulations pertaining to and governing the operation of commercial vehicles;

s.  Failing to monitor and/or regulate the actions of its drivers;

t.  Failing to monitor and/or regulate the hours of its drivers;

u.  Failing to have an auditing system in place to audit its drivers' logs, or if a system is in place, failing to use it appropriately;

v.  Failing to use a third-party vendor to audit their drivers' logs, or if they did use a third-party vendor, failing to use it appropriately;

w.  Failing to have policies and mechanisms in place to address cumulative fatigue in its drivers;

x.  Placing more emphasis on profits than on safety of its drivers and the motoring public;

y.  Knowingly violating federal and state law regarding the responsibilities of motor carriers and the operation of commercial vehicles;

z.  Failing to act upon and remedy violations of FMCSA regulation 383.23;

aa. Failing to act upon and remedy violations of FMCSA regulation 391.11;

bb. Failing to act upon and remedy violations of FMCSA regulation 392.14 and the Uniform Commercial Driver's Manual;

cc. Failing to act upon and remedy violations of FMCSA regulation 393.100;

dd. Failing to act upon and remedy violations of FMCSA regulation 395.8;

ee. Failing to act upon and remedy known violations of industry standards;

ff. Acting in a conscious disregard for the rights and safety of the Plaintiff's Decedent;

gg. Failing to have appropriate policies and procedures with regard to hiring of drivers;

hh. Failing to follow the written and/or unwritten policies and procedures with regard to hiring of its drivers;

ii. Failing to have appropriate policies and procedures with regard to monitoring of its drivers;

jj. Failing to follow the written and/or unwritten policies and procedures with regard to monitoring its drivers;

kk. Consciously disregarding federal and state law regarding the responsibilities of motor carriers and the operation of commercial vehicles;

ll. Violating all applicable provisions of the FMCSA;

mm.    Failing to suspend, discipline, or provide remedial training to Mr.Cruz-Mendoza prior to the Crash despite his history of unsafe driving practices; and

nn. Habitually and recklessly disregarding state and federal laws, regulations, and industry standards governing the safe hiring, training and retention of tractor-trailer drivers, the safe operation of a motor carrier transporting goods in interstate commerce, and the safe operation of commercial motor vehicles that created a zone and culture of danger that constituted a dangerous mode of operation, which was reasonably anticipated to cause injury and death to the motoring public and created a danger to all motorists exposed to its unsafe commercial motor vehicle drivers like Mr. Cruz-Mendoza.

142.    Plaintiff, D. Miller, as Surviving Spouse of Scott Miller, deceased, claims Defendants' reckless acts and reckless failures to act constitute a felonious killing pursuant to C.R.S. § 13-21-203.

143.    As a result of the above-stated acts and omissions, Plaintiff suffered such harm as has been previously stated herein.

**WHEREFORE** Plaintiff, hereby seeks all damages allowed under the laws of the State of Colorado in an amount in excess of the prevailing arbitration limits.

## COUNT V

### NEGLIGENT and/or RECKLESS HIRING / SUPERVISION / RETENTION / "NEGLIGENT SELECTION" OF MANRIQUE AGRAMON d/b/a MONIQUE TRUCKING LLC

### DEANN MILLER, as Surviving Spouse of SCOTT MILLER, deceased v. TOTAL QUALITY LOGISTICS LLC, INTSEL STEEL WEST LLC, TRIPLE-S STEEL HOLDINGS, INC., SEARING INDUSTRIES, INC

32

144. The preceding paragraphs are incorporated herein as though fully set forth below.

145. Defendants had an obligation and duty to hire, retain and supervise drivers who operate its vehicles in a safe and prudent manner.

146. "An employer is subject to liability for physical harm to third persons caused by his failure to exercise reasonable care to employ a competent and careful contractor (a) to do work which involves a risk of physical harm unless it is skillfully and carefully done, or (b) to perform any duty which the employer owes to third persons." See Rest. (Second) Torts § 411.

147. Defendants had an obligation to exercise reasonable care in selecting a competent and careful driver to transport its goods in interstate commerce.

148. The Decedent was seriously, tragically, permanently, and fatally injured as a result of the unsafe driving of Mr. Cruz-Mendoza.

149. At all relevant times, Defendants were directly liable for the negligent and reckless hiring, supervision, retention and selection of Monique.

150. At all relevant times, Defendants knew or should have known that Monique had an unsafe history in performing services as a motor carrier, including, but not limited to:

  a. Operating a commercial motor vehicle without a license in violation of FMCSA 383.23(a) – October 2022;

  b. Failure to have record of duty status in violation of FMCSA 395.8(a)(1) – October 2022;

  c. Operating a commercial motor vehicle without the appropriate license in violation of FMCSA 391.11(b)(5) – November 2022;

  d. Failure to have record of duty status in violation of FMCSA 395.8(a)(1) – May 2023;

  e. Failing to inspect and/or use emergency equipment in violation of FMCSA 392.8 – May 2023;

33

    f.   Failing to have retroreflective material affixed to trailer manufactured after December 1993 in violation of FMCSA 393.11RT – May 2023;

    g.   Inoperative and/or defective hazard warning lamp in violation of FMCSA 393.19 – May 2023;

    h.   Inoperative required lamp in violation of FMCSA 393.9 – May 2023;

    i.   No and/or insufficient warning devices in violation of FMCSA 393.95(f) – May 2023;

    j.   Inoperable headlamps in violation of FMCSA 393.9H – May 2023;

    k.   Inoperative turn signal in violation of FMCSA 393.9TS – May 2023;

    l.   Failure to have record of duty status in violation of FMCSA 395.8(a)(1) – August 2023;

    m.   Failure to have sufficient tie-downs to prevent forward movement for load in violation of FMCSA 393.110(b) – August 2023;

    n.   Failure to have record of duty status in violation of FMCSA 395.8(a)(1) – May 2024; and

    o.   Operating in violation of FMCSA Operational Out of Service Order for Failure to Permit Safety Audit in violation of FMCSA 385.337(b) – May 2024.

151.    Additionally, the negligence, carelessness, and/or recklessness of Defendants, in the hiring, supervision, retention and selection of Monique as a carrier consisted of the following:

    a.   Failing to properly train, monitor, and/or supervise its employees, drivers and/or agents including Monique;

    b.   Failing to train and/or properly train Mr. Cruz-Mendoza prior to allowing him to operate its Tractor Trailer;

    c.   Hiring and/or continuing to employ Monique even though it knew or should have known that their violation of the FMCSA hours of service made the company unfit to operate a commercial vehicle safely;

    d.   Hiring and/or continuing to employ Monique even though the company had a propensity for driving violations;

34

e. Hiring and/or continuing to employ Monique even though the company had a propensity for violating the "Rules of the Road" and FMCSR

f. Failing to do preventable analysis as recommended by the FMSCR;

g. Failing to have an appropriate disciplinary policy within the company;

h. Hiring and/or continuing to employ Monique even though it knew or should have known that its propensity to break the vehicular rules could and/or would put the driving public at risk;

i. Permitting Monique to carry its loads when it knew or should have known that the company was not properly qualified and/or trained;

j. Allowing Monique to operate tractor-trailers in its possession when it knew or should have known that such operation posed a risk of danger to others lawfully on the roadway;

k. Failing to adopt appropriate employee manuals and/or training procedures;

l. Failing to enforce both written and unwritten policies of Defendants;

m. Failing to ensure that its employees, drivers, and/or agents were aware of and complied with the written and unwritten policies of Defendants;

n. Failing to implement and/or enforce an effective safety system;

o. Failing to ensure that its management personnel and drivers were aware of the requirements and dictates of the FMCSA regulations;

p. Failing to ensure that its employees, drivers, and/or agents complied with the provisions of the FMCSA regulations;

q. Failing to ensure that its employees, drivers, and/or agents were aware of and complied with rules, laws, and regulations pertaining to and governing the operation of commercial vehicles;

r. Violating the applicable rules, laws, and regulations pertaining to and governing the operation of commercial vehicles;

s. Failing to monitor and/or regulate the actions of its drivers;

t. Failing to monitor and/or regulate the hours of its drivers;

35

u.  Failing to have an auditing system in place to audit its drivers' logs, or if a system is in place, failing to use it appropriately;

v.  Failing to use a third-party vendor to audit their drivers' logs, or if they did use a third-party vendor, failing to use it appropriately;

w.  Failing to have policies and mechanisms in place to address cumulative fatigue in its drivers;

x.  Placing more emphasis on profits than on safety of its drivers and the motoring public;

y.  Knowingly violating federal and state law regarding the responsibilities of motor carriers and the operation of commercial vehicles;

z.  Failing to act upon and remedy violations of FMCSA regulation 383.23;

aa. Failing to act upon and remedy violations of FMCSA regulation 391.11;

bb. Failing to act upon and remedy violations of FMCSA regulation 392.14 and the Uniform Commercial Driver's Manual;

cc. Failing to act upon and remedy violations of FMCSA regulation 393.100;

dd. Failing to act upon and remedy violations of FMCSA regulation 395.8;

ee. Failing to act upon and remedy known violations of industry standards;

ff. Acting in a conscious disregard for the rights and safety of the Plaintiff's Decedent;

gg. Failing to have appropriate policies and procedures with regard to hiring of drivers;

hh. Failing to follow the written and/or unwritten policies and procedures with regard to hiring of its drivers;

ii.  Failing to have appropriate policies and procedures with regard to monitoring of its drivers;

jj.  Failing to follow the written and/or unwritten policies and procedures with regard to monitoring its drivers;

kk. Consciously disregarding federal and state law regarding the responsibilities of motor carriers and the operation of commercial vehicles;

ll.   Violating all applicable provisions of the FMCSA;

mm.   Failing to suspend, discipline, or provide remedial training to Monique prior to the Crash despite its history of unsafe driving practices; and

nn.  Habitually and recklessly disregarding state and federal laws, regulations, and industry standards governing the safe hiring, training and retention of tractor-trailer drivers, the safe operation of a motor carrier transporting goods in interstate commerce, and the safe operation of commercial motor vehicles that created a zone and culture of danger that constituted a dangerous mode of operation, which was reasonably anticipated to cause injury and death to the motoring public and created a danger to all motorists exposed to its unsafe commercial motor vehicle drivers like Mr. Cruz-Mendoza.

152.   Plaintiff, D. Miller, as Surviving Spouse of Scott Miller, deceased, claims Defendants' reckless acts and reckless failures to act constitute a felonious killing pursuant to C.R.S. § 13-21-203.

153.   As a result of the above-stated acts and omissions, Plaintiff suffered such harm as has been previously stated herein.

**WHEREFORE** Plaintiff, hereby seeks all damages allowed under the laws of the State of Colorado in an amount in excess of the prevailing arbitration limits.

## COUNT VI

## NEGLIGENT UNDERTAKING

## DEANN MILLER, as Surviving Spouse of SCOTT MILLER, deceased v. TOTAL QUALITY LOGISTICS LLC

154.   The preceding paragraphs are incorporated herein as though fully set forth below.

155.   TQL is subject to liability for the physical harm caused to third persons for its failure to exercise reasonable care to protect its undertakings.

156.   TQL had a contractual obligation to efficiently and safely transport goods in interstate commerce on June 11, 2024.

157.   TQL undertook, for consideration, a duty to render these services.

158. TQL assumed an obligation to render transportation of goods in interstate commerce.

159. TQL owed a duty of care to those third parties legally traveling on HWY 285, including the Decedent on the date and time of the crash.

160. Upon information and belief, TQL knew that both Monique and Mr. Cruz-Mendoza had a history of unsafe driving violations.

161. By hiring a company and a driver with a history of unsafe driving violations, such as Monique and Mr. Cruz-Mendoza, TQL knew that the likelihood of Mr. Cruz-Mendoza causing a crash increased exponentially.

162. TQL failed to exercise reasonable care and increased the risk of harm in failing to adequately and safely transport goods on HWY 285 on June 11, 2024.

163. Additionally, TQL undertook the performance of said duties and was negligent in its undertaking in the following ways:

   a. Failing to properly train, monitor, and/or supervise its employees, drivers and/or agents including Mr. Cruz-Mendoza;

   b. Failing to train and/or properly train Mr. Cruz-Mendoza prior to allowing him to operate its Tractor Trailer;

   c. Hiring and/or continuing to employ Mr. Cruz-Mendoza even though it knew or should have known that his violation of the FMCSA hours of service made him unfit to safely operate a commercial vehicle;

   d. Hiring and/or continuing to employ Mr. Cruz-Mendoza even though he had a propensity for driving violations;

   e. Hiring and/or continuing to employ Mr. Cruz-Mendoza even though he had a propensity for violating the "Rules of the Road" and FMCSR

   f. Failing to do preventable analysis as recommended by the FMSCR;

   g. Failing to have an appropriate disciplinary policy within the company;

h.  Hiring and/or continuing to employ Mr. Cruz-Mendoza even though it knew or should have known that his propensity to break the vehicular rules could and/or would put the driving public at risk;

i.  Permitting Mr. Cruz-Mendoza to operate its Tractor Trailer when it knew or should have known that he was not properly qualified and/or trained;

j.  Allowing Mr. Cruz-Mendoza to operate tractor-trailers in its possession when it knew or should have known that such operation posed a risk of danger to others lawfully on the roadway;

k.  Failing to adopt appropriate employee manuals and/or training procedures;

l.  Failing to enforce both written and unwritten policies of Defendants;

m.  Failing to ensure that its employees, drivers, and/or agents were aware of and complied with the written and unwritten policies of Defendants;

n.  Failing to implement and/or enforce an effective safety system;

o.  Failing to ensure that its management personnel and drivers were aware of the requirements and dictates of the FMCSA regulations;

p.  Failing to ensure that its employees, drivers, and/or agents complied with the provisions of the FMCSA regulations;

q.  Failing to ensure that its employees, drivers, and/or agents were aware of and complied with rules, laws and regulations pertaining to and governing the operation of commercial vehicles;

r.  Violating the applicable rules, laws, and regulations pertaining to and governing the operation of commercial vehicles;

s.  Failing to monitor and/or regulate the actions of its drivers;

t.  Failing to monitor and/or regulate the hours of its drivers;

u.  Failing to have an auditing system in place to audit its drivers' logs, or if a system is in place, failing to use it appropriately;

v.  Failing to use a third-party vendor to audit their drivers' logs, or if they did use a third-party vendor, failing to use it appropriately;

w.  Failing to have policies and mechanisms in place to address cumulative fatigue in its drivers;

39

x. Placing more emphasis on profits than on safety of its drivers and the motoring public;

y. Knowingly violating federal and state law regarding the responsibilities of motor carriers and the operation of commercial vehicles;

z. Failing to act upon and remedy violations of FMCSA regulation 383.23;

aa. Failing to act upon and remedy violations of FMCSA regulation 391.11;

bb. Failing to act upon and remedy violations of FMCSA regulation 392.14 and the Uniform Commercial Driver's Manual;

cc. Failing to act upon and remedy violations of FMCSA regulation 393.100;

dd. Failing to act upon and remedy violations of FMCSA regulation 395.8;

ee. Failing to act upon and remedy known violations of industry standards;

ff. Acting in a conscious disregard for the rights and safety of the Plaintiff's Decedent;

gg. Failing to have appropriate policies and procedures with regard to hiring of drivers;

hh. Failing to follow the written and/or unwritten policies and procedures with regard to hiring of its drivers;

ii. Failing to have appropriate policies and procedures with regard to monitoring of its drivers;

jj. Failing to follow the written and/or unwritten policies and procedures with regard to monitoring its drivers;

kk. Consciously disregarding federal and state law regarding the responsibilities of motor carriers and the operation of commercial vehicles;

ll. Violating all applicable provisions of the FMCSA;

mm. Failing to suspend, discipline, or provide remedial training to Mr.Cruz-Mendoza prior to the Crash despite his history of unsafe driving practices; and

nn. Habitually and recklessly disregarding state and federal laws, regulations, and industry standards governing the safe hiring, training and retention of tractor-trailer drivers, the safe operation of a motor carrier transporting goods in interstate commerce, and the safe operation of commercial motor vehicles that

40

created a zone and culture of danger that constituted a dangerous mode of operation, which was reasonably anticipated to cause injury and death to the motoring public and created a danger to all motorists exposed to its unsafe commercial motor vehicle drivers like Mr. Cruz-Mendoza.

164.    Plaintiff, D. Miller, as Surviving Spouse of Scott Miller, deceased, claims Defendants' reckless acts and reckless failures to act constitute a felonious killing pursuant to C.R.S. § 13-21-203.

165.    As a result of the above-stated acts and omissions, Plaintiff suffered such harm as has been previously stated herein.

**WHEREFORE** Plaintiff, hereby seeks all damages allowed under the laws of the State of Colorado in an amount in excess of the prevailing arbitration limits.

**COUNT VII**

**NEGLIGENT UNDERTAKING**

**<u>DEANN MILLER, as Surviving Spouse of SCOTT MILLER, deceased v.
INTSEL STEEL WEST LLC</u>**

166.    The preceding paragraphs are incorporated herein as though fully set forth below.

167.    Intsel is subject to liability for the physical harm caused to third persons for its failure to exercise reasonable care to protect its undertakings.

168.    Intsel had a contractual obligation to efficiently and safely transport goods in interstate commerce on June 11, 2024.

169.    Intsel undertook, for consideration, a duty to render these services.

170.    Intsel assumed an obligation to render transportation of goods in interstate commerce.

171.    Intsel owed a duty of care to those third parties legally traveling on HWY 285, including the Decedent on the date and time of the crash.

172.    Upon information and belief, Intsel knew that both Monique and Mr. Cruz-Mendoza had a history of unsafe driving violations.

173.    By hiring a company and a driver with a history of unsafe driving violations, such as Monique and Mr. Cruz-Mendoza, Intsel knew that the likelihood of Mr. Cruz-Mendoza causing a crash increased exponentially.

174.    Intsel failed to exercise reasonable care and increased the risk of harm in failing to adequately and safely transport goods on HWY 285 on June 11, 2024.

175.    Additionally, Intsel undertook the performance of said duties and was negligent in its undertaking in the following ways:

     a.  Failing to properly train, monitor, and/or supervise its employees, drivers and/or agents, including Mr. Cruz-Mendoza;

     b.  Failing to train and/or properly train Mr. Cruz-Mendoza prior to allowing him to operate its Tractor Trailer;

     c.  Hiring and/or continuing to employ Mr. Cruz-Mendoza even though it knew or should have known that his violation of the FMCSA hours of service made him unfit to operate a commercial vehicle safely;

     d.  Hiring and/or continuing to employ Mr. Cruz-Mendoza even though he had a propensity for driving violations;

     e.  Hiring and/or continuing to employ Mr. Cruz-Mendoza even though he had a propensity for violating the "Rules of the Road" and FMCSR

     f.  Failing to do preventable analysis as recommended by the FMSCR;

     g.  Failing to have an appropriate disciplinary policy within the company;

     h.  Hiring and/or continuing to employ Mr. Cruz-Mendoza even though it knew or should have known that his propensity to break the vehicular rules could and/or would put the driving public at risk;

     i.  Permitting Mr. Cruz-Mendoza to operate its Tractor Trailer when it knew or should have known that he was not properly qualified and/or trained;

j.   Allowing Mr. Cruz-Mendoza to operate tractor-trailers in its possession when it knew or should have known that such operation posed a risk of danger to others lawfully on the roadway;

k.   Failing to adopt appropriate employee manuals and/or training procedures;

l.   Failing to enforce both written and unwritten policies of Defendants;

m.   Failing to ensure that its employees, drivers, and/or agents were aware of and complied with the written and unwritten policies of Defendants;

n.   Failing to implement and/or enforce an effective safety system;

o.   Failing to ensure that its management personnel and drivers were aware of the requirements and dictates of the FMCSA regulations;

p.   Failing to ensure that its employees, drivers, and/or agents complied with the provisions of the FMCSA regulations;

q.   Failing to ensure that its employees, drivers, and/or agents were aware of and complied with rules, laws and regulations pertaining to and governing the operation of commercial vehicles;

r.   Violating the applicable rules, laws, and regulations pertaining to and governing the operation of commercial vehicles;

s.   Failing to monitor and/or regulate the actions of its drivers;

t.   Failing to monitor and/or regulate the hours of its drivers;

u.   Failing to have an auditing system in place to audit its drivers' logs, or if a system is in place, failing to use it appropriately;

v.   Failing to use a third-party vendor to audit their drivers' logs, or if they did use a third-party vendor, failing to use it appropriately;

w.   Failing to have policies and mechanisms in place to address cumulative fatigue in its drivers;

x.   Placing more emphasis on profits than on safety of its drivers and the motoring public;

y.   Knowingly violating federal and state law regarding the responsibilities of motor carriers and the operation of commercial vehicles;

z.   Failing to act upon and remedy violations of FMCSA regulation 383.23;

43

aa. Failing to act upon and remedy violations of FMCSA regulation 391.11;

bb. Failing to act upon and remedy violations of FMCSA regulation 392.14 and the Uniform Commercial Driver's Manual;

cc. Failing to act upon and remedy violations of FMCSA regulation 393.100;

dd. Failing to act upon and remedy violations of FMCSA regulation 395.8;

ee. Failing to act upon and remedy known violations of industry standards;

ff. Acting in a conscious disregard for the rights and safety of the Plaintiff's Decedent;

gg. Failing to have appropriate policies and procedures with regard to hiring of drivers;

hh. Failing to follow the written and/or unwritten policies and procedures with regard to hiring of its drivers;

ii. Failing to have appropriate policies and procedures with regard to monitoring of its drivers;

jj. Failing to follow the written and/or unwritten policies and procedures with regard to monitoring its drivers;

kk. Consciously disregarding federal and state law regarding the responsibilities of motor carriers and the operation of commercial vehicles;

ll. Violating all applicable provisions of the FMCSA;

mm. Failing to suspend, discipline, or provide remedial training to Mr.Cruz-Mendoza prior to the Crash despite his history of unsafe driving practices; and

nn. Habitually and recklessly disregarding state and federal laws, regulations, and industry standards governing the safe hiring, training and retention of tractor-trailer drivers, the safe operation of a motor carrier transporting goods in interstate commerce, and the safe operation of commercial motor vehicles that created a zone and culture of danger that constituted a dangerous mode of operation, which was reasonably anticipated to cause injury and death to the motoring public and created a danger to all motorists exposed to its unsafe commercial motor vehicle drivers like Mr. Cruz-Mendoza.

176. Plaintiff, D. Miller, as Surviving Spouse of Scott Miller, deceased, claims

44

Defendants' reckless acts and reckless failures to act constitute a felonious killing pursuant to C.R.S. § 13-21-203.

177.    As a result of the above-stated acts and omissions, Plaintiff suffered such harm as has been previously stated herein.

**WHEREFORE** Plaintiff, hereby seeks all damages allowed under the laws of the State of Colorado in an amount in excess of the prevailing arbitration limits.

## COUNT VIII

## NEGLIGENT UNDERTAKING

### DEANN MILLER, as Surviving Spouse of SCOTT MILLER, deceased v. TRIPLE-S STEEL HOLDINGS, INC.

178.    The preceding paragraphs are incorporated herein as though fully set forth below.

179.    Triple is subject to liability for the physical harm caused to third persons for its failure to exercise reasonable care to protect its undertakings.

180.    Triple had a contractual obligation to efficiently and safely transport goods in interstate commerce on June 11, 2024.

181.    Triple undertook, for consideration, a duty to render these services.

182.    Triple assumed an obligation to render transportation of goods in interstate commerce.

183.    Triple owed a duty of care to those third parties legally traveling on HWY 285, including the Decedent on the date and time of the crash.

184.    Upon information and belief, Triple knew that both Monique and Mr. Cruz-Mendoza had a history of unsafe driving violations.

45

185. By hiring a company and a driver with a history of unsafe driving violations, such as Monique and Mr. Cruz-Mendoza, Triple knew that the likelihood of Mr. Cruz-Mendoza causing a crash increased exponentially.

186. Triple failed to exercise reasonable care and increased the risk of harm in failing to adequately and safely transport goods on HWY 285 on June 11, 2024.

187. Additionally, Triple undertook the performance of said duties and was negligent in its undertaking in the following ways:

    a. Failing to properly train, monitor, and/or supervise its employees, drivers and/or agents, including Mr. Cruz-Mendoza;

    b. Failing to train and/or properly train Mr. Cruz-Mendoza prior to allowing him to operate its Tractor Trailer;

    c. Hiring and/or continuing to employ Mr. Cruz-Mendoza even though it knew or should have known that his violation of the FMCSA hours of service made him unfit to operate a commercial vehicle safely;

    d. Hiring and/or continuing to employ Mr. Cruz-Mendoza even though he had a propensity for driving violations;

    e. Hiring and/or continuing to employ Mr. Cruz-Mendoza even though he had a propensity for violating the "Rules of the Road" and FMCSR

    f. Failing to do preventable analysis as recommended by the FMSCR;

    g. Failing to have an appropriate disciplinary policy within the company;

    h. Hiring and/or continuing to employ Mr. Cruz-Mendoza even though it knew or should have known that his propensity to break the vehicular rules could and/or would put the driving public at risk;

    i. Permitting Mr. Cruz-Mendoza to operate its Tractor Trailer when it knew or should have known that he was not properly qualified and/or trained;

    j. Allowing Mr. Cruz-Mendoza to operate tractor-trailers in its possession when it knew or should have known that such operation posed a risk of danger to others lawfully on the roadway;

    k. Failing to adopt appropriate employee manuals and/or training procedures;

l.   Failing to enforce both written and unwritten policies of Defendants;

m.   Failing to ensure that its employees, drivers, and/or agents were aware of and complied with the written and unwritten policies of Defendants;

n.   Failing to implement and/or enforce an effective safety system;

o.   Failing to ensure that its management personnel and drivers were aware of the requirements and dictates of the FMCSA regulations;

p.   Failing to ensure that its employees, drivers, and/or agents complied with the provisions of the FMCSA regulations;

q.   Failing to ensure that its employees, drivers, and/or agents were aware of and complied with rules, laws and regulations pertaining to and governing the operation of commercial vehicles;

r.   Violating the applicable rules, laws, and regulations pertaining to and governing the operation of commercial vehicles;

s.   Failing to monitor and/or regulate the actions of its drivers;

t.   Failing to monitor and/or regulate the hours of its drivers;

u.   Failing to have an auditing system in place to audit its drivers' logs, or if a system is in place, failing to use it appropriately;

v.   Failing to use a third-party vendor to audit their drivers' logs, or if they did use a third-party vendor, failing to use it appropriately;

w.   Failing to have policies and mechanisms in place to address cumulative fatigue in its drivers;

x.   Placing more emphasis on profits than on safety of its drivers and the motoring public;

y.   Knowingly violating federal and state law regarding the responsibilities of motor carriers and the operation of commercial vehicles;

z.   Failing to act upon and remedy violations of FMCSA regulation 383.23;

aa.  Failing to act upon and remedy violations of FMCSA regulation 391.11;

bb.  Failing to act upon and remedy violations of FMCSA regulation 392.14 and the Uniform Commercial Driver's Manual;

cc. Failing to act upon and remedy violations of FMCSA regulation 393.100;

dd. Failing to act upon and remedy violations of FMCSA regulation 395.8;

ee. Failing to act upon and remedy known violations of industry standards;

ff. Acting in a conscious disregard for the rights and safety of the Plaintiff's Decedent;

gg. Failing to have appropriate policies and procedures with regard to hiring of drivers;

hh. Failing to follow the written and/or unwritten policies and procedures with regard to hiring of its drivers;

ii. Failing to have appropriate policies and procedures with regard to monitoring of its drivers;

jj. Failing to follow the written and/or unwritten policies and procedures with regard to monitoring its drivers;

kk. Consciously disregarding federal and state law regarding the responsibilities of motor carriers and the operation of commercial vehicles;

ll. Violating all applicable provisions of the FMCSA;

mm. Failing to suspend, discipline, or provide remedial training to Mr.Cruz-Mendoza prior to the Crash despite his history of unsafe driving practices; and

nn. Habitually and recklessly disregarding state and federal laws, regulations, and industry standards governing the safe hiring, training and retention of tractor-trailer drivers, the safe operation of a motor carrier transporting goods in interstate commerce, and the safe operation of commercial motor vehicles that created a zone and culture of danger that constituted a dangerous mode of operation, which was reasonably anticipated to cause injury and death to the motoring public and created a danger to all motorists exposed to its unsafe commercial motor vehicle drivers like Mr. Cruz-Mendoza.

188. Plaintiff, D. Miller, as Surviving Spouse of Scott Miller, deceased, claims Defendants' reckless acts and reckless failures to act constitute a felonious killing pursuant to C.R.S. § 13-21-203.

189. As a result of the above-stated acts and omissions, Plaintiff suffered such harm

48

as has been previously stated herein.

**WHEREFORE** Plaintiff, hereby seeks all damages allowed under the laws of the State

of Colorado in an amount in excess of the prevailing arbitration limits.

**COUNT IX**

**NEGLIGENT UNDERTAKING**

**DEANN MILLER, as Surviving Spouse of SCOTT MILLER, deceased v.
SEARING INDUSTRIES, INC**

190.     The preceding paragraphs are incorporated herein as though fully set forth below.

191.     Searing is subject to liability for the physical harm caused to third persons for its

failure to exercise reasonable care to protect its undertakings.

192.     Searing had a contractual obligation to efficiently and safely transport goods in

interstate commerce on June 11, 2024.

193.     Searing undertook, for consideration, a duty to render these services.

194.     Searing assumed an obligation to render transportation of goods in interstate

commerce.

195.     Searing owed a duty of care to those third parties legally traveling on HWY 285,

including the Decedent on the date and time of the crash.

196.     Upon information and belief, Searing knew that both Monique and Mr. Cruz-

Mendoza had a history of unsafe driving violations.

197.     By hiring a company and a driver with a history of unsafe driving violations, such

as Monique and Mr. Cruz-Mendoza, Searing knew that the likelihood of Mr. Cruz-Mendoza

causing a crash increased exponentially.

198.     Searing failed to exercise reasonable care and increased the risk of harm in failing

to adequately and safely transport goods on HWY 285 on June 11, 2024.

49

199. Additionally, Searing undertook the performance of said duties and was negligent in its undertaking in the following ways:

a. Failing to properly train, monitor, and/or supervise its employees, drivers and/or agents, including Mr. Cruz-Mendoza;

b. Failing to train and/or properly train Mr. Cruz-Mendoza prior to allowing him to operate its Tractor Trailer;

c. Hiring and/or continuing to employ Mr. Cruz-Mendoza even though it knew or should have known that his violation of the FMCSA hours of service made him unfit to operate a commercial vehicle safely;

d. Hiring and/or continuing to employ Mr. Cruz-Mendoza even though he had a propensity for driving violations;

e. Hiring and/or continuing to employ Mr. Cruz-Mendoza even though he had a propensity for violating the "Rules of the Road" and FMCSR

f. Failing to do preventable analysis as recommended by the FMSCR;

g. Failing to have an appropriate disciplinary policy within the company;

h. Hiring and/or continuing to employ Mr. Cruz-Mendoza even though it knew or should have known that his propensity to break the vehicular rules could and/or would put the driving public at risk;

i. Permitting Mr. Cruz-Mendoza to operate its Tractor Trailer when it knew or should have known that he was not properly qualified and/or trained;

j. Allowing Mr. Cruz-Mendoza to operate tractor-trailers in its possession when it knew or should have known that such operation posed a risk of danger to others lawfully on the roadway;

k. Failing to adopt appropriate employee manuals and/or training procedures;

l. Failing to enforce both written and unwritten policies of Defendants;

m. Failing to ensure that its employees, drivers, and/or agents were aware of and complied with the written and unwritten policies of Defendants;

n. Failing to implement and/or enforce an effective safety system;

o. Failing to ensure that its management personnel and drivers were aware of the requirements and dictates of the FMCSA regulations;

50

p.  Failing to ensure that its employees, drivers, and/or agents complied with the provisions of the FMCSA regulations;

q.  Failing to ensure that its employees, drivers, and/or agents were aware of and complied with rules, laws and regulations pertaining to and governing the operation of commercial vehicles;

r.  Violating the applicable rules, laws, and regulations pertaining to and governing the operation of commercial vehicles;

s.  Failing to monitor and/or regulate the actions of its drivers;

t.  Failing to monitor and/or regulate the hours of its drivers;

u.  Failing to have an auditing system in place to audit its drivers' logs, or if a system is in place, failing to use it appropriately;

v.  Failing to use a third-party vendor to audit their drivers' logs, or if they did use a third-party vendor, failing to use it appropriately;

w.  Failing to have policies and mechanisms in place to address cumulative fatigue in its drivers;

x.  Placing more emphasis on profits than on safety of its drivers and the motoring public;

y.  Knowingly violating federal and state law regarding the responsibilities of motor carriers and the operation of commercial vehicles;

z.  Failing to act upon and remedy violations of FMCSA regulation 383.23;

aa. Failing to act upon and remedy violations of FMCSA regulation 391.11;

bb. Failing to act upon and remedy violations of FMCSA regulation 392.14 and the Uniform Commercial Driver's Manual;

cc. Failing to act upon and remedy violations of FMCSA regulation 393.100;

dd. Failing to act upon and remedy violations of FMCSA regulation 395.8;

ee. Failing to act upon and remedy known violations of industry standards;

ff. Acting in a conscious disregard for the rights and safety of the Plaintiff's Decedent;

51

gg. Failing to have appropriate policies and procedures with regard to hiring of drivers;

hh. Failing to follow the written and/or unwritten policies and procedures with regard to hiring of its drivers;

ii. Failing to have appropriate policies and procedures with regard to monitoring of its drivers;

jj. Failing to follow the written and/or unwritten policies and procedures with regard to monitoring its drivers;

kk. Consciously disregarding federal and state law regarding the responsibilities of motor carriers and the operation of commercial vehicles;

ll. Violating all applicable provisions of the FMCSA;

mm. Failing to suspend, discipline, or provide remedial training to Mr.Cruz-Mendoza prior to the Crash despite his history of unsafe driving practices; and

nn. Habitually and recklessly disregarding state and federal laws, regulations, and industry standards governing the safe hiring, training and retention of tractor-trailer drivers, the safe operation of a motor carrier transporting goods in interstate commerce, and the safe operation of commercial motor vehicles that created a zone and culture of danger that constituted a dangerous mode of operation, which was reasonably anticipated to cause injury and death to the motoring public and created a danger to all motorists exposed to its unsafe commercial motor vehicle drivers like Mr. Cruz-Mendoza.

200. Plaintiff, D. Miller, as Surviving Spouse of Scott Miller, deceased, claims Defendants' reckless acts and reckless failures to act constitute a felonious killing pursuant to C.R.S. § 13-21-203.

201. As a result of the above-stated acts and omissions, Plaintiff suffered such harm as has been previously stated herein.

**WHEREFORE** Plaintiff, hereby seeks all damages allowed under the laws of the State of Colorado in an amount in excess of the prevailing arbitration limits.

## COUNT X

### JOINT VENTURE

52

**DEANN MILLER, as Surviving Spouse of SCOTT MILLER, deceased v. MANRIQUE AGRAMON d/b/a MONIQUE TRUCKING LLC, TOTAL QUALITY LOGISTICS LLC, INTSEL STEEL WEST LLC, TRIPLE-S STEEL HOLDINGS, INC., SEARING INDUSTRIES, INC. AND IGNACIO CRUZ-MENDOZA**

202. The preceding paragraphs are incorporated herein as though fully set forth below.

203. On the above-referenced date, place and time, Defendants were engaged in a joint venture to haul goods and material in interstate commerce for profit.

204. Upon information and belief, Mr. Cruz-Mendoza was paid by all Defendants for this transportation, including allowances for fuel costs.

205. Upon information and belief, Defendants are in contact through numerous means of communication, including, but not limited to, email, faxes, telephone, and mobile applications to track the status of shipment from origin to delivery.

206. As a result of the transportation, Defendants earned, or intended to earn, a profit.

207. On the above-referenced date, place and time, Defendants controlled the Tractor Trailer through its duly authorized agent, servant, and/or employee, Mr. Cruz-Mendoza.

208. On the above-referenced date, place and time, Mr. Cruz-Mendoza was performing a service for the benefit of Defendants, namely the transportation of goods and material for profit.

209. Defendants were aware that Mr. Cruz-Mendoza was transporting the goods and materials.

210. Defendants had the right to control Mr. Cruz-Mendoza in performing this service.

211. Defendants exercised this control over Mr. Cruz-Mendoza, inter alia, in the manner described fully herein.

212. Defendants held out Mr. Cruz-Mendoza as an agent, servant, and/or employee such that a reasonable person would conclude that Mr. Cruz-Mendoza was an agent, servant,

and/or employee of Defendants and it is vicariously liable for the acts and/or omissions of Mr. Cruz-Mendoza.

213. As a direct and proximate cause of the above-stated acts and omissions, Plaintiff suffered, inter alia, the serious, severe, permanent, and fatal injuries as has been previously stated herein.

214. Plaintiff, D. Miller, as Surviving Spouse of Scott Miller, deceased, claims Defendants' reckless acts and reckless failures to act constitute a felonious killing pursuant to C.R.S. § 13-21-203.

215. As a result of the above-stated acts and omissions, Plaintiff suffered such harm as has been previously stated herein.

**WHEREFORE** Plaintiff, hereby seeks all damages allowed under the laws of the State of Colorado in an amount in excess of the prevailing arbitration limits.

## COUNT XI

### JOINT ENTERPRISE LIABILITY

**DEANN MILLER, as Surviving Spouse of SCOTT MILLER, deceased v. MANRIQUE AGRAMON d/b/a MONIQUE TRUCKING LLC, TOTAL QUALITY LOGISTICS LLC, INTSEL STEEL WEST LLC, TRIPLE-S STEEL HOLDINGS, INC., SEARING INDUSTRIES, INC. AND IGNACIO CRUZ-MENDOZA**

216. The preceding paragraphs are incorporated herein as though fully set forth below.

217. On the above-referenced date, place and time, Defendants were engaged in a joint enterprise to haul steel for profit.

218. Upon information and belief, Mr. Cruz-Mendoza was paid by all Defendants for this transportation, including allowances for fuel costs.

219.     Upon information and belief, Defendants are in contact through numerous means of communication, including, but not limited to email, faxes, telephone, and mobile applications to track the status of shipment from origin to delivery.

220.     As a result of the transportation of goods on the above-referenced date, place, and time, Defendants earned or intended to earn a profit.

221.     On the above-referenced date, place and time, Defendants controlled the Tractor Trailer through its fully authorized agent, servant, and/or employee, Mr. Cruz-Mendoza.

222.     On the above-referenced date, place and time, Mr. Cruz-Mendoza was performing a service for the benefit of Defendants, namely the transportation of goods in interstate commerce for profit.

223.     Defendants were aware that Mr. Cruz-Mendoza was transporting goods for profit.

224.     Defendants had the right to control Mr. Cruz-Mendoza in performing these services.

225.     Defendants exercised control over Mr. Cruz-Mendoza, inter alia, in the manner described fully herein.

226.     Defendants held out Mr. Cruz-Mendoza as an agent, servant, and/or employee such that a reasonable person would conclude that Mr. Cruz-Mendoza was an agent, servant, and/or employee of Defendants who are vicariously liable for the acts and/or omissions of Mr. Cruz-Mendoza.

227.     At all relevant times hereto, Defendants enjoyed unified administrative control as all Defendants participated in their full-service motor carrier, transportation and distribution activities to achieve their unified goal of transportation of goods to its final destination in a timely fashion for profit.

228. At all relevant times hereto, Defendants enjoyed similar or supplementary business functions in their full-service motor carrier, transportation and distribution activities to achieve their unified goal of transportation of goods to its final destination in a timely fashion for profit.

229. At all relevant times hereto, Defendants acted as affiliated or sister corporations possessing common ownership and/or an administrative nexus.

230. At all relevant times hereto, Defendants also acted as a joint venture and/or joint enterprise when operating their full-service motor carrier, transportation and distribution activities to achieve their unified goal of delivery of goods to its proper destination in a timely fashion for profit.

231. At all relevant times hereto, upon information and belief, Defendants, shared and/or utilized the same address and/or building premises, equipment, vehicles, trailers, accountants, attorneys, insurance agents, officers, directors and/or employees.

232. Upon information and belief, at all relevant times hereto, Defendants were responsible for operational management of Defendants' business and played an active role in the ongoing business activities of Defendants' business and had full authority to direct activities of Defendants' business.

233. Defendants shared in the profits that were generated and leased and/or owned a common facility from which Defendants operated and shared equipment, office space, facilities, attorneys, accountants, and insurance agents.

234. As a direct and proximate cause of the above-stated acts and omissions, Mr. Miller suffered, inter alia, the serious, severe, and permanent injuries stated herein.

235. Plaintiff, D. Miller, as Surviving Spouse of Scott Miller, deceased, claims

Defendants' reckless acts and reckless failures to act constitute a felonious killing pursuant to C.R.S. § 13-21-203.

236.    As a result of the above-stated acts and omissions, Plaintiff suffered such harm as has been previously stated herein.

**WHEREFORE** Plaintiff, hereby seeks all damages allowed under the laws of the State of Colorado in an amount in excess of the prevailing arbitration limits.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff seeks a judgement against Defendants for economic and non-economic wrongful death damages, past and future, including but not limited to: grief, loss of companionship, impairment of quality of life, inconvenience, pain and suffering, emotional stress, fear and anxiety, funeral and burial expenses, and financial loss. Plaintiff seeks a post-trial determination that the acts causing the death constitute a felonious killing. Plaintiff further seeks prejudgment interest, post-judgment interest, costs and attorney fees as permitted by law, and any further relief as the Court may deem just and proper.

## PLAINTIFF REQUESTS A TRIAL BY JURY

**RESPECTFULLY SUBMITTED** this 8th day of August 2025.

THE DAN CAPLIS LAW FIRM, LLC

*/s/ Daniel J. Caplis*
Daniel J. Caplis, #13171
Cajardo R. Lindsey. #33672
*Attorneys for Plaintiff*
*A duly authorized signature is on file in the offices of Dan Caplis Law*


**Plaintiff's Address:**
Deann Miller
c/o The Dan Caplis Law Firm
6400 S. Fiddlers Green Circle, Suite 2200
Greenwood Village, CO 80111