**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Nina Y. Wang**

Civil Action No. 25-cv-02457-NYW-TPO

ANNETTE MARTIN,

Plaintiff,

v.

IGNACIO CRUZ-MENDOZA,
TOTAL QUALITY LOGISTICS, LLC,
SEARING INDUSTRIES WYOMING, INC.,
MONIQUE TRUCKING, LLC, and
INTSEL STEEL-WEST, LLC,

Defendants.

---

## ORDER ON MOTIONS TO DISMISS

---

This matter is before the Court on Defendant Total Quality Logistics, LLC's Fed. R. Civ. P. 12(b)(6) Motion to Dismiss Amended Complaint (the "TQL Motion to Dismiss"), [Doc. 43], and Defendant Intsel Steel West LLC's Motion to Dismiss (the "Intsel Motion to Dismiss"), [Doc. 50]. For the reasons set forth in this Order, the TQL Motion to Dismiss and the Intsel Motion to Dismiss are **GRANTED**.

## BACKGROUND

This case arises out of a June 11, 2024 traffic collision that caused injuries to Plaintiff Annette Martin ("Plaintiff" or "Ms. Martin").[1] On that day, Defendant Ignacio Cruz-Mendoza ("Mr. Cruz-Mendoza") was traveling in a tractor trailer on Highway 285.

---

[1] These facts are drawn from Plaintiff's Second Amended Complaint for Damages and Jury Demand (the "Second Amended Complaint"), [Doc. 35], and are taken as true for purposes of this Order.

[Doc. 35 at ¶ 51]. When attempting to pass a vehicle, Mr. Cruz-Mendoza struck another vehicle, lost control of his tractor trailer, and ultimately caused a chain collision involving five different vehicles, including one driven by Ms. Martin. [*Id.* at ¶¶ 52–56]. Ms. Martin alleges that the collision caused "significant injuries, damages, and losses, including a brain injury and impairment." [*Id.* at ¶ 89].

Ms. Martin brings this lawsuit against a number of individuals and entities that she claims contributed to the June 11 collision. *See* [*id.* at 1]. She alleges that at the time of the collision, Mr. Cruz-Mendoza was hauling cargo for Searing Industries Wyoming, Inc. ("Searing"), and a Searing agent helped load and directed the process of loading Mr. Cruz-Mendoza's trailer. [*Id.* at ¶¶ 17, 36, 40–42]. The cargo was meant to be shipped to Defendant Intsel Steel-West, LLC ("Intsel"). [*Id.* at ¶¶ 17].[2] The broker for that specific shipment was Defendant Total Quality Logistics, LLC ("TQL"). [*Id.* at ¶ 37]. And though unclear, it appears that Mr. Cruz-Mendoza may have been delivering the cargo on behalf of Monique Trucking LLC ("Monique Trucking"). *See* [*id.* at ¶ 112 ("By hiring a driver who did not possess a valid CDL, such as Mr. Cruz-Mendoza, Monique [Trucking] knew or should have known that the likelihood of Mr. Cruz-Mendoza causing a crash increased exponentially.")].

[2] Plaintiff alleges that the loads were "bound for Intsel and Triple." [Doc. 35 at ¶ 17]. This is the only reference to "Triple" in the Second Amended Complaint. The Court infers that this allegation references non-party Triple-S Steel Holdings Inc., based on a substantially similar case arising out of the June 11, 2024 collision that is also pending before this Court. *See Miller v. Manrique Agramon et al.*, No. 25-cv-00997-NYW-TPO (D. Colo.). The Court observes that the Second Amended Complaint in this case and the Amended Complaint in *Miller* raise essentially identical allegations, often verbatim. *Compare* [Doc. 35], *with Miller*, ECF No. 32 (D. Colo. Aug. 13, 2025).

Ms. Martin alleges that all Defendants played a role in the death of her husband. She asserts ten claims:

(1) A negligence claim against Mr. Cruz-Mendoza ("Claim One"), [*id.* at ¶¶ 81–89];

(2) A negligence per se claim against Mr. Cruz-Mendoza ("Claim Two") [*id.* at ¶¶ 90–95 (emphasis omitted and capitalization altered)];

(3) A claim for "negligent and/or reckless" hiring, supervision, retention, or selection, asserted with respect to Mr. Cruz-Mendoza, against Monique Trucking, TQL, Searing, and Intsel ("Claim Three"), [*id.* at ¶¶ 96–103];

(4) A negligent undertaking claim against Monique Trucking ("Claim Four"), [*id.* at ¶¶ 104–15];

(5) A claim for "negligent and/or reckless" hiring, supervision, retention, or selection, asserted with respect to Monique Trucking, against TQL, Searing, and Intsel ("Claim Five"), [*id.* at ¶¶ 116–24];

(6) A negligent undertaking claim against TQL ("Claim Six"), [*id.* at ¶¶ 125–35];

(7) A negligent undertaking claim against Intsel ("Claim Seven"), [*id.* at ¶¶ 136–47];

(8) A negligent undertaking claim against Searing ("Claim Eight"), [*id.* at ¶¶ 148–58];

(9) A "joint venture" claim against Monique Trucking, TQL, Intsel, Searing, and Mr. Cruz-Mendoza ("Claim Nine"), [*id.* at ¶¶ 159–71 (capitalization altered)]; and

(10) A "joint enterprise liability" claim against Monique Trucking, TQL, Intsel, Searing, and Mr. Cruz-Mendoza ("Claim Ten"), [*id.* at ¶¶ 172–90].

Searing, Mr. Cruz-Mendoza, and Monique Trucking have all answered Plaintiff's Second Amended Complaint. *See* [Doc. 48; Doc. 51; Doc. 60]. Intsel and TQL have moved to dismiss Plaintiff's claims against them under Rule 12(b)(6). *See* [Doc. 43; Doc. 50]. Those Motions are fully briefed and ripe for resolution.

## LEGAL STANDARDS

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P.

12(b)(6). In deciding a motion under Rule 12(b)(6), the Court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quotation omitted). The plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted).

## ANALYSIS

### I. The Intsel Motion to Dismiss

The Court addresses the Intsel Motion to Dismiss First. Intsel moves to dismiss all of Plaintiff's claims against it—specifically, Claims Three, Five, Seven, Nine, and Ten. *See* [Doc. 50].

#### A. Documents Properly Considered

The Second Amended Complaint references a "bill of lading." [Doc. 35 at ¶¶ 16–17]. Intsel argues that the Court should consider the bill of lading, as well as a transcript of Mr. Cruz-Mendoza's deposition in the *Miller* case, in ruling on the Intsel Motion to Dismiss. [Doc. 50 at 7–9]. It argues that the bill of lading is "critically relevant to Defendants' [sic] requested relief." [*Id.* at 8]. As for the deposition transcript, it acknowledges that the Second Amended Complaint does not reference the transcript, but it argues that Plaintiff "expressly takes facts from the deposition" in her pleading. [*Id.*]. It argues, without supporting legal authority, that because Plaintiff could only have learned certain information from the deposition transcript, "it is proper for Intsel to utilize the full

deposition transcript to highlight the deficiencies in Plaintiff's Amended Complaint." [*Id.* at 8–9]. Plaintiff does not argue that the Court should merely disregard these extraneous materials; rather, she asserts that "the Court should determine that Defendant's Motion to Dismiss should be converted to a Motion for Summary Judgment," and the Court should deny the converted motion as premature. [Doc. 56 at 1–2].

In ruling on a Rule 12(b)(6) motion to dismiss, a court must ordinarily "restrict its review to only the 'allegations within the four corners of the complaint,' and cannot consider other pleadings or external allegations." *Brown v. City of Tulsa*, 124 F.4th 1251, 1263–64 (10th Cir. 2025) (quoting *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1286 n.1 (10th Cir. 2019)). "Exceptions to this rule are limited to: (1) documents attached to the complaint as exhibits, (2) documents referenced in the complaint that are central to the plaintiff's claims, provided their authenticity is undisputed, and (3) matters subject to judicial notice." *Id.*

Intsel has not demonstrated that any exception is met here. Specifically, it does not argue that the bill of lading is central to any of Plaintiff's claims—rather, it argues that the document is "critically relevant to *[its] requested relief*"—i.e., dismissal. [Doc. 50 at 8 (emphasis added)]. As for the deposition transcript, there is no recognized exception to the four-corners rule that permits a court to consider extraneous documents simply because the defendant insists that the plaintiff relied on those documents in drafting her pleading. *See Brown*, 124 F.4th at 1263–64 (setting out limited exceptions to four-corners rule). Intsel has not demonstrated that the Court should consider these documents, and the Court, in its discretion, declines to do so. *See Lowe v. Town of Fairland*, 143 F.3d 1378, 1381 (10th Cir. 1998) ("[C]ourts have broad discretion in determining whether or

not to accept materials beyond the pleadings."). Because the Court has elected to disregard the extraneous documents (and any related arguments), the Court need not convert the Intsel Motion to Dismiss into a motion for summary judgment. *See Fuqua v. Santa Fe Cnty. Sheriff's Off.*, 157 F.4th 1288, 1297 (10th Cir. 2025) ("*If* the court considers evidence outside the pleadings, it must convert the motion to dismiss into a motion for summary judgment." (quotation omitted and emphasis added)).

**B. Negligent Hiring or Selection (Claims Three and Five)**

Claims Three and Five allege that Intsel was negligent in the hiring, supervision, retention, or selection of Mr. Cruz-Mendoza and Monique Trucking. *See* [Doc. 35 at ¶¶ 96–103, 116–24].[3] To state a claim for negligent hiring, a plaintiff must allege the "usual elements of negligence—duty, breach, injury, causation—and the establishment of an agency relationship between the employer and alleged employee." *Nielsen v. Archdiocese of Denv.*, 413 F. Supp. 2d 1181, 1184 (D. Colo. 2006) (citing *Moses v.*

[3] Courts in this District have recognized that "[i]t is not altogether clear that Colorado recognizes a distinct tort of negligent retention." *Gilbert v. U.S. Olympic Comm.*, 423 F. Supp. 3d 1112, 1145 (D. Colo. 2019). Instead, "Colorado courts have treated claims of negligent supervision and negligent retention as one and the same." *Id.* (citing cases); *see also Trujillo v. Moore Bros., Inc.*, No. 23-cv-00802-RM-SBP, 2024 WL 1219701, at *5 n.4 (D. Colo. Mar. 1, 2024) ("[I]t does not appear that Colorado law has developed a separate legal standard for negligent retention versus hiring and supervision."), *recommendation adopted*, 2024 WL 1216382 (D. Colo. Mar. 21, 2024). Moreover, based on the Court's independent research, it appears that negligent selection claims are akin to negligent hiring claims but arise when a party negligently selects an independent contractor. *See, e.g.*, *W. Stock Ctr., Inc. v. Sevit, Inc.*, 578 P.2d 1045, 1048 n.1 (Colo. 1978); *Spencer v. United Mortg. Co.*, 857 P.2d 1342, 1344 (Colo. App. 1993); *Gravina Siding & Windows Co. v. Gravina*, 516 P.3d 37, 48 n.9 (Colo. App. 2022). Neither side addresses whether claims of "negligent retention" or "negligent selection" require distinct analysis. *See* [Doc. 50; Doc. 56]. For purposes of this Order, the Court refers to "negligent hiring" generally to refer to the legal theories of negligent hiring and negligent selection and refers to "negligent supervision" to encompass the legal theories of negligent supervision and negligent retention.

*Diocese of Colo.*, 863 P.2d 310, 324 (Colo. 1993)). The same is true for claims of negligent supervision. *See Alarid v. MacLean Power, LLC*, 132 F. Supp. 3d 1299, 1308–09 (D. Colo. 2015) (citing *Keller v. Koca*, 111 P.3d 445, 447 (Colo. 2005)).

Under Colorado law, "[a] defendant owes a plaintiff a legal duty in hiring employees where an employer had reason to believe that, because of 'of some attribute of character or prior conduct, the employee would create an undue risk of harm to the plaintiff in carrying out his or her employment responsibilities.'" *Blanco v. HCA-Healthone, LLC*, No. 19-cv-00928-PAB-SKC, 2020 WL 5760452, at *5 (D. Colo. Sept. 28, 2020) (quoting *Raleigh v. Performance Plumbing and Heating*, 130 P.3d 1011, 1016 (Colo. 2006) (cleaned up)). Similarly, for purposes of negligent supervision, an "employer has a duty to prevent an unreasonable risk of harm to third persons to whom the employer knows or should have known that the employee would cause harm." *Engeman Enters., LLC v. Tolin Mech. Sys. Co.*, 320 P.3d 364, 371 (Colo. App. 2013) (quoting *Keller*, 111 P.3d at 448).

Intsel moves to dismiss Claims Three and Five because, among other reasons, Plaintiff fails to allege facts showing that Intsel had any role in the hiring, supervision, retention, or selection of Mr. Cruz-Mendoza or Monique Trucking. [Doc. 50 at 9–11].[4] It argues because there are no such allegations, Plaintiff has not plausibly alleged that Intsel owed any sort of duty with respect to the hiring of Mr. Cruz-Mendoza or the selection of Monique Trucking. [*Id.*].

In her Response, Plaintiff contends that Claims Three and Five "plead[] a legal

[4] Although this argument largely relies on extraneous evidence and allegations that the Court does not consider, the Court nevertheless finds Intsel's argument sufficient to put the issue before the Court.

duty owed by Defendant Intsel and provide[] numerous detailed allegations regarding how this duty was breached and resulted in harms to the Plaintiff." [Doc. 56 at 3–4]. Missing from this assertion, however, is meaningful legal analysis. Indeed, Plaintiff does not direct the Court to any specific factual allegations plausibly alleging that Intsel had any role in the hiring or supervision of Mr. Cruz-Mendoza or Monique Trucking. *See* [*id.*]. But despite Plaintiff's failure to substantively respond to this argument, this Court is mindful that it cannot grant dismissal of a claim merely because the plaintiff fails to respond. *See Issa v. Comp USA*, 354 F.3d 1174, 1177 (10th Cir. 2003).

"[I]n examining a complaint under Rule 12(b)(6), [the Court] disregard[s] conclusory statements and look[s] only to whether the remaining[] factual allegations plausibly suggest the defendant is liable," understanding that "it is Plaintiff's burden to "nudge her claims across the line from conceivable to plausible." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012). The Second Amended Complaint's allegations regarding Intsel specifically are sparse. Plaintiff alleges that Intsel was "the consignee on the bill of lading" and was due to receive the shipment of steel beams. [Doc. 35 at ¶¶ 16–17, 36]. There are no other factual allegations specific to Intsel, and there are no allegations plausibly establishing that Intsel played any role in the hiring, retention, selection, or supervision of Mr. Cruz-Mendoza or Monique Trucking. *See* [*id.*]. Instead, all such allegations refer to "Defendants" generally. *See, e.g.*, [*id.* at ¶¶ 69, 74, 102, 122]. These group-pleading allegations are insufficient to state a plausible claim with respect to Intsel. *See Goodwin v. Bruggeman-Hatch*, No. 13-cv-02973-REB-MEH, 2014 WL 3882183, at *1 (D. Colo. Aug. 7, 2014) ("'[G]roup pleading' is insufficient to state a plausible claim implicating a particular defendant."); *Snyder v. ACORD Corp.*, No. 14-

cv-01736-JLK, 2016 WL 192270, at *3 (D. Colo. Jan. 15, 2016) (recognizing that group pleading may violate Rule 8), *aff'd*, 684 F. App'x 710 (10th Cir. 2017).

Because Plaintiff has not alleged any facts from which it could be plausibly inferred that Intsel had any role in the hiring or selection of Mr. Cruz-Mendoza or Monique Trucking, she has not alleged the "duty" element required for a negligence claim. After all, it is axiomatic that the duty involved in a negligent hiring claim is the duty to exercise care in making the hiring decision. *See, e.g.*, *Connes v. Molalla Transp. Sys., Inc.*, 817 P.2d 567, 570 (Colo. App. 1991) ("[T]the theory of negligent hiring is that an employer whose employees are brought into contact with members of the public in the course of their employment is responsible for exercising a duty of reasonable care in the selection of its employees." (cleaned up)), *aff'd*, 831 P.2d 1316 (Colo. 1992); *Moses*, 863 P.2d at 324 ("An employer has a duty to exercise reasonable care in making his decision to hire."). And for this reason, Plaintiff has not stated a plausible claim for negligent hiring, supervision, retention, or selection claim against Instel. *See Seidl v. Greentree Mortg. Co.*, 30 F. Supp. 2d 1292, 1301 (D. Colo. 1998) ("[Because] Greentree did not hire Mr. Van Keuren as its employee or agent, it contends that the elements of negligent hiring are not met under Colorado law. Greentree is correct."); *Raleigh v. Performance Plumbing & Heating*, 130 P.3d 1011, 1016 (Colo. 2006) (a negligent hiring claim "will fail if it is based on circumstances in which the employer owed no duty of care").

The Intsel Motion to Dismiss is **GRANTED** with respect to these claims. Claims Three and Five are **DISMISSED without prejudice**.[5]

[5] Intsel asks that all of Plaintiff's claims be dismissed with prejudice, but it does not address the standard for dismissal with prejudice or provide any argument in support of its request. [Doc. 50 at 16]. "A dismissal with prejudice is appropriate where a complaint

### C. Negligent Undertaking (Claim Seven)

"[A] party may assume duties of care by voluntarily undertaking to render a service." *Jefferson Cnty. Sch. Dist. R-1 v. Justus ex rel. Justus*, 725 P.2d 767, 770 (Colo. 1986). Colorado has adopted § 324A of the Restatement (Second) of Torts, which provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
>
> (a) his failure to exercise reasonable care increases the risk of such harm, or
>
> (b) he has undertaken to perform a duty owed by the other to the third person, or
>
> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Restatement (Second) of Torts § 324A (A.L.I. 1965); *see also DeCaire v. Pub. Serv. Co.*, 479 P.2d 964, 966–67 (Colo. 1971) (adopting § 324A).

Intsel argues that Claim Seven fails as a matter of law because there are no allegations that it undertook "to render services to another which [it] should recognize as necessary for the protection of a third person or his things." [Doc. 50 at 12–13 (quotation omitted)]. It argues that negligent undertaking claims are "reserved for those unique . . . cases where a third-party voluntarily undertakes action[] to assist another in the

---

fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile." *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006). The Court declines to undertake a futility analysis sua sponte, so Claims Three and Five are dismissed without prejudice. *See United States v. Yelloweagle*, 643 F.3d 1275, 1284 (10th Cir. 2011) (a court cannot raise arguments for parties).

preservation of their safety," and the allegations in the Second Amended Complaint show only that it purchased steel, not that it undertook any particular services to protect another person. [*Id.*].

Plaintiff's counterargument is not directly responsive to Intsel's contention. Plaintiff argues only that her negligent undertaking claim "is premised on Defendant Intsel undertaking the obligation to safely transport goods on public highways" and the Second Amended Complaint "contends that Defendant Intsel failed to act reasonably in this undertaking by hiring an unsafe company/driver." [Doc. 56 at 4]. Like before, Plaintiff directs the Court to no specific allegations upon which she relies. *See* [*id.*]. Nor does she cite any legal authority discussing the types of allegations that courts have found sufficient to state a plausible negligent undertaking claim. *See* [*id.*].

Under Colorado law, "a claimant alleging negligence of another party must establish the existence of a duty, a breach of that duty, causation, and damages." *Redden v. SCI Colo. Funeral Servs., Inc.*, 38 P.3d 75, 80 (Colo. 2001). For negligent undertaking, the Colorado Supreme Court has explained that the question of whether a defendant assumed a duty is a mixed question of law and fact that is "predicated on two factual findings": first, the plaintiff must "show that the defendant, either through its affirmative acts or through a promise to act, undertook to render a service that was reasonably calculated to prevent the type of harm that befell the plaintiff." *Justus*, 725 P.2d at 771. Then, the plaintiff "must also show either that he relied on the defendant to perform the service or that defendant's undertaking increased plaintiff's risk." *Id.* This Court could not locate any Colorado cases setting forth the pleading requirements for a negligent undertaking claim, and neither side cites any such cases. However, based on the

Colorado Supreme Court's analysis in *Justus*, the Court concludes that a plaintiff must allege, at minimum, that the defendant took an affirmative act or made a promise to act, and through that act or promise, undertook to render a service to the plaintiff. *See P.W. v. Children's Hosp. Colo.*, 364 P.3d 891, 897 (Colo. 2016) ("Under the assumed duty doctrine, . . . the question of whether the Hospital assumed a duty rests on two factual findings," including "whether the [defendant], through its affirmative acts or through a promise to act, undertook to render a service that was reasonably calculated to prevent the type of harm that befell the plaintiff" (quotation omitted)).

The Second Amended Complaint contains no such allegations. There are no allegations that Intsel took any affirmative action or made any affirmative promise that amounted to Intsel undertaking a duty to render services for the protection of Plaintiff. *See* [Doc. 35 at ¶¶ 136–47]. Plaintiff's allegations about Intsel are conclusory, boilerplate, and nearly identical to the allegations asserted against other Defendants. *Compare* [*id.*], *with* [*id.* at ¶¶ 125–35, 148–58]. Plaintiff's allegations are thus insufficient to state a claim under Rule 12(b)(6). *See Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (explaining that, to state a claim under Rule 12(b)(6), "a plaintiff must offer sufficient *factual allegations* to raise a right to relief above the speculative level" (emphasis added and quotation omitted)); *Twombly*, 550 U.S. at 555 (a "formulaic recitation of the elements of a cause of action" is insufficient to state a claim).

The Intsel Motion to Dismiss is therefore **GRANTED** with respect to Claim Seven. Claim Seven is **DISMISSED without prejudice**.

### D. Joint Venture and Enterprise Claims (Claims Nine and Ten)

Intsel next seeks dismissal of Claims Nine and Ten. [Doc. 50 at 13–15]. Claim

Nine is captioned "Joint Venture" and Claim Ten is captioned "Joint Enterprise Liability." [Doc. 35 at 38–39]. But a joint venture (or a joint enterprise) is a type of partnership that could, in certain circumstances, result in liability for the venture's members. *See Compass Ins. Co. v. City of Littleton*, 984 P.2d 606, 619 (Colo. 1999) ("A joint venture is a type of relationship under the law of partnership and agency."); *Am. Fam. Mut. Ins. Co. v. AN/CF Acquisition Corp.*, 361 P.3d 1098, 1099 (Colo. App. 2015) ("[E]ach participant in a joint venture is vicariously liable for the negligence of the other participants."). The Court could locate no Colorado authority recognizing standalone "joint venture" or "joint enterprise liability" claims. *Cf. Johansen v. Brooke's Bail Bonding, LLC*, No. 3:25-cv-00690, 2026 WL 1805002, at *14 (M.D. Tenn. June 23, 2026) ("[J]oint venture is not a cause of action but a theory of liability." (applying Tennessee law)). But Intsel does not argue that these claims cannot stand on their own, so the Court's analysis is limited to the arguments raised by the Parties. *United States v. Yelloweagle*, 643 F.3d 1275, 1284 (10th Cir. 2011). Before turning to the Parties' arguments, though, an examination of the exact nature of Plaintiff's claims is necessary.

***Joint Venture Versus Joint Enterprise.*** Intsel and Plaintiff appear to agree that a joint *venture* exists when three elements are met: "(1) a joint interest in property; (2) an express or implied agreement to share in profits or losses of the venture; and (3) actions and conduct showing joint cooperation in the venture." *Compass*, 984 P.2d at 619 (quotation omitted). *See* [Doc. 50 at 13; Doc. 56 at 5]. "Colorado courts recognize two distinct types of joint ventures: joint business ventures and joint ventures in the operation of automobiles." *AN/CF Acquisition Corp.*, 361 P.3d at 1099.[6]

---

[6] A joint venture based on the operation of automobiles consists of two elements: "(1) two

Unfortunately, the requirements of a "joint *enterprise*" are less clear. Although Intsel seeks dismissal of Claim Ten, it does not substantively address the "joint enterprise" claim at all. [Doc. 50 at 13–15]. Neither does Plaintiff. [Doc. 56 at 5].

Based on the Court's independent research, it appears that the term "joint enterprise" is almost exclusively used in the context of addressing joint ventures in the operation of automobiles (as opposed to joint business ventures). *See, e.g., Watson v. Reg'l Transp. Dist.*, 762 P.2d 133, 137 (Colo. 1988); *Mayer v. Sampson*, 402 P.2d 185, 188 (Colo. 1965); *Bilsten v. Porter*, 516 P.2d 656, 658 (Colo. App. 1973). In this type of case, Colorado courts use "joint venture" and "joint enterprise" interchangeably. *See AN/CF Acquisition Corp.*, 361 P.3d at 1099–100 & n.2. Conversely, "[w]here the enterprise is for some commercial or business purpose, and particularly where the parties have agreed to share profits and losses, *it usually is called a joint venture*." *Watson*, 762 P.2d at 137 n.6 (emphasis added) (quoting W. Keeton, D. Dobbs, R. Keeton & D. Owen, Prosser and Keeton on the Law of Torts § 72, at 517 (5th ed. 1984)). "The extension of a 'joint enterprise' beyond such business ventures is almost entirely a creature of American courts." *Id.* (quotation omitted).

Neither side engages with the question of whether, in this context, a "joint venture" is in any way distinct from a "joint enterprise." Indeed, neither Party meaningfully addresses Claim Ten at all. But because Plaintiff clearly presents and frames her claims

---

or more persons must unite in pursuit of a common purpose and (2) each person must have a right to control the operation of the automobile in question." *AN/CF Acquisition Corp.*, 361 P.3d at 1099 (quotation omitted). This doctrine often arises in cases where a party seeks to hold a defendant passenger liable for a driver's negligence. *See id.* at 1099 (collecting cases); *see also, e.g.*, *Watson v. Reg'l Transp. Dist.*, 762 P.2d 133, 137 (Colo. 1988); *Mayer v. Sampson*, 402 P.2d 185, 188 (Colo. 1965); *Bilsten v. Porter*, 516 P.2d 656, 658 (Colo. App. 1973).

as alleging a joint *business* venture, not as alleging a joint venture in the operation of an automobile, *See* [Doc. 56 at 5], and proceeds as if the "joint venture" and "joint enterprise" claims have the exact same elements, *see* [*id.*], the Court will do the same.

***The Sufficiency of Plaintiff's Allegations.*** Intsel first contends that the Second Amended Complaint does not plausibly allege an agency relationship between Intsel and any other Defendant. [Doc. 50 at 13–14]. Again, though, Intsel improperly rely on facts not alleged in the Second Amended Complaint, *see* [*id.* at 14], so the Court does not address this argument.

Alternatively, Intsel asserts that "Plaintiff fails to allege any factual basis that the Co-Defendants shared in any profits or losses relating to the delivery of steel to Intsel." [*Id.*]. Plaintiff offers no meaningful response, stating only that her Second Amended Complaint "sufficiently pleads the requirements of a joint venture" and construing Plaintiff's allegations in her favor "should lead the Court to allow the claim to proceed at this early stage." [Doc. 56 at 5]. The Court cannot and will not make arguments on Plaintiff's behalf, *Yelloweagle*, 643 F.3d at 1284, but must nevertheless determine whether her allegations are sufficient to state a claim, *Issa*, 354 F.3d at 1177.

The Court agrees with Intsel that Plaintiff does not plausibly allege the second element of a joint venture. Plaintiff alleges that "[a]t all relevant times, Defendants were engaged in the joint undertaking of a particular transaction for mutual profit, mutual control, and mutual contribution, and this joint undertaking was memorialized in contract." [Doc. 35 at ¶ 26]. She further alleges that "Defendants were engaged in a joint venture to haul goods and material in interstate commerce for profit" and that, "[a]s a result of the [steel] transportation, Defendants earned, or intended to earn, a profit." [*Id.* at ¶¶ 161,

164]; *see also* [*id.* at ¶¶ 173, 176 (asserting similar allegations for Claim Ten)]. These allegations are insufficient to allege the second element of a joint venture, as they do not allege an agreement to *share* in the venture's profits or losses. *See Cayo, Inc. v. Swiss Reinsurance Am. Corp.*, No. 23-cv-00105-MEH, 2023 WL 4744196, at *6 (D. Colo. May 2, 2023) ("The second element—agreeing to share in the venture's losses or profits—requires ***joint, not several,*** losses or profits."); *see also id.* at *7 (concluding that similar allegation—that the parties "agreed to share in the profits and losses during the operation of the joint venture"—was insufficient); *Twombly*, 550 U.S. at 555 (a "formulaic recitation of the elements of a cause of action" is insufficient to state a claim).

The Court thus concludes that Plaintiff fails to state a "joint venture" claim. And because Plaintiff proceeds as if a "joint enterprise" claim has the same required elements, the Court similarly concludes that Plaintiff fails to state a "joint enterprise" claim, too. The Intsel Motion to Dismiss is **GRANTED** as to Claims Nine and Ten, and these claims are **DISMISSED without prejudice**.

## II. The TQL Motion to Dismiss

TQL moves to dismiss Claims Three, Five, Six, Nine, and Ten. *See* [Doc. 43]. It argues that (1) Plaintiff's improper reliance on group pleading violates Rule 8 and is alone a sufficient basis for dismissal, [*id.* at 7–9]; (2) Plaintiff's claims are preempted by the Federal Aviation Administration Authorization Act ("FAAAA"), [*id.* at 9–13]; and (3) Plaintiff otherwise fails to state a claim under Rule 12(b)(6) for any of her claims against TQL, [*id.* at 13–15].

### A. Preemption

TQL argues that the Court should dismiss all of Plaintiff's claims as preempted by

the FAAAA, relying on *Aspen Am. Ins. Co. v. Landstar Ranger, Inc.*, 65 F.4th 1261, 1268 (11th Cir. 2023), and *Ye v. GlobalTranz Enterprises, Inc.*, 74 F.4th 453, 459 (7th Cir. 2023). [Doc. 43 at 9–13]. However, both *Aspen American Insurance* and *Ye* were abrogated by the Supreme Court's recent decision in *Montgomery v. Caribe Transport II, LLC*, 608 U.S. 219 (2026), which was decided after TQL filed its Motion to Dismiss and its Reply. *See also Miller*, ECF No. 106 at 2 (D. Colo. May 26, 2026) (TQL withdrawing its preemption argument in the substantially similar *Miller* case).

Because the cases TQL relies on are no longer good law, and because neither Party argues that the preemption issue impacts this Court's subject matter jurisdiction,[7] *see* [Doc. 43 (moving to dismiss only under 12(b)(6)); Doc. 52], the Court declines to engage in a preemption analysis and turns to TQL's alternative arguments.

**B. Negligent Undertaking (Claim Six)**

TQL moves to dismiss Plaintiff's negligent undertaking claim on the basis that "Plaintiff's allegations are both conclusory and do not support the[] elements" of the claim. [Doc. 43 at 15]. As stated above, a negligent undertaking claim requires allegations that the defendant undertook, or assumed, a duty to render services necessary for the protection of a third person or his things. Restatement (Second) of Torts § 324A; *DeCaire*, 479 P.2d at 966–67. TQL argues that Plaintiff fails to allege an assumed duty, as she

[7] "Complete preemption is a jurisdictional concept, while ordinary preemption is a defense to liability." *Saunders v. Big Blue Healthcare, Inc.*, 522 F. Supp. 3d 946, 958 (D. Kan. 2021). Express preemption is one kind of "ordinary preemption," *see Devon Energy Prod. Co., L.P. v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195, 1204 n.4 (10th Cir. 2012), and express preemption is the doctrine under which TQL raises its arguments, *see* [Doc. 43 at 10–11]; *see also Allahverdian v. Estes Express Lines Corp.*, No. 2:25-cv-03988-CV, 2026 WL 790755, at *2 (C.D. Cal. Mar. 17, 2026) ("Cases that discuss the FAAAA often reject the argument that the FAAAA has a jurisdictional effect through complete preemption exception." (collecting cases)).

alleges only that TQL had a contractual obligation (to an unidentified person) to "transport goods efficiently and safely in interstate commerce," not an independently assumed obligation. [Doc. 43 at 15]; *see also* [Doc. 35 at ¶ 127]. TQL also argues that Plaintiff's allegations are otherwise too conclusory to state a claim. [Doc. 43 at 15].

In her Response, Plaintiff argues that, under Colorado law, the undertaking "can grow out of a contractual relationship and when it does so, the duty emerges more clearly than where there is no such relationship." [Doc. 52 at 10 (emphasis omitted) (citing *Lester v. Marshall*, 352 P.2d 786 (Colo. 1960))]; *see also Lester*, 352 P.2d at 790 ("Where, as here, the promise grows out of a *contractual* relationship, the duty emerges more clearly than where there is no such relationship."). In its reply brief, TQL does not address Plaintiff's reliance on *Lester*. *See* [Doc. 57].

Even assuming Plaintiff is correct, the Court nevertheless agrees with TQL that Plaintiff's allegations are insufficient to state a plausible claim. Plaintiff does not meaningfully address Defendant's argument that Plaintiff's allegations are too conclusory to state a claim; she does not discuss any of her specific allegations or explain why they are sufficient at the pleading stage, relying instead on broad arguments that the pleading stage requires only a "plain statement of the claim showing the pleader is entitled to relief." *See* [Doc. 52 at 10].

The Court has no obligation to sift through Plaintiff's Second Amended Complaint to find support for her arguments or make arguments on her behalf. *Mitchell v. City of Moore*, 218 F.3d 1190, 1199 (10th Cir. 2000); *Yelloweagle*, 643 F.3d at 1284. But based on this Court's independent review of Plaintiff's allegations, the Court agrees that she does not state a plausible negligent undertaking claim. For example, Plaintiff that TQL

"had a contractual obligation to transport goods efficient and safely in interstate commerce on June 11, 2024." [Doc. 35 at ¶ 127]. But *nowhere* in the Second Amended Complaint does Plaintiff provide *any* details of this purported contract, including the identity of the other contracting party (or parties) or what the contract specifically obligated TQL to do. *See generally* [*id.*]. Moreover, the remaining allegations are simply a formulaic recitation of the claim's elements, lacking any factual enhancement. *See* [*id.* at ¶¶ 128–33], or are otherwise a boilerplate, laundry list of allegations that Plaintiff widely alleges against most of the Defendants, *see* [*id.* at ¶ 134]. These allegations are insufficient to state a claim under Rule 12(b)(6). *Twombly*, 550 U.S. at 555; *VDARE Found. v. City of Colorado Springs*, 11 F.4th 1151, 1173 (10th Cir. 2021) ("naked assertions devoid of further factual enhancement" are insufficient to state a claim).

For this reason, the TQL Motion to Dismiss is **GRANTED** as to Claim Six, and Claim Six is **DISMISSED without prejudice**.[8]

### C. Claims "Sounding in Vicarious Liability"

Next, TQL moves for dismissal of all of Plaintiff's claims "sounding in vicarious liability" because "Plaintiff cannot plead facts to support vicarious liability against TQL for the negligence of [Mr.] Cruz-Mendoza. [Doc. 43 at 14]. TQL does not identify which claims it believes rely on a vicarious-liability theory of relief. *See* [*id.*]. None of Plaintiff's remaining claims against TQL—negligent hiring, supervision, retention, or selection, "joint venture," or "joint enterprise"—appear to rely on a theory of vicarious liability. Rather, all four claims are based on TQL's direct liability (or at least liability based on partnership

[8] TQL asks the Court to dismiss all of Plaintiff's claims with prejudice. [Doc. 43 at 16]. The Court declines to analyze the propriety of dismissal with prejudice sua sponte and will instead dismiss Plaintiff's claims without prejudice. *See supra* note 5.

principles, not vicarious liability ones). *See, e.g.*, [Doc. 35 at ¶ 97 ("Defendants had an obligation and duty to hire, retain and supervise drivers who operate their vehicles in a safe and prudent manner."); *id.* at ¶ 117 ("Defendants had an obligation and duty to hire, retain and supervise drivers who operate its vehicles in a safe and prudent manner."); *id.* at ¶ 161 ("Defendants were engaged in a joint venture to haul goods and material in interstate commerce for profit."); *id.* at ¶ 173 ("Defendants were engaged in a joint enterprise to haul steel for profit.")]; *cf. Harris v. Stallings*, No. 24CA1543, 2025 WL 2079975, at *1 (Colo. App. July 24, 2025) (referencing claims for "direct liability for negligent hiring, training, and supervision").[9]

Because it does not appear that TQL's arguments are directed at any of Plaintiff's claims against it, the Court declines to analyze the applicability of vicarious liability.

**D. Joint Venture and Enterprise Claims (Claims Nine and Ten)**

TQL next argues that Claims Nine and Ten should be dismissed "because there are no non-conclusory allegations that TQL has a right to control the operation of the Tractor-Trailer." [Doc. 43 at 16]. In so arguing, TQL relies on the line of cases addressing joint ventures based on the operation of automobiles. *See* [*id.*]. And despite TQL moving to dismiss these claims based on a seemingly inapplicable legal doctrine—which would presumably, and readily, permit Claims Nine and Ten to proceed—Plaintiff does not acknowledge TQL's reliance on inapplicable case law *at all*. [Doc. 52 at 11]. Rather, she only cursorily asserts that her "allegations . . . meet the three-part test [for joint business

[9] The Court acknowledges that Plaintiff alleges that "Defendants were liable for the actions and/or inactions of Mr. Cruz-Mendoza, who was operating their Tractor Trailer." [Doc. 35 at ¶ 15]. But Plaintiff does not raise a negligence claim against TQL based on Mr. Cruz-Mendoza's conduct. *See* [*id.* at ¶¶ 81–95].

ventures] and satisfy the pleading requirements," so "the joint venture and joint enterprise claims should be allowed to proceed." [*Id.*].

The Court does not find TQL's reliance on the incorrect test to be entirely unreasonable, given that Mr. Cruz-Mendoza was indeed operating an automobile when he caused the subject collision. But that doctrine has limited applicability, and given the Court's prior analysis and determinations, as well as Plaintiff's own framing of the claims, the Court finds the claims more appropriately analyzed as asserting liability theories in the context of joint business ventures. The Court has already concluded that Plaintiff's allegations are insufficient to allege the existence of a joint venture or joint enterprise with respect to Intsel. *See supra* Section I.D. And given that Plaintiff's claim against TQL relies on the *exact* allegations that the Court has already deemed deficient, *see* [Doc. 35 at ¶¶ 159–90], and the principle that "[t]he legal sufficiency of a complaint is a question of law," *Issa*, 354 F.3d at 1178 (quoting *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003)), the Court finds dismissal of Claims Nine and Ten appropriate as to TQL. The TQL Motion to Dismiss is **GRANTED** with respect to Nine and Ten against TQL, and those claims are **DISMISSED without prejudice**.

### E. Negligent Hiring or Selection (Claims Three and Five)

Finally, the Court addresses Claims Three and Five, which assert claims for negligent hiring, supervision, retention, or selection. TQL does not raise any specific argument that Plaintiff's allegations are insufficient to plead the elements of these claims under Rule 12(b)(6). *See* [Doc. 43].[10] TQL does argue, however, that *all* of Plaintiff's

[10] In the reply brief, TQL states that "Plaintiff fails to . . . identify specific facts that support . . . negligent hiring," referring back to its Motion to Dismiss. [Doc. 57 at 10]. But TQL does not specifically address the sufficiency of the allegations for the negligent hiring or

claims should be dismissed because Plaintiff improperly relies on group pleading and "wholly fails to allege specific misconduct attributable to TQL." [*Id.* at 7]. The question before the Court, then, is whether this argument about group pleading demonstrates that dismissal is warranted.

In her Response, Plaintiff urges the Court to reject TQL's group-pleading argument. [Doc. 52 at 2–4]. She argues that she "filed a 43-page detailed complaint and provided comprehensive facts supportive of each claim." [Doc. 52 at 3]. She posits that although "some claims are grouped against a group of Defendants, not all claims are." [*Id.*]. She argues that "[i]n a case involving multiple defendants acting in concert, this type of pleading is appropriate and meets the pleading requirements of Rule 8." [*Id.*]. These arguments are not supported by legal authority discussing group pleading.

With respect to TQL specifically, Plaintiff asserts that the Second Amended Complaint "details [TQL's] role as a broker and its role in the underlying factual circumstances of the case," as well as "TQL's violations of state and federal law." [*Id.* at 4 (citing Doc. 35 at ¶¶ 6–7, 10–14, 20–33, 37, 62–63, 65, 69–71, 73–76)]. She also argues that the Second Amended Complaint "sets forth Defendant TQL's role and extensive failures in its selection, hiring, supervision and retention of Defendant Cruz-Mendoza and Monique Trucking, LLC." [*Id.* (citing Doc. 35 at ¶¶ 122, 134)].

The Court first considers Plaintiff's specific allegations. She insists that the Second Amended Complaint "details [TQL's] role as a broker," *see* [*id.*], but the cited allegations state that TQL "is a foreign limited liability company," that "TQL is a broker," and that "Mr. Cruz-Mendoza was sent to the Searing facility on June 11, 2024, by TQL, the broker,"

---

supervision claims in its Motion to Dismiss. *See generally* [Doc. 43].

[Doc. 35 at ¶¶ 6–7, 37]. Respectfully, these allegations essentially provide *no* detail about TQL's actual role in the events underlying this case. Other allegations fail to reference TQL, instead referring to "Defendants" generally. *See* [*id.* at ¶¶ 10–14, 21–30, 32–33, 63, 65, 69–71, 73–76, 122]. Others that do reference TQL do so generically, with no factual assertions specific to TQL. *See* [*id.* at ¶¶ 62, 134]. *Compare* [*id.* at ¶ 134 (alleging that TQL "undertook the performance of . . . duties and was negligent in its undertaking in" *40* different ways, without supporting facts)], *with* [*id.* at ¶¶ 114, 145, (alleging that Monique Trucking and Intsel "undertook the performance of . . . duties and [were] negligent in [their] undertaking in" the same ways, without supporting facts)], *and with* [*id.* at ¶ 102 (alleging that "Defendants" were negligent in the hiring of Mr. Cruz-Mendoza in the same ways, without supporting facts)], *and with* [*id.* at ¶ 123 (alleging that "Defendants" were negligent in the selection of Monique Trucking in the same ways, without supporting facts)].

"A complaint that fails to differentiate wrongful acts among multiple defendants, alleging instead multiple violations by unspecified defendants does not provide the fair notice the law requires." *Matthews v. Bergdorf*, 889 F.3d 1136, 1148 (10th Cir. 2018). Courts have recognized that group pleading—referring to all defendants, or a group of defendants, collectively—may violate Rule 8 and may render a plaintiff's allegations insufficient under Rule 12(b)(6). *Snyder*, 2016 WL 192270, at *3; *Goodwin*, 2014 WL 3882183, at *1. But group pleading does not automatically warrant dismissal. *See Carrado v. Daimler AG*, No. 17-cv-03080-WJM-SKC, 2018 WL 4565562, at *4 (D. Colo. Sept. 24, 2018) (collecting cases). The Tenth Circuit has explained that "the degree of specificity necessary to establish plausibility and fair notice, and therefore the need to

include sufficient factual allegations, depends on context" and the type of case. *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008). For example, claims asserted under 42 U.S.C. § 1983 often name as defendants "the government agency and a number of government actors sued in their individual capacities." *Id.* at 1249–50. In such a case, "it is particularly important in such circumstances that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." *Id.* at 1250. But cases with simpler factual circumstances may require less detail. *See id.* at 1248 ("A simple negligence action based on an automobile accident may require little more than the allegation that the defendant negligently struck the plaintiff with his car while crossing a particular highway on a specified date and time.").

Under the circumstances of this case and with respect to the specific negligent hiring and supervision claims that remain, the Court agrees with TQL that the Second Amended Complaint's over-reliance on group pleading renders Plaintiff's allegations insufficient to state a claim against TQL. To state a negligent hiring or supervision claim, Plaintiff must allege, among other things, that TQL owed a duty to Plaintiff and that there was an agency relationship between TQL and Mr. Cruz-Mendoza (for Claim Three) and between TQL and Monique Trucking (for Claim Five). *Nielsen*, 413 F. Supp. 2d at 1184; *Alarid*, 132 F. Supp. 3d at 1308–09. By relying on generic group allegations, Plaintiff fails to plausibly allege an agency relationship or identify how any particular Defendant—including TQL—was involved in the hiring or supervision of Mr. Cruz-Mendoza or Monique Trucking. Her allegations are thus insufficient to allege that TQL owed any duty to Plaintiff, *see supra* Section I.B; *Seidl*, 30 F. Supp. 2d at 1301, and she fails to state a

negligent hiring claim under Rule 12(b)(6), *see Posey v. San Francisco Unified Sch. Dist.*, No. 23-cv-02626-JSC, 2023 WL 8420895, at *4 (N.D. Cal. Dec. 4, 2023) (dismissing negligent hiring claim because group allegations failed to "support[] a plausible inference *each* Defendant engaged in negligent conduct"). The TQL Motion to Dismiss is **GRANTED** as to Claims Three and Five. Claims Three and Five are **DISMISSED without prejudice**.

## CONCLUSION

For the reasons set forth above, **IT IS ORDERED** that:

(1) Defendant Total Quality Logistics, LLC's Fed. R. Civ. P. 12(b)(6) Motion to Dismiss Amended Complaint [Doc. 43] is **GRANTED**;

(2) Plaintiff's claims against TQL are **DISMISSED without prejudice**;

(3) Defendant Intsel Steel West LLC's Motion to Dismiss [Doc. 50] is **GRANTED**;

(4) Plaintiff's claims against Intsel are **DISMISSED without prejudice**; and

(5) The Clerk of Court is directed to terminate Total Quality Logistics, LLC and Intsel Steel-West, LLC as Defendants in this case.

DATED: September 8, 2026

BY THE COURT:

Nina Y. Wang
United States District Judge